## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND

MICHAEL E. NELSON,

Plaintiff,

v.

URSILLO, TEITZ & RITCH, LTD.;

MICHAEL A. URSILLO;

ANDREW M. TEITZ;

SCOTT A. RITCH;

ADAM J. SHOLES,

TOWN OF SOUTH KINGSTOWN; and

Jane and John Does 1–27,

Defendants.



FILED

JUN 29 2026

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

Civil Action No. 1:26-cv-00352-MRD-AEM

## FIRST AMENDED COMPLAINT

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PURSUANT TO 42 U.S.C. § 1983 AND OTHER APPLICABLE LAWS

COMES NOW, Plaintiff, pro se, and alleges as follows:

---

## I. INTRODUCTION

1. This action concerns a recurring constitutional question of substantial public importance: whether a governmental entity may exercise legal authority affecting statutory and constitutional rights through anonymous and unattributed governmental determinations while concealing the identity of the governmental actor responsible for the decision.

2. The entire basis of this action is the believed unlawful (illegal), immoral and unethical conduct of officers of the Court working in concert with governmental actors (government employees and officers). The government exercised legal authority affecting statutory and constitutional rights while intentionally obscuring the identity of the responsible decision-maker, thereby impairing transparency, accountability, meaningful review, conflict-of-interest analysis, and the ability to challenge the action through administrative or judicial processes.

3. At the center of every constitutional system lies the fundamental principle that governmental power must be exercised by identifiable, accountable, and reviewable actors whose decisions are attributable to them personally and institutionally. For nearly 250 years, the United States has aspired to serve as a beacon of freedom and transparent government of the people, by the people, and for the people.

4. Since its incorporation in 1723, the Town of South Kingstown has existed as a self-governing body, predating the formation of the United States itself. By virtue of its history and the sacrifices and integrity of its founders, South Kingstown bears a heightened obligation to honor constitutional and statutory rights—an obligation that is gravely undermined when modern officials deny basic rights through opaque and unattributed governmental acts.

5. Citizens cannot meaningfully challenge governmental action, pursue review, identify conflicts of interest, seek recusal, pursue accountability, or petition for redress where the government refuses to identify the individual exercising authority against them.

6. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 seeking declaratory and prospective injunctive relief arising from a recurring pattern of governmental communications issued by or on behalf of the Town of South Kingstown that exercised legal authority while omitting the identity of the governmental actor responsible for the determination.

7. The challenged communications were not merely ministerial acknowledgments or administrative correspondence.

8. Rather, the communications contained substantive legal determinations affecting statutory and constitutional rights, including assertions of exemptions, denials of records, interpretations of law, determinations concerning governmental obligations, fee assessments, procedural rulings, case precedents and other legally operative conclusions.

9. Despite exercising governmental authority and affecting statutory and constitutional rights, numerous such communications omitted signatures, omitted identification of the responsible governmental actor, omitted identification of the responsible attorney, omitted identification of the decisionmaker, or otherwise failed to identify the person exercising governmental authority.

10. The repeated use of such communications materially impaired transparency, accountability, meaningful review, and Plaintiff's ability to identify the governmental actor exercising authority.

11. Plaintiff does not seek an advisory opinion regarding hypothetical governmental conduct, as evidenced by annexed hereto Exhibits A through D.

12. Rather, Plaintiff seeks resolution of an active and ongoing controversy, that has continued including as recently as 25 June 2026, as noted in the attached herewith Exhibit D, such bad acts arising from repeated governmental actions affecting Plaintiff's exercise of rights secured by Rhode Island law, the First Amendment to the United States Constitution, and the Fourteenth Amendment to the United States Constitution.

13. Plaintiff further seeks determination whether the repeated use of unattributed governmental legal determinations constitutes a municipal custom, policy, practice, ratification, or deliberate indifference sufficient to establish municipal liability under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*.

14. Because the challenged practices remain capable of repetition and continue to affect Plaintiff's future interactions with municipal government, declaratory and prospective injunctive relief are necessary to prevent continuing constitutional injury.

15. In the matters described herein, the government exercised legal authority affecting statutory and constitutional rights while intentionally obscuring the identity of the responsible decision-maker, thereby impairing transparency, accountability, meaningful review, conflict-of-interest analysis, and the ability to challenge the action through administrative or judicial processes.

## II. JURISDICTION AND VENUE

16. This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

17. This Court possesses jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4).

18. This action arises under 42 U.S.C. § 1983.

19. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

20. Venue is proper in the District of Rhode Island pursuant to 28 U.S.C. § 1391 because the deliberate acts, misconduct, abuses, and omissions complained of occurred within this District.

## III. PARTIES

21. Plaintiff Michael Eric Nelson ("Plaintiff") is a natural born US Citizen and natural person and citizen of the State of Rhode Island.

22. Plaintiff has repeatedly exercised rights protected by the Rhode Island Access to Public Records Act ("APRA"), including multiple requests for transparency verbally in February and in writing early March 2026.

23. Plaintiff has repeatedly exercised rights protected by the Petition Clause of the First Amendment by seeking governmental information, transparency, accountability, and review of governmental actions.

24. Defendant Town of South Kingstown ("Town") is a municipal corporation organized under the laws of the State of Rhode Island.

25. At all times relevant herein, the Town acted under color of state law.

26. At all times relevant herein, the Town acted through its departments, officers, employees, records custodians, attorneys, agents, representatives, contractors, and other persons acting on its behalf.

27. At all times relevant herein, those persons exercised governmental authority delegated by, authorized by, ratified by, or attributable to the Town of South Kingstown.

28. Defendant Ursillo, Teitz & Ritch, Ltd. ("UTR" or "Law Firm Defendant") is a professional corporation in the business of providing legal advice to municipalities and is sued as an entity because it has caused to be sent repeatedly letters without signature or attribution and, when inquired, attorneys at said firm play dumb as if no one authored the legal determinations that affect statutory and constitutional rights. Certain letter(s) have also been issued on the letterhead of the firm and has no attribution, no signature whatsoever of whom within the firm UTR authored the letter, despite this fact the UTR letter, attached as Exhibit C, is written in the same cadence, tonality, structure as the unsigned South Kingstown letterhead letters and the one letter on dual South Kingstown Municipal Court and South Kingstown letterhead, indicating all letters have the same author and the letters request contact to "me" within the letters but do not identify who "me" is because the letters are purposefully unsigned in order to deny appellate rights.

29. Defendants Michael A. Ursillo ("Ursillo"), Andrew M. Teitz ("Teitz"), and Scott A. Ritch ("Ritch") are individual natural persons, purported licensed attorneys, and are sued personally and professionally as potential authors of the letters

and as named partners of the Law Firm Defendant, who minimally neglected to supervise subordinate attorneys who may have violated the rights of others, including the plaintiff. Each maintain liability for the misconduct of those subordinates that they are ethically, morally and legally obligated to supervise as the named partners of the firm must supervise associates.

30. As named partners of the Law Firm Defendant, Ursillo, Teitz, and Ritch have a duty of care to their municipal client and their client's constituents (citizens). Additionally, as they operate providing advice to governmental units including municipalities, their failure to supervise has and continues to cause constitutional crisis and denial of statutory and constitutional rights to the populace.

31. Plaintiff shall advise the Court when residential addresses can be determined for service of process against each of Ursillo, Teitz, and Ritch.

32. Defendant Adam J. Sholes ("Sholes") is the municipal "chief judge" of the South Kingstown Municipal Court, who has allowed the Municipal Court letterhead to be used together with the Town of South Kingstown letterhead (double letterhead on a single document), to convey authority while denying statutory and constitutional rights and allowing said communications to be sent without attribution and omitting a signature of the authority who penned the legal determination. Sholes is believed to be found at governmental buildings address locations will be determined for petition of the Court for US Marshal's to serve Mr. Sholes who may be sued in his official capacity as a municipal judge for abuse of office given the Municipal Court letterhead used on legal determinations, see generally Exhibit B incorporated herein by reference.

33. It is not yet determined the extent to which Sholes participated and/or was negligent in his supervision of the office in which he operates. Many weeks prior to commencement of litigation and prior to attachment of Sholes as respondent / defendant a formal certified mail letter was caused to be sent to

Sholes who has chosen not to respond and therefore must be forced to respond formally and publicly upon the formal public federal record, because he was unwilling to privately respond with his position as to why his judicial office is being used to cause undue influence over APRA public records requests which have nothing to do with him or his office.

34. APRA requests referenced herein were not directed to the Municipal Court, nor should the Municipal Court have issued legal determinations on Municipal Court letterhead without identifying the governmental actor making the assertions of law.

35. Upon information and belief, Sholes either personally authored the offending material and/or failed to supervise his staff, wherein an unknown governmental actor working directly for Sholes purposefully omitted a signature (attribution).

36. Plaintiff has already attempted to rectify the situation directly with "judge" Sholes by attempting resolution, correction, and identification through formal correspondence sent via Certified USPS mail tracking number 9214890142980481784193, and to date no response has been made by Sholes.

37. John and Jane Doe attorneys/lawyers billing on behalf of the Town of South Kingstown and employees of South Kingstown are unknown at present and will be amended to be added to this litigation once their identities can be confirmed.

38. Plaintiff hereby removes Matthew C. Moynihan as defendant at present to narrow the scope of the matter in compliance with FRCP Rule 1.

39. Plaintiff further refines defendants to only those identified on this First Amended Complaint.

## IV. CONSTITUTIONAL PRINCIPLES OF IDENTIFIABLE GOVERNMENTAL AUTHORITY

40. The Due Process Clause of the Fourteenth Amendment protects citizens against arbitrary governmental action and requires procedures sufficient to permit meaningful notice, review, accountability, and challenge to governmental decisions affecting legal rights.

41. Meaningful procedural protections necessarily require that governmental authority be exercised by identifiable governmental actors whose actions may be reviewed, challenged, appealed, investigated, or otherwise subjected to public accountability.

42. A citizen cannot meaningfully challenge governmental action where the government refuses to identify the individual exercising authority against that citizen.

43. A citizen cannot reasonably evaluate potential conflicts of interest, bias, improper influence, recusal issues, supervisory failures, or legal authority where the identity of the governmental actor remains concealed.

44. The ability to identify the governmental decisionmaker is a prerequisite to meaningful administrative review, judicial review, public accountability, and governmental transparency.

45. The First Amendment protects the right of citizens to petition government, whether state, federal or municipal, for redress of grievances, seek governmental accountability, request governmental information, and engage in public oversight of governmental conduct.

46. The effectiveness of those rights depends upon the existence of identifiable governmental actors who may be petitioned, challenged, questioned, criticized, or held accountable for governmental decisions.

47. Governmental systems that conceal the identity of decisionmakers materially burden the exercise of petitioning rights by preventing citizens from identifying the governmental actor responsible for the challenged action.

48. Transparency, accountability, and reviewability are fundamental characteristics of constitutional governance.

49. Governmental authority exercised through anonymous or unattributed legal determinations undermines those principles by separating governmental power from identifiable responsibility.

50. The constitutional injuries alleged herein arise not merely from disagreement with particular governmental determinations but from the recurring use of governmental processes that conceal the identity of the actor exercising governmental authority.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Exercise of Statutory Transparency Rights

51. Beginning in or about early 2026, Plaintiff submitted numerous requests for public records to the Town of South Kingstown pursuant to APRA.

52. Plaintiff's requests concerned matters of public interest and governmental accountability.

53. Plaintiff sought records maintained by the Town and its departments concerning governmental operations, policies, communications, decision-making processes, and other matters subject to public-records laws.

54. In responding to APRA requests, the Town was required to determine whether responsive records existed.

55. The Town was required to determine whether records were public.

56. The Town was required to determine whether exemptions applied.

57. The Town was required to determine whether responsive records could be segregated and produced.

58. The Town was required to determine whether fees would be imposed.

59. The Town was required to interpret and apply provisions of Rhode Island law.

60. The Town was required to exercise governmental discretion affecting Plaintiff's statutory rights.

61. Such determinations constituted legally operative governmental actions affecting Plaintiff's ability to obtain public records and exercise rights granted by Rhode Island law.

62. True and correct copies of representative written communications issued by or on behalf of the Town and its counsel in response to Plaintiff's APRA requests are attached as **Exhibits A through D** and are incorporated herein by reference. These exhibits are not exhaustive of all such communications, but they exemplify the anonymity, non-attribution, fee practices, and structural defects challenged in this action.

## B. Repeated Use of Unattributed Governmental Determinations

63. During the course of Plaintiff's APRA activity, the Town repeatedly issued communications containing legal conclusions and governmental determinations affecting Plaintiff's statutory rights.

64. Those communications addressed substantive legal issues rather than merely ministerial matters.

65. The communications included assertions of statutory exemptions.

66. The communications included denials of requested records.

67. The communications included legal interpretations of APRA.

68. The communications included determinations concerning responsiveness of records.

69. The communications included determinations concerning segregability of records.

70. The communications included fee assessments and related determinations, acting as economic obstructions to transparency.

71. The communications included legal conclusions concerning the Town's obligations under Rhode Island law.

72. Numerous such communications omitted any signature whatsoever.

73. Numerous such communications omitted identification of the governmental official responsible for the determination.

74. Numerous such communications omitted identification of the attorney responsible for the legal conclusions contained therein.

75. Numerous such communications omitted identification of the records custodian exercising statutory authority.

76. Numerous such communications omitted identification of the individual responsible for the legal analysis contained within the communication.

77. Despite the absence of attribution, the communications purported to exercise governmental authority and affect Plaintiff's statutory and constitutional rights.

78. The challenged communications were issued repeatedly over multiple requests and over an extended period of time.

79. The challenged communications were not isolated occurrences.

80. Rather, the challenged communications reflected a recurring pattern of unattributed governmental decision-making.

81. Upon information and belief, the repeated use of such communications resulted from established administrative practices rather than inadvertent clerical omission, especially given the numerous letters issued over many months, including without limitation Exhibits A, B, C, and D annexed hereto.

## C. March 23, 2026 Letter (APRA Request No. 1257) – Exhibit A

82. On or about March 23, 2026, the Town issued a response to APRA request number 1257 according to the Town's OpenGov portal, the response was to an APRA request dated 11 March 2026, the OpenGov portal wherein the Town has retrofitted a planning and permitting function into an open records portal.

83. A true and correct copy of the Town's March 23, 2026 correspondence responding to APRA-1257 ("March 23, 2026 Letter") is attached as **Exhibit A** and incorporated herein by reference, this letter is in response to APRA request dated 11 March 2026.

84. The March 23, 2026 letter from the Town is neither signed nor attributed to any governmental actor, thus denying citizens the ability to appeal or otherwise plead given the unsigned letter(s).

85. The March 23, 2026 letter was a governmental determination affecting statutory rights that was issued without identifying the governmental actor responsible. The letter was issued in response to an APRA request dated 11 March 2026.

86. As reflected in Exhibit A, the Town acknowledges receipt of Plaintiff's March 20, 2026 APRA request logged as APRA-1257, describes his request for an inventory of "currently active contracts and/or agreements involving Town-owned real property," including aggregate page counts and storage format, and then asserts that "no such document exists" and that compiling such a list "would impose an undue burden on the Town," invoking *Caldwell v. Rhode Island College*, PR 23-02, and R.I. Gen. Laws § 38-2-3(h).

87. Exhibit A concludes with statutory appeal boilerplate and an invitation to "contact me," yet the letter bears no name, no signature, no title, and no identification of any records custodian, official, or attorney, leaving Plaintiff unable to determine who "me" is.

## D. April 6, 2026 Letter (APRA Request No. 1280) and Double Letterhead – Exhibit B

88. On or about April 6, 2026, the Town issued a "denial letter" in response to APRA request number 1280, which appears on double letterhead of the Town of South Kingstown and the "SOUTH KINGSTOWN MUNICIPAL COURT," which is supervised by Defendant Sholes.

89. A true and correct copy of this April 6, 2026 correspondence ("April 6, 2026 Double-Letterhead Letter") is attached as **Exhibit B** and incorporated herein by reference.

90. The April 6, 2026 letter, on joint or combined letterhead of the Town and the South Kingstown Municipal Court, makes conclusory statements of legal determinations, including citations of case law and conclusory statements such as, "…if it were to do so, it would impose an undue burden on the Town."

91. The April 6, 2026 letter is unsigned and provides no factual support whatsoever for its assertions of undue burden.

92. The April 6, 2026 letter fails to identify the number of departments, number of employees; estimated hours, estimated costs, database limitations, or any technical explanation to support its undue burden assertion.

93. Rhode Island APRA favors specific factual explanations, not conclusory statements, regarding undue burden; the statements made in the April 6, 2026 letter are unsupported.

94. In order to evade review, Defendants purposefully conflate "questions" with "records," as the April 6, 2026 letter cites that "the APRA does not require a public body to respond to interrogatories or questions."

95. Plaintiff's request sought statistical information and records.

96. If allowed to stand, this conflation enables Defendants to substantially deny citizens a transparent government by deeming all requests for documents as questions rather than records, thereby frustrating APRA's purpose and citizens' rights under the First and Fourteenth Amendments to the United States Constitution.

97. The April 6, 2026 letter does not comply with APRA for a number of reasons, including, without limitation, the failure to identify the records custodian.

98. APRA contemplates action by a records custodian; the April 6, 2026 letter never identifies who the records custodian is, who reviewed the request, who

conducted the search, or who made the denial determination, demonstrating clearly via the evidence the creation of ambiguity regarding accountability.

99. The April 6, 2026 letter fails to describe any search conducted.

100. The April 6, 2026 letter does not disclose whether a search occurred, what systems were searched, who searched them, or whether any responsive records were located.

101. Search efforts are as important when defending a denial as the explanation given; the April 6, 2026 letter omits such information.

### E. Combined Effect of the March 23 and April 6 Letters

102. Both the March 23, 2026 and April 6, 2026 letters (Exhibits A and B) are unsigned and do not comply with APRA for multiple reasons, including, without limitation, the failure to identify the records custodian.

103. Both letters constitute governmental determinations affecting statutory rights that were issued without identifying the governmental actor responsible.

104. In both letters, government exercised authority. In both letters, government denied access to records. In both letters, government concealed the identity of the decision-maker.

105. Citizens cannot evaluate conflicts, bias, authority, or qualifications, or seek meaningful review when ambiguity exists as to who is the decision-maker, author, or custodian of the records sought.

106. This conduct violates citizens' right to due process of law and thus presents a colorable due process theory. The First Amendment protects petitioning government, seeking information, and pursuing grievances.

107. Anonymous governmental decision-making impairs meaningful petitioning because a citizen cannot identify the official responsible for the denial. Both the March 23, 2026 and April 6, 2026 letters fail to identify whether responsive electronic records exist, make unsupported claims of "undue burden," conflate

requests for records with requests for answers to questions, fail to identify the governmental actor making the determination, and fail to identify the records custodian or decision-maker.

## F. Ethical Context and Attorney Conduct warranting referral for discipline

108.    Rhode Island Rules of Professional Conduct appear implicated against multiple Defendants who are believed to be licensed attorneys.

109.    Rule 8.4[c] — Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation — is implicated where attorneys issue legal determinations while concealing the identity of the responsible attorney, which could constitute a form of misrepresentation, deceit, and possible criminal/civil fraud.

110.    In the circumstances described herein, attorneys are believed to have drafted the legal analysis, reached the legal conclusions, directed issuance of the letters, and intentionally omitted any indication that an attorney authored or approved them.

111.    The letters create ambiguity regarding who exercised legal judgment, whose legal opinion is being expressed, and whether the decision represents the custodian's determination or legal counsel's advice.

112.    A Rule 8.4[c] violation typically but not exclusively depends on intent; here, there are a multitude of letters both from the Town and from the Law Firm Defendant, both working in concert with each other, to deny statutory and constitutional rights to the citizenry, the intent is implied by the damage resulting.

113.    While merely omitting a signature is not automatically deceitful, the repetitive nature of the behavior demonstrates a custom and practice of deliberate effort to conceal the responsible legal actor. Especially given the fact the practice occurs on at least three different letterheads for: Town of South Kingstown; law firm defendant UTR; and South Kingstown Municipal

Court. Exhibits A, B, C, and D together illustrate this multi-letterhead anonymity.

114.   Rule 8.4(d) — Conduct Prejudicial to the Administration of Justice — is implicated because anonymous legal determinations systematically impede meaningful judicial review, appeals, and administrative appeals, as no decision maker is identified.

115.   Anonymous legal decision-making prevents citizens from identifying decision-makers, frustrates judicial review, impairs ethics complaints, impairs recusal inquiries, and obscures conflicts of interest.

116.   Such practices undermine public confidence in governmental legal processes.

117.   Rule 1.13 — Organization as Client — provides that if municipal counsel, as here, represents the Town, counsel's client is the municipal entity, not unnamed officials acting without accountability.

118.   Transparency about who is exercising legal authority better serves the organizational client by promoting accountability and public confidence.

119.   The lack of attribution or signature of the authorizing, drafting, authoring legal decision-making authority fails to promote confidence in governance and, if recommended by an attorney, rises to the level of gross willful misconduct.

120.   Rule 4.1 — Truthfulness in Statements to Others — is implicated where an attorney conceals their identity while issuing governmental legal determinations in a manner inconsistent with judicial practices, by denying citizens the right to appeal or access the Courts due to lack of attribution, which in and of itself constitutes a false statement to others.

121.   Further, if the letters claim "no such document exists" or "undue burden" and these statements are made without any investigation or factual basis, an issue could arise regarding whether factual representations were made

recklessly or knowingly without adequate support, by attorneys representing a governmental client, which in turn is representation of the citizenry itself.

122. If legal determinations affecting statutory and/or constitutional rights are intentionally issued anonymously, Plaintiff and the public argue this is inconsistent with principles of governmental accountability, transparency, public confidence, and identifiable official action.

123. Government attorneys have responsibilities beyond those of private advocates.

124. Here, legal determinations affecting statutory and/or constitutional rights are intentionally issued anonymously; Plaintiff and the public argue this is inconsistent with principles of governmental accountability, transparency, public confidence, and identifiable official action.

125. Where duties clearly imposed by law and/or ethics rules exist, the failure to supervise subordinate attorneys who may be, as the evidence suggests, operating unethically and immorally by knowingly omitting attribution and signatures from legal correspondence, is itself problematic.

126. The Preamble to the Rules of Professional Conduct, though not itself a disciplinary rule, articulates that lawyers are public citizens, officers of the legal system, and persons with special responsibility for the quality of justice.

127. Those principles reinforce that lawyers are expected to promote confidence in the legal system rather than diminish it.

128. Rule 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers) requires lawyers with managerial or supervisory authority to make reasonable efforts to ensure that subordinate lawyers conform to the Rules of Professional Conduct.

129. A supervisory lawyer can, in some circumstances, be professionally responsible if they order, ratify, or knowingly fail to address another lawyer's unethical conduct.

130.   If assistant solicitors or subordinate lawyers were routinely issuing legally significant determinations in a manner that violated ethical rules, a supervisory issue could arise.

131.   Supervisory issues further arise where statutory and constitutional rights are affected via unsigned, unattributed legal determinations.

132.   Municipal attorneys do not owe a fiduciary duty to individual members of the public in the same way they owe duties to their client, but government lawyers occupy a different role than private counsel.

133.   Courts and ethics authorities often recognize that government lawyers are expected to act fairly, uphold the Constitution, ensure their governmental client complies with applicable law, advise officials against unlawful action, and protect the integrity of governmental processes.

134.   These responsibilities arise from their role as public lawyers rather than from a traditional fiduciary relationship with citizens.

135.   Here, the bad acts and potentially unlawful behavior, which certainly appears to rise to ethical and moral violations of common decency and the rights of the citizens to have meaningful judicial review of legal determinations, implicate such responsibilities.

136.   If a Town Solicitor becomes aware that a municipal department is engaging in practices that are unlawful or expose the municipality to liability, the constituents (members of the public) expect competent legal counsel to advise the client accordingly.

137.   Equally important are the responsibilities and duties of supervising partners to ensure their subordinates are not violating the rights of the client or the citizens, especially as here where the conduct is so egregious that it tarnishes the image of the law in front of the governed.

138.   Based on the repetitive nature of the unsigned and unattributed letters, which include a multitude from the Town and even from the Law Firm Defendant which employs the Town Solicitor and Assistant Solicitor,

Defendants have repeatedly issued legally operative determinations anonymously, failed to identify the responsible custodian, disregarded statutory APRA requirements, denied requests without adequate factual investigation, and denied constitutional rights under the First and Fourteenth Amendments.

139. Municipal counsel should advise the Town on the legal risks and recommend corrective action, not, as here, where the Law Firm Defendant doubles down on the bad behavior by issuing unsigned letters itself and issuing prepayment-demand correspondence (Exhibit C).

140. Rule 1.13 requires a lawyer representing an organization to act in the best interests of the organizational client. If counsel knows municipal officials are engaging in conduct likely to expose the Town to litigation or liability, competent representation ordinarily includes advising the client about those risks and recommending lawful alternatives.

141. Rule 8.4(a) provides that a lawyer also commits misconduct by violating the Rules through the acts of another, knowingly assisting another to violate the Rules, or directing another to engage in prohibited conduct.

142. Thus, if a supervisory attorney knowingly directed an improper practice, this rule could become relevant.

143. Rule 2.1 provides that, in rendering advice, a lawyer may refer not only to law but also to moral, economic, social, and political considerations.

144. For government counsel, this can include advising municipal officials about transparency, accountability, public confidence, litigation exposure, and constitutional implications.

145. In short, municipal counsel has duties of competent supervision, lawful legal advice, and institutional compliance, rather than merely asserting a generalized fiduciary duty to every citizen.

146.   The Town Solicitor's Office's institutionalization of anonymous legal decision-making without adequate supervision or accountability appears, via prima facie evidence, to violate both the law and ethics rules.

## G. Constitutional Concerns (Factual Allegations of Impact)

147.   One could argue that government may not meaningfully deprive statutory rights while concealing the identity of the governmental official responsible for the decision.

148.   Potential harms include inability to investigate bias, investigate conflicts, determine authority, seek recusal, pursue accountability, and conduct meaningful judicial review.

149.   Anonymous governmental legal determinations impede meaningful petitioning because citizens cannot direct appeals, complaints, or inquiries to the actual decision-maker.

150.   Anonymous decision-making may complicate litigation by making it more difficult to identify proper defendants or witnesses.

## H. Open Government Principles (Factual Allegations of Impact)

151.   Even if APRA does not expressly require signatures, anonymous legal determinations raise broader concerns about transparency.

152.   Potential consequences include inability to determine who exercised governmental authority, inability to assess qualifications or delegated authority, inability to identify conflicts of interest, inability to determine whether the purported decision-maker actually approved the decision, and difficulty obtaining testimony during litigation.

153.   These concerns are relevant in challenging governmental practices, even if not independently unlawful, though Plaintiff argues the actions and behavior of multiple attorneys acting in concert with employed governmental employees and officials have a moral and ethical responsibility to avoid

behaviors that frustrate statutory and constitutional rights of the citizens who consent to be governed.

## I. Repetition Across Multiple Requests and Official Channels

154. The pattern of unattributed governmental decision-making described herein did not arise from a single communication or isolated occurrence.

155. Rather, Plaintiff observed the same pattern repeatedly throughout numerous APRA matters involving the Town.

156. The challenged conduct appeared across multiple requests submitted on different dates and involving different subject matters.

157. Despite variations in subject matter, scope, custodians, and requested records, the challenged communications repeatedly exhibited materially similar omissions.

158. Those omissions included the absence of signatures.

159. Those omissions included the absence of identifiable decisionmakers.

160. Those omissions included the absence of identified attorneys responsible for legal conclusions.

161. Those omissions included the absence of identified custodians exercising statutory authority.

162. Those omissions included the absence of identifiable governmental actors accountable for the determinations being communicated.

163. The challenged communications nevertheless purported to exercise governmental authority and affect statutory rights.

164. Upon information and belief, the recurring nature of the omissions demonstrates the existence of a standardized administrative practice rather than isolated clerical oversight.

165. The challenged conduct occurred across multiple communications separated in time.

166. The challenged conduct occurred despite differing factual circumstances and differing requests.

167. The consistency of the challenged conduct supports a reasonable inference that the omissions resulted from an established governmental practice.

168. The repeated nature of the conduct further supports a reasonable inference that supervisory personnel were aware of the practice.

169. The continued use of the challenged practices over time supports a reasonable inference that policymakers either approved, tolerated, ratified, or were deliberately indifferent to the conduct.

170. Plaintiff repeatedly objected to the absence of attribution and accountability within governmental determinations.

171. Plaintiff repeatedly sought clarification concerning the identity of the governmental actors exercising authority.

172. Despite such objections and requests for clarification, the challenged practices continued.

173. No meaningful corrective action was undertaken to ensure attribution of legally operative governmental determinations.

174. The continued use of the challenged practices after notice supports a reasonable inference of institutional acceptance.

175. The challenged conduct therefore reflects more than inadvertent administrative error.

176. Instead, the conduct reflects a recurring governmental practice capable of repetition and ongoing application.

177. Upon information and belief, the challenged conduct constitutes a municipal custom, usage, practice, policy, ratification, or manifestation of deliberate indifference within the meaning of Monell v. Department of Social Services.

178. The challenged conduct was sufficiently widespread and persistent to have the force of municipal policy.

## J. Municipal and Counsel Participation in the Challenged Practice

179. The challenged communications appeared through multiple official channels associated with the Town.

180. Certain communications appeared upon official municipal letterhead.

181. Certain communications were transmitted through official governmental records processes.

182. Certain communications contained substantive legal analysis, legal conclusions, statutory interpretation, and citations to legal authority.

183. Certain communications relied upon legal reasoning ordinarily associated with the exercise of legal judgment.

184. Certain communications referenced Attorney General decisions, statutory provisions, judicial authority, or legal doctrines.

185. Despite containing substantive legal analysis, numerous communications failed to identify the individual responsible for the legal conclusions contained therein.

186. In certain instances, communications associated with municipal counsel similarly omitted identifiable authorship.

187. In certain instances, communications concluded with directives instructing Plaintiff to contact "me" despite the absence of any identified individual within the correspondence.

188. As a result, Plaintiff could not determine whether particular determinations were made by attorneys, records custodians, municipal officials, unidentified employees, contractors, or other persons acting under color of governmental authority.

189. Plaintiff could not determine whether particular determinations had been reviewed by counsel.

190. Plaintiff could not determine whether particular determinations had been approved by policymakers.

191. Plaintiff could not determine whether legal conclusions had been prepared by licensed attorneys.

192. Plaintiff could not determine whether legal conclusions had been prepared by nonlawyers.

193. Plaintiff could not determine the chain of authority responsible for the challenged determinations.

194. Plaintiff could not identify the governmental actor exercising authority sufficient to permit meaningful challenge, accountability, or review.

195. The resulting opacity materially impaired Plaintiff's ability to seek administrative review.

196. The resulting opacity materially impaired Plaintiff's ability to pursue accountability mechanisms.

197. The resulting opacity materially impaired Plaintiff's ability to evaluate conflicts of interest, supervisory responsibility, or decision-making authority.

198. The resulting opacity materially impaired Plaintiff's exercise of rights secured by law.

## K. Ongoing Nature of the Controversy

199. Plaintiff continues to submit and intends to continue submitting requests for public records and governmental information.

200. Plaintiff remains subject to the same governmental processes challenged herein.

201. Plaintiff reasonably expects to encounter the same practices in future interactions with the Town.

202. The challenged practices remain capable of repetition.

203.   The challenged practices continue to present an ongoing controversy concerning constitutional accountability, procedural due process, and municipal transparency.

204.   Absent judicial intervention, Plaintiff faces a substantial likelihood of continued exposure to the same unattributed governmental decision-making processes.

205.   The controversy presented is therefore real, immediate, ongoing, and appropriate for declaratory and prospective injunctive relief.

206.   An actual case or controversy exists concerning the legality and constitutionality of the challenged municipal practices.

## L. Attorneys Repeatedly issuing unsigned (unattributed) letters on UTR letterhead and then denying who wrote the letter – Exhibit C

207.   In a letter dated April 7th 2026, UTR by an anonymous attorney or partner issued a letter that was then repeatedly over the course of days served against the Plaintiff repeatedly approximately 10 times once each to the following APRA requests: APRA-1281; APRA–1284; APRA-1286; APRA-1287; APRA-1289; APRA-1290; APRA-1291; APRA-1292; APRA-1293; APRA-1295. A true and correct copy of this April 7, 2026 UTR correspondence ("April 7, 2026 UTR Letter") is attached as **Exhibit C** and incorporated herein by reference.

208.   Further Defendant's bad acts under the UTR letterhead include:

209.   Defendants, acting under color of state law, arbitrarily and capriciously aggregated multiple, discrete APRA requests submitted by Plaintiff within a thirty-day period into a single "mega-request" for fee and timing purposes, without regard to subject-matter, scope, or custodian, thereby exceeding the plain and intended scope of R.I. Gen. Laws § 38-2-4 and weaponizing the aggregation provision as a punitive device rather than a neutral cost-accounting mechanism.

210. Defendants issued an inflated and speculative "prepayment estimate" by extrapolating an alleged 47 hours of work for three police-department requests into a global 156.67-hour figure for all outstanding requests via crude arithmetic scaling, without any itemization, factual foundation, or record-specific analysis, in violation of APRA's requirement that fees be reasonable and grounded in actual search and retrieval costs, and in reckless disregard of Plaintiff's statutory right of access.

211. Defendants' fee demand of $2,350.05, based on an unsubstantiated and non-transparent 156.67-hour estimate, constitutes an arbitrary and capricious barrier to access, functioning as a constructive denial of Plaintiff's APRA requests by conditioning any substantive processing or disclosure on the advance payment of an excessive, deterrent-level sum, contrary to the remedial purpose of R.I. Gen. Laws § 38-2-1 et seq. (as reflected in Exhibit C).

212. Defendants improperly invoked both APRA's extension provision and its tolling mechanism in tandem, announcing a twenty-business-day extension while simultaneously purporting to toll the response deadline indefinitely until full prepayment is made, thereby distorting statutory timing safeguards into an open-ended delay tactic that effectively nullifies the ten-business-day response requirement and deprives Plaintiff of timely access.

213. Defendants misapplied the "single request" rule of § 38-2-4 not merely to limit the "first hour free" benefit, but to aggregate fees, timing, and tolling across numerous independent APRA submissions, resulting in an ultra vires construction of the statute that is inconsistent with the mandate that public-records provisions be liberally construed in favor of access and narrowly construed against secrecy.

214. Defendants' letter vaguely asserted that "many" requested documents "may be exempt" from disclosure, without identifying any specific statutory exemptions or providing record-by-record justifications, thereby failing to furnish sufficient legal grounds for denial

215. Defendants' letter vaguely asserted that "many" requested documents "may be exempt" from disclosure, without identifying any specific statutory exemptions or providing record-by-record justifications, thereby failing to furnish sufficient legal grounds for denial or partial denial and depriving Plaintiff of the information necessary to intelligently narrow, challenge, or appeal under R.I. Gen. Laws § 38-2-7 and § 38-2-8.

216. By refusing to commence substantive review, search, or partial production of any records absent full prepayment of an inflated and speculative estimate, Defendants transformed APRA's cost-recovery provisions into a mechanism for blanket obstruction, amounting to a constructive denial of access that frustrates the core purpose of the statute and chills the exercise of Plaintiff's rights to obtain information about governmental operations.

217. Defendants' challenged conduct—including over-aggregation, speculative fee inflation, indefinite tolling, and refusal to process absent full payment—was undertaken with the intent and/or effect of deterring Plaintiff from exercising his rights of access to public records and to petition the government for redress of grievances, thereby imposing an unconstitutional financial burden and chilling effect on Plaintiff's First Amendment rights.

218. Defendants selectively targeted Plaintiff's robust use of APRA—characterizing his requests as "numerous" and "voluminous" and conditioning any response on an onerous prepayment—while failing to show similar treatment of other requesters, thereby engaging in viewpoint- and volume-based retaliation that unreasonably burdens Plaintiff's right to seek information and petition the government in violation of the First and Fourteenth Amendments.

219. Defendants' reliance on an unsigned (or improperly executed) demand letter, issued through outside counsel and purporting to represent the final position of the Town, further underscores the arbitrary and procedurally defective nature of the purported "response," which fails to clearly indicate

whether it constitutes a denial, partial denial, or mere estimate, thereby creating confusion, impairing Plaintiff's ability to invoke statutory appeal rights, and reinforcing the conclusion that Defendants acted in bad faith.

220.   Collectively, Defendants' fee practices, aggregation abuse, and timing manipulations convert what should be a neutral, ministerial records-processing regime into an adversarial, pay-to-play system of access, in which the exercise of statutory and constitutional rights is conditioned on the ability to pay an arbitrary and excessive financial exaction, amounting to an unconstitutional condition and a denial of equal access to public information.

221.   Defendants' conduct, taken as a whole, demonstrates a deliberate pattern and practice of obstructing, delaying, and deterring Plaintiff's lawful efforts to obtain public records, in derogation of Rhode Island's explicit public policy favoring open government and in violation of Plaintiff's rights under APRA and the First and Fourteenth Amendments to the United States Constitution.

## M. June 25, 2026 Unsigned Prepayment Letter – Exhibit D

222.   On or about June 25, 2026, the Town issued another unsigned correspondence on Town of South Kingstown letterhead regarding Plaintiff's later APRA requests submitted June 15–23, 2026, logged as APRA-1393, APRA-1394, APRA-1398, APRA-1399, and APRA-1404.

223.   A true and correct copy of this June 25, 2026 letter ("June 25, 2026 Letter") is attached as **Exhibit D** and incorporated herein by reference.

224.   As reflected in Exhibit D, the Town states that its IT Department conducted a revised keyword search for emails containing "red flagged" and/or "red flag" between January 27, 2026 and June 21, 2026, identifying 499 potentially responsive emails for a portion of APRA-1398.

225.   Exhibit D explains that this subset "only covers a fraction" of Plaintiff's requests, because APRA-1398 also seeks non-email correspondence and

there are four additional pending APRA requests with fourteen separate subparts.

226.    Based on an assumed review time of two minutes per email—citing *Jerry Transparency v. City of Providence*, PR 19-29—the Town estimates 16.64 hours to process the 499 emails, and then extrapolates across all components of APRA-1398 and the fourteen subparts of Plaintiff's other APRA requests to estimate a total of 266.24 hours of staff time.    Refusing to then allow for narrowed request to begin with of just the initial 16 hours quoted, which they purposefully balloon to more than 266 hours in order to make economically impossible to achieve transparency to governmental actions.

227.    With one free hour of search and retrieval time, Exhibit D demands a **prepayment estimate of $3,978.60,** to be applied across all of Plaintiff's APRA requests submitted within a 30-day period or within 30 days of an unpaid estimate.    Nearly $4,000 for basic transparency appears to be a bargain when the Court finally sees other departments of the Town charging nearly $140,000 for employment verification and then sending letters correcting the amount to $92,000 or more!

228.    Exhibit D reiterates that some records "may be exempt" but must still be reviewed for exemptions, citing *Duxbury v. Town of Coventry*, PR 13-16, and asserts the Town may charge $15-per-hour even for reviewing records ultimately not produced.

229.    Exhibit D states that, due to the "voluminous nature" of the requests, the Town is exercising its right under R.I. Gen. Laws § 38-2-3(e) to extend the 10-business-day response period by 20 additional business days, and that the response deadline is tolled until payment of the prepayment estimate is received.

230.    Exhibit D offers Plaintiff the option to resubmit with a narrower scope and then reproduces standard § 38-2-8 appeal language, inviting complaints to the Attorney General or lawsuits in Superior Court.

231.   Like Exhibits A and B, the June 25, 2026 Letter is unsigned and fails to identify the records custodian, searching official, or attorney responsible for the estimate and tolling decisions, reinforcing the pattern of anonymity and non-attribution.

232.   Exhibit D therefore provides a later-in-time example of Defendants' continued use of large prepayment demands, aggregation, and extended tolling, again embedded in an unsigned, unattributed communication affecting Plaintiff's statutory and constitutional rights.

## VI. MUNICIPAL CUSTOM, POLICY, PRACTICE, AND RATIFICATION

233.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

234.   The constitutional injuries alleged herein were not the product of an isolated administrative mistake, clerical oversight, or unauthorized act by a single employee.

235.   Rather, the challenged conduct occurred repeatedly over multiple requests, multiple communications, multiple dates, and multiple governmental interactions.

236.   The challenged conduct appeared through official governmental channels and within official governmental processes.

237.   The challenged conduct appeared in communications purporting to exercise governmental authority affecting statutory rights, including but not limited to Exhibits A, B, C, and D.

238.   The challenged conduct included repeated issuance of unsigned governmental determinations.

239.   The challenged conduct included repeated issuance of unattributed legal conclusions.

240. The challenged conduct included repeated omission of accountable governmental decisionmakers.

241. The challenged conduct included repeated omission of responsible custodians.

242. The challenged conduct included repeated omission of responsible legal actors.

243. The challenged conduct persisted despite repeated opportunities to correct, clarify, or identify the governmental actors exercising authority.

244. The consistency, repetition, and persistence of the challenged conduct support a reasonable inference that the conduct resulted from an established municipal custom, policy, practice, usage, supervisory failure, ratification, or deliberate indifference.

245. Upon information and belief, supervisory officials were aware of the challenged practices.

246. Upon information and belief, policymakers either expressly approved, implicitly ratified, tolerated, acquiesced in, or remained deliberately indifferent to the challenged practices.

247. Upon information and belief, the challenged practices became sufficiently widespread and persistent to possess the force of municipal policy.

248. The injuries alleged herein were the direct, foreseeable, and natural consequence of those municipal customs, practices, ratifications, and failures of supervision.

249. Accordingly, the Town of South Kingstown is responsible under 42 U.S.C. § 1983 for constitutional injuries resulting from those municipal customs, practices, policies, ratifications, and manifestations of deliberate indifference.

# VII. COUNTS

**COUNT I**

DECLARATORY JUDGMENT – PROCEDURAL DUE PROCESS

(U.S. CONST. AMEND. XIV)

250.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

251.  The Due Process Clause of the Fourteenth Amendment protects citizens from arbitrary governmental action and requires constitutionally adequate procedures when governmental actors exercise authority affecting legal rights.

252.  Procedural due process requires meaningful notice and a meaningful opportunity to challenge governmental action.

253.  Meaningful notice necessarily includes sufficient information to identify the governmental actor exercising authority against the citizen.

254.  Without identification of the governmental actor responsible for a determination, meaningful review becomes substantially impaired.

255.  Without identification of the governmental actor responsible for a determination, meaningful accountability becomes substantially impaired.

256.  Without identification of the governmental actor responsible for a determination, the ability to evaluate conflicts of interest, bias, recusal issues, supervisory responsibility, and legal authority becomes substantially impaired.

257.  Plaintiff alleges that the repeated issuance of unattributed governmental determinations deprived him of constitutionally adequate procedures and protections of law and the U.S. Constitution. Concrete examples include the unsigned March 23, 2026 Letter (Exhibit A), the unsigned April 6, 2026 Double-Letterhead Letter (Exhibit B), and the unsigned June 25, 2026 prepayment Letter (Exhibit D).

258. Plaintiff further alleges that the challenged practices created an unreasonable risk of arbitrary, erroneous, unreviewable, and unaccountable governmental action.

259. An actual and justiciable controversy exists concerning whether governmental entities may constitutionally exercise legal authority affecting statutory rights through anonymous and unattributed governmental determinations.

260. Plaintiff seeks a declaration that governmental authority affecting statutory rights may not be exercised through anonymous or unattributed determinations that conceal the identity of the responsible governmental actor.

261. Plaintiff further seeks a declaration that constitutionally adequate governmental procedures require identification of the governmental actor exercising authority affecting statutory rights.

## COUNT II

DECLARATORY JUDGMENT – FIRST AMENDMENT RIGHT TO PETITION GOVERNMENT

262. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

263. The First Amendment protects the right of citizens to petition government for redress of grievances.

264. The First Amendment protects the right of citizens to seek governmental information, accountability, transparency, and review of governmental action.

265. Meaningful exercise of petitioning rights requires that citizens be able to identify the governmental actor responsible for the challenged governmental action.

266. The challenged practices materially burden the exercise of petitioning rights by concealing the identity of governmental decisionmakers, as exemplified by Exhibits A, B, C, and D.

267. The challenged practices materially burden the ability of citizens to direct objections, appeals, requests for reconsideration, complaints, criticism, and requests for accountability toward the responsible governmental actor.

268. The challenged practices impair the effectiveness of constitutionally protected petitioning activity.

269. An actual and justiciable controversy exists concerning whether governmental entities may constitutionally conceal the identity of governmental decisionmakers while exercising authority affecting statutory rights.

270. Plaintiff seeks a declaration that governmental entities may not burden constitutionally protected petitioning activity through systematic concealment of governmental decisionmakers.

271. Plaintiff further seeks a declaration that identifiable governmental decisionmakers are necessary to ensure meaningful exercise of First Amendment petitioning rights.

**COUNT III**

MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
(MONELL LIABILITY)

272. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

273. A municipality may be held liable under 42 U.S.C. § 1983 where constitutional injuries result from an official policy, custom, practice, usage, ratification, supervisory failure, or deliberate indifference attributable to the municipality.

274. Plaintiff alleges that the constitutional injuries described herein were caused by recurring municipal practices rather than isolated acts of individual employees.

275. The challenged conduct occurred repeatedly through official governmental processes.

276. The challenged conduct occurred over an extended period of time.

277. The challenged conduct appeared in multiple communications affecting statutory rights, including Exhibits A, B, C, and D.

278. The challenged conduct involved repeated omissions of signatures, accountable decisionmakers, custodians, attorneys, and other governmental actors exercising authority.

279. The challenged conduct persisted despite repeated opportunities for correction and clarification.

280. The challenged conduct therefore supports a reasonable inference that the practices complained of were known to supervisory officials and policymakers.

281. Upon information and belief, policymakers approved, ratified, tolerated, acquiesced in, or remained deliberately indifferent to the challenged practices.

282. Upon information and belief, the challenged practices became sufficiently widespread and persistent to possess the force of municipal policy.

283. The constitutional injuries suffered by Plaintiff were the foreseeable and direct result of those municipal customs, practices, usages, ratifications, and failures of supervision.

284. The Town of South Kingstown therefore bears responsibility under 42 U.S.C. § 1983 for the constitutional injuries alleged herein.

285. An actual and justiciable controversy exists concerning whether the challenged municipal customs, practices, and policies are constitutional.

286. Plaintiff seeks declaratory and prospective injunctive relief against the Town concerning those practices.

287.   Plaintiff further seeks declarations identifying the challenged practices as municipal customs, policies, usages, ratifications, or manifestations of deliberate indifference within the meaning of Monell v. Department of Social Services.

288.   Plaintiff further seeks prospective relief preventing future implementation of such practices.

289.   Plaintiff seeks such other equitable relief as may be necessary to remedy the constitutional injuries described herein.

## COUNT IV

DECLARATORY RELIEF REGARDING IDENTIFIABLE GOVERNMENTAL AUTHORITY

290.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

291.   An actual controversy exists concerning whether governmental authority affecting statutory rights may be exercised through anonymous or unattributed governmental determinations.

292.   An actual controversy exists concerning whether governmental actors may exercise legal authority while concealing the identity of the person responsible for the governmental determination.

293.   An actual controversy exists concerning whether citizens possess a constitutional right to know the identity of the governmental actor exercising authority affecting their statutory rights.

294.   Plaintiff contends that constitutional principles of due process, accountability, transparency, and meaningful review require identification of the governmental actor exercising governmental authority.

295.   Defendant, through its practices and conduct as reflected in Exhibits A, B, C, and D, has acted in a manner inconsistent with those principles.

296.   The controversy is concrete, immediate, and ongoing because Plaintiff remains subject to the same governmental processes and practices.

297. Declaratory relief will resolve uncertainty concerning the legality and constitutionality of the challenged practices.

298. Plaintiff seeks a declaration that governmental authority affecting statutory rights may not be exercised through anonymous or unattributed determinations.

299. Plaintiff seeks a declaration that governmental entities must identify the governmental actor exercising authority affecting statutory rights.

300. Plaintiff seeks a declaration that meaningful procedural due process requires identifiable and accountable governmental decisionmakers.

301. Plaintiff seeks a declaration that governmental systems concealing the identity of decisionmakers materially impair transparency, accountability, and review.

302. Plaintiff seeks such additional declarations as may be necessary to clarify the rights and obligations of the parties.

**COUNT V**

DECLARATORY RELIEF AND REQUEST FOR REFERRAL FOR ATTORNEY DISCIPLINE

*(RHODE ISLAND RULES OF PROFESSIONAL CONDUCT AND FEDERAL COURT DISCIPLINE)*

303. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

304. Plaintiff alleges that the misconduct described herein, including but not limited to the drafting, approval, and issuance of anonymous and unattributed governmental legal determinations affecting statutory and constitutional rights, was undertaken and/or supervised by attorneys licensed to practice law in the State of Rhode Island and, upon information and belief, by attorneys admitted to practice before the United States District Court for the District of Rhode Island.

305.   Plaintiff alleges that such conduct appears to violate multiple provisions of the Rhode Island Rules of Professional Conduct, including but not limited to Rules 1.13, 2.1, 4.1, 5.1, 8.4(a), 8.4©, and 8.4(d), and corresponding obligations imposed upon attorneys admitted to practice before this Court.

306.   Rule 8.4© (Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation) prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. Issuing legally operative governmental determinations while concealing the identity of the responsible attorney could constitute a form of misrepresentation, deceit, and possible fraud, particularly where attorneys are believed to have drafted the legal analysis, reached the legal conclusions, directed issuance of the letters, and intentionally omitted any indication that an attorney authored or approved them.

307.   The anonymous letters at issue, including but not limited to the letters attached as Exhibits A, B, C, and D, create ambiguity regarding who exercised legal judgment, whose legal opinion is being expressed, and whether the decision represents the custodian's determination or legal counsel's advice. A Rule 8.4© violation typically depends on intent; here, there are a multitude of letters both from the Town and from the Law Firm Defendant, both working in concert with each other, to deny statutory and constitutional rights to the citizenry. While merely omitting a signature is not automatically deceitful, the repetitive nature of the behavior demonstrates a custom and practice of deliberate effort to conceal the responsible legal actor.

308.   Rule 8.4(d) (Conduct Prejudicial to the Administration of Justice) is implicated because anonymous legal determinations systematically impede meaningful judicial review, appeals, and administrative appeals, as no decisionmaker is identified. Anonymous legal decision-making prevents citizens from identifying decision-makers, frustrates judicial review, impairs ethics complaints, impairs recusal inquiries, and obscures conflicts of

interest, thereby undermining public confidence in governmental legal processes.

309.  Rule 1.13 (Organization as Client) provides that where municipal counsel represents the Town, counsel's client is the municipal entity, not unnamed officials acting without accountability. Transparency about who is exercising legal authority better serves the organizational client by promoting accountability and public confidence. The lack of attribution or signature of the authorizing, drafting, authoring legal decision-making authority fails to promote confidence in governance and, if recommended or tolerated by an attorney, rises to the level of gross willful misconduct.

310.  Rule 4.1 (Truthfulness in Statements to Others) is implicated where an attorney conceals their identity while issuing governmental legal determinations in a manner inconsistent with judicial practices, by denying citizens the right to appeal or access the Courts due to lack of attribution. Such conduct, in and of itself, constitutes a false statement to others regarding who is responsible for the legal determination. Moreover, where letters claim that "no such document exists" or assert "undue burden" without adequate investigation or factual basis, an issue arises as to whether factual representations were made recklessly or knowingly without adequate support by attorneys representing a governmental client, which in turn is representation of the citizenry itself.

311.  The Preamble to the Rhode Island Rules of Professional Conduct describes lawyers as public citizens, officers of the legal system, and persons with special responsibility for the quality of justice. Those principles reinforce that lawyers are expected to promote confidence in the legal system rather than diminish it. Plaintiff alleges that the conduct described herein is inconsistent with those principles.

312.  Rule 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers) requires lawyers with managerial or supervisory authority to make

reasonable efforts to ensure that subordinate lawyers conform to the Rules of Professional Conduct, and provides that a supervisory lawyer can, in some circumstances, be professionally responsible if they order, ratify, or knowingly fail to address another lawyer's unethical conduct. If assistant solicitors or subordinate attorneys were routinely issuing legally significant determinations in a manner that violated ethical rules, a supervisory issue arises. Supervisory issues further arise where statutory and constitutional rights are affected via unsigned, unattributed legal determinations.

313.    Municipal attorneys do not owe a traditional fiduciary duty to individual members of the public in the same sense as to individual clients, but government lawyers occupy a special role. Courts and ethics authorities often recognize that government lawyers are expected to act fairly, uphold the Constitution, ensure their governmental client complies with applicable law, advise officials against unlawful action, and protect the integrity of governmental processes. Here, the bad acts and potentially unlawful behavior described—appearing to rise to ethical and moral violations and depriving citizens of meaningful judicial review of legal determinations—conflict with those obligations.

314.    If a Town Solicitor becomes aware that a municipal department is engaging in practices that are unlawful or expose the municipality to liability, constituents reasonably expect competent legal counsel to advise the client accordingly. Equally important are the responsibilities and duties of supervising partners at the Law Firm Defendant to ensure that their subordinates are not violating the rights of the municipal client or the citizens, especially where, as alleged here, the conduct is so egregious that it tarnishes the image of the law before the governed.

315.    Based on the repetitive nature of the unsigned and unattributed letters, which include a multitude from the Town and from the Law Firm Defendant which employs the Town Solicitor and Assistant Solicitor, Plaintiff alleges that

attorneys have repeatedly: (a) issued legally operative determinations anonymously; (b) failed to identify the responsible custodian; © disregarded statutory APRA requirements; (d) denied requests without adequate factual investigation; and (e) denied constitutional rights under the First and Fourteenth Amendments. Municipal counsel should advise the Town on the legal risks and recommend corrective action, not, as here, double down on the bad behavior by issuing unsigned letters itself.

316.    Rule 1.13 requires a lawyer representing an organization to act in the best interests of the organizational client. If counsel knows municipal officials are engaging in conduct likely to expose the Town to litigation or liability, competent representation ordinarily includes advising the client about those risks and recommending lawful alternatives.

317.    Rule 8.4(a) provides that a lawyer also commits misconduct by violating the Rules through the acts of another, knowingly assisting another to violate the Rules, or directing another to engage in prohibited conduct. Thus, if any supervisory attorney knowingly directed or knowingly failed to correct the practices alleged herein, Rule 8.4(a) is implicated.

318.    Rule 2.1 (Advisor) provides that, in rendering advice, a lawyer may refer not only to law but also to moral, economic, social, and political considerations. For government counsel, this includes advising municipal officials about transparency, accountability, public confidence, litigation exposure, and constitutional implications. The institutionalized use of anonymous legal decision-making without adequate supervision or accountability appears, via prima facie evidence, to violate both the law and ethics rules.

319.    Plaintiff does not seek money damages on the basis of these ethics rules, but instead seeks (a) declaratory recognition that the alleged conduct, if proven, constitutes professional misconduct under the Rhode Island Rules of Professional Conduct, and (b) appropriate referral of such matters to the bodies charged with attorney discipline.

320.    Plaintiff respectfully requests that this Court, upon adjudication of the merits and/or upon a finding of attorney misconduct, enter findings that the conduct of the attorney Defendants and any other attorney participants in the challenged practices violated or appears to have violated the Rhode Island Rules of Professional Conduct, including but not limited to Rules 1.13, 2.1, 4.1, 5.1, 8.4(a), 8.4[c], and 8.4(d).

321.    Plaintiff further respectfully requests that this Court, in the exercise of its inherent authority over officers of the court and consistent with applicable federal and local rules, refer the conduct of any attorney Defendant or attorney participant who is licensed in Rhode Island to the appropriate disciplinary authorities of the Rhode Island Supreme Court (including its Office of Disciplinary Counsel or successor body) for investigation and such disciplinary proceedings as that Court deems appropriate.

322.    Plaintiff further respectfully requests that this Court, in the exercise of its inherent authority and pursuant to the Local Rules and disciplinary procedures of the United States District Court for the District of Rhode Island, refer the conduct of any attorney Defendant or attorney participant who is admitted to practice before this Court to this Court's designated disciplinary committee, panel, or judge for consideration of appropriate action, including but not limited to investigation, reprimand, suspension, or other discipline as warranted.

323.    Plaintiff further requests that the Court's final judgment expressly authorize and direct the Clerk to transmit certified copies of the Court's findings and any relevant orders to the Rhode Island Supreme Court's disciplinary authorities and to the appropriate official or committee responsible for attorney discipline in this Court.

324.    Plaintiff seeks such additional declaratory and ancillary relief as may be necessary to effectuate these referrals, promote accountability, and protect the integrity of both the state and federal legal systems.

325.   Plaintiff seeks protection from further unlawful, immoral, unethical acts of so-called licensed attorneys, especially those purporting to act as solicitors and assistant solicitors of the Township of South Kingstown, Rhode Island.

**COUNT VI**

FIRST AMENDMENT – RETALIATION AND CHILLING OF PROTECTED ACTIVITY
(42 U.S.C. § 1983)

326.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

327.   Plaintiff's repeated submission of APRA requests, demands for governmental transparency, objections to anonymous determinations, and efforts to obtain accountability from municipal officials and counsel constitute core political expression and petitioning activity protected by the First Amendment to the United States Constitution.

328.   Plaintiff's conduct—seeking public records, questioning the legality and propriety of governmental practices, criticizing the Town's opacity, and pressing for compliance with statutory and constitutional norms—lies at the heart of democratic self-governance and the marketplace of ideas.

329.   Upon information and belief, Defendants were aware of Plaintiff's APRA activity, his criticism of anonymous decision-making, and his formal correspondence challenging the legality and propriety of the Town's record-processing practices.

330.   Upon information and belief, after Plaintiff became a persistent and vocal requester and critic, the Town and its counsel either adopted, intensified, or maintained the challenged practice of issuing unsigned, unattributed, opaque legal determinations in response to Plaintiff's requests, including the March 23, 2026 and April 6, 2026 letters (Exhibits A and B), the April 7, 2026 UTR Letter (Exhibit C), and similar communications.

331. The repeated use of anonymous, non-appealable, and non-attributable determinations against Plaintiff, particularly after he complained about anonymity and demanded identification of responsible officials and attorneys, supports a reasonable inference of retaliatory motive.

332. The adverse actions at issue include, but are not limited to: (a) denial of access to public records; (b) issuance of conclusory and unsupported "undue burden" determinations; © persistent refusal to identify any records custodian or decisionmaker; (d) continued use of double letterhead to cloak legal determinations in judicial and municipal authority while evading accountability; and (e) refusal to respond substantively to Plaintiff's certified correspondence seeking correction and attribution.

333. These adverse actions would deter a person of ordinary firmness from continuing to vigorously exercise the right to seek public records, petition government, criticize officials, and press for accountability through administrative and judicial channels.

334. The challenged pattern and practice are reasonably viewed as designed, at least in part, to discourage Plaintiff from further exercising his rights to access information, speak critically about local government and its counsel, and petition for redress of grievances.

335. The First Amendment prohibits government actors, including municipalities and their attorneys acting under color of law, from subjecting individuals to adverse treatment in retaliation for engaging in protected speech and petitioning activity.

336. By jointly and repeatedly subjecting Plaintiff to opaque, anonymous, and structurally evasive decision-making procedures after he engaged in protected conduct, Defendants have retaliated against, and unconstitutionally chilled, Plaintiff's exercise of his First Amendment rights.

337. Defendants' retaliatory actions were undertaken under color of state law and in concert with, or at the direction of, municipal policymakers or

supervisory officials, thereby satisfying the state-action element of a § 1983 First Amendment retaliation claim.

338. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and continues to suffer injury, including but not limited to: (a) frustration and obstruction of his efforts to obtain public records; (b) impairment of his ability to engage in informed political speech and advocacy; © discouragement and chilling of his willingness to interact with municipal government; and (d) a reasonable fear that further requests and criticism will be met with further obstruction and opacity.

339. Plaintiff seeks declaratory and prospective injunctive relief to prevent continuing and future First Amendment retaliation and chilling by prohibiting Defendants from employing anonymous, unattributed decision-making in response to APRA requests or other petitioning activity, and from otherwise imposing structural obstacles designed to punish or deter protected conduct.

## COUNT VII

FIRST AND FOURTEENTH AMENDMENTS – DENIAL OF ACCESS TO COURTS AND EFFECTIVE JUDICIAL REVIEW
(42 U.S.C. § 1983)

340. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

341. The United States Constitution, through the First Amendment and the Due Process Clause of the Fourteenth Amendment, protects a fundamental right of access to the courts and to meaningful judicial review of governmental action.

342. This right of access prohibits governmental entities from erecting unjustified, structural barriers that materially impair a citizen's ability to identify proper defendants, frame cognizable legal claims, and obtain

effective judicial redress for the violation of statutory and constitutional rights.

343.   The Town's and the Law Firm Defendant's practice of issuing unsigned, unattributed, and opaque legal determinations in response to Plaintiff's APRA requests does not merely inconvenience Plaintiff; it systematically impedes his ability to invoke and effectively utilize judicial processes.

344.   Anonymous and unattributed determinations make it significantly more difficult for Plaintiff to identify the proper parties to sue, the proper witnesses to subpoena, and the proper officials to name in administrative or judicial challenges to APRA denials and related constitutional claims.

345.   Without identification of the records custodian, the individual decisionmaker, or the attorney responsible for the legal conclusions, Plaintiff cannot know who is accountable for the denial, who exercised the authority, who can be compelled to testify as to search efforts and reasoning, or who has the authority to reconsider or reverse the determination.

346.   This structural anonymity and concealment effectively deprive Plaintiff of the ability to secure an adequate record of who made which determinations and on what basis, thereby undermining his capacity to obtain meaningful, fact-based judicial review.

347.   The denial of access to courts claim does not depend on any specific substantive outcome of any APRA request; rather, it arises from Defendants' deliberate use of anonymous and unattributed processes that impair the very ability to challenge outcomes in court.

348.   Upon information and belief, the Town and its counsel were aware or should have been aware that unsigned, unnamed determinations would make litigation more difficult by obscuring the identity of responsible actors and depriving courts of clear targets for jurisdiction, service, and evidentiary inquiry.

349. By designing, implementing, and perpetuating a system in which legally operative denials of records and assertions of exemptions are routinely issued without attribution, Defendants have imposed a structural obstacle to judicial access that is qualitatively different from mere delay or negligence.

350. The resulting injury is not hypothetical: Plaintiff's efforts to craft legal pleadings, identify proper defendants, and obtain judicial review have been materially complicated by the anonymity of the determinations at issue, necessitating broader "John Doe" pleadings and speculative inferences about who did what.

351. The Constitution does not permit municipalities and their counsel to insulate themselves from judicial scrutiny by systematically concealing who is responsible for governmental decisions affecting legal rights.

352. Defendants' conduct, described herein, has therefore violated Plaintiff's federal right of access to the courts and to meaningful judicial review, actionable under 42 U.S.C. § 1983.

353. Plaintiff seeks declaratory and injunctive relief preventing Defendants from continuing to employ anonymous and unattributed decision-making mechanisms that obstruct his, and the public's, access to the courts and to effective remedies for statutory and constitutional violations.

**COUNT VIII**

FOURTEENTH AMENDMENT – EQUAL PROTECTION (CLASS-OF-ONE)
(42 U.S.C. § 1983)

354. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

355. The Equal Protection Clause of the Fourteenth Amendment prohibits the state from intentionally treating an individual differently from others similarly situated without a rational basis for the difference in treatment.

356. Upon information and belief, other requesters to the Town of South Kingstown—similarly situated individuals seeking public records under APRA—have, at least on some occasions, received responses that identify the records custodian, identify an official signatory, or otherwise attribute the determination to a named individual or office.

357. Upon information and belief, the Town has not uniformly employed anonymous, unsigned, and unattributed legal determinations across all APRA requesters, but has disproportionately or particularly employed such practices in connection with Plaintiff's requests or as to requesters perceived as critical, persistent, or adversarial.

358. Plaintiff alleges that he has been intentionally treated differently from other similarly situated APRA requesters by being subjected to a pattern of structurally opaque, unsigned determinations that deny him transparency and accountability available, in whole or in part, to others.

359. No legitimate governmental purpose justifies the selective use of anonymity and lack of attribution; to the extent such differences in treatment exist, they are irrational, arbitrary, and/or motivated by hostility toward Plaintiff's protected activities and oversight efforts.

360. Even if some level of non-signing might be justified for administrative convenience, there is no rational basis to selectively deprive Plaintiff of basic attribution and accountability safeguards while affording them to other requesters similarly situated in all relevant respects.

361. Defendants' selective use of anonymous determinations against Plaintiff thus constitutes class-of-one discrimination under the Equal Protection Clause.

362. As a direct and proximate result of this disparate treatment, Plaintiff has been subjected to additional burdens and obstacles in pursuing APRA rights and constitutional claims that are not imposed on others similarly situated, thereby inflicting cognizable equal protection injury.

363. Plaintiff seeks declaratory and injunctive relief prohibiting Defendants from engaging in such disparate treatment and requiring that, at a minimum, any procedural structure used for Plaintiff's APRA requests and related determinations be no less transparent, attributable, and accountable than the structure afforded to other similarly situated requesters.

**COUNT IX**

SUBSTANTIVE DUE PROCESS – ARBITRARY AND CONSCIENCE-SHOCKING STRUCTURE OF GOVERNMENTAL DECISION-MAKING
(42 U.S.C. § 1983)

364. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

365. The substantive component of the Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary, capricious, and conscious-shocking exercises of governmental power that are not justified by any legitimate governmental interest.

366. While not every administrative irregularity rises to the level of a substantive due process violation, there are circumstances in which the structure of governmental decision-making itself reflects such a profound disregard for accountability, transparency, and the rule of law that it offends fundamental notions of ordered liberty.

367. Plaintiff alleges that the Town, acting through its officials and its counsel, deliberately adopted or tolerated a decision-making structure in which legally operative determinations affecting statutory entitlements and constitutional rights would routinely be issued without any identification of the responsible official, custodian, or attorney.

368. This structure was not a one-time clerical oversight, but rather a recurring, institutionalized pattern in which anonymity and non-attribution were

systemic features of the process used to deny citizens access to public records and related rights.

369. By divorcing the exercise of governmental power from identifiable responsibility, Defendants created a system that is inherently resistant to oversight, correction, and accountability, and that invites arbitrary, biased, or pretextual decision-making insulated from meaningful challenge.

370. Upon information and belief, policymakers and supervisory attorneys were aware of the anonymous and unattributed nature of the determinations, were alerted to the problem by Plaintiff and potentially by others, and nonetheless failed to implement even the most basic reforms (such as requiring a name or title on determinations) to restore accountability.

371. The purposeful or reckless maintenance of a governmental regime in which officials may exercise authority affecting legal rights while remaining effectively invisible and unidentifiable constitutes a structural abuse of power that, in the aggregate and as applied here, is arbitrary in the constitutional sense.

372. Such a system undermines core democratic principles of accountable governance, erodes the rule of law, and signals a level of institutional indifference to individual rights that shocks the conscience when measured against the expectations of a free and transparent society.

373. Defendants' actions are not justified by any legitimate governmental interest in efficiency or confidentiality; any marginal convenience gained by anonymity is vastly outweighed by the resulting harm to transparency, accountability, legal oversight, and individual rights.

374. Accordingly, Plaintiff alleges that the deliberate or recklessly indifferent design, adoption, and maintenance of this anonymous decision-making architecture amounts to a violation of substantive due process under the Fourteenth Amendment, independent of and in addition to any procedural deficiencies.

375.   Plaintiff seeks declaratory relief recognizing the substantive due process violation inherent in such a system and injunctive relief prohibiting Defendants from maintaining or adopting any similar anonymous decision-making structures in the future.

## COUNT X

42 U.S.C. § 1983 – CONSPIRACY TO DEPRIVE FEDERAL RIGHTS
(BETWEEN MUNICIPAL DEFENDANTS AND LAW FIRM DEFENDANT)

376.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

377.   Section 1983 provides a cause of action against persons who, acting under color of state law, conspire to deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States.

378.   Plaintiff alleges that the Town, its officers and employees (including but not limited to records personnel and municipal court staff), and the Law Firm Defendant and its partner-attorneys (including but not limited to Ursillo, Teitz, and Ritch), entered into an agreement, understanding, or meeting of the minds to implement and maintain a system of anonymous, unsigned, and unattributed legal determinations in response to public records requests and related interactions.

379.   This agreement or understanding included, but was not limited to, a shared decision to: (a) have attorneys draft or advise on legally operative determinations without disclosing their involvement; (b) issue such determinations on municipal and judicial letterhead without identifying any signatory; [c] withhold the identity of the records custodian and decisionmaker from the requesting citizen; and (d) persist in these practices even after Plaintiff expressly objected and demanded attribution and accountability.

380. The joint participation of municipal actors and private attorneys acting as municipal counsel constitutes action "under color of state law," as the Law Firm Defendant and its partners were performing governmental functions and exercising delegated authority in shaping the Town's policies and practices regarding APRA responses and legal determinations.

381. The object and effect of this conspiracy was to deny Plaintiff, and similarly situated citizens, the ability to meaningfully exercise rights protected by the Firs

382. The object and effect of this conspiracy was to deny Plaintiff, and similarly situated citizens, the ability to meaningfully exercise rights protected by the First and Fourteenth Amendments, including procedural due process, the right to petition, the right of access to the courts, and equal protection of the laws.

383. Overt acts in furtherance of the conspiracy include:

(a) drafting and sending the March 23, 2026 and April 6, 2026 letters on municipal and double letterhead without attribution (Exhibits A and B);

(b) issuing additional unsigned, anonymous determinations across multiple APRA matters, including the June 25, 2026 Letter (Exhibit D);

(c) having the Law Firm Defendant issue the April 7, 2026 UTR Letter (Exhibit C) aggregating Plaintiff's requests and demanding a $2,350.05 prepayment as a condition to processing;

(d) refusing to correct or identify responsible actors when Plaintiff demanded attribution; and

(e) continuing to employ anonymous decision-making and fee-barrier mechanisms despite notice of their constitutional and ethical infirmities.

384. The conspiratorial nature of the conduct is further evidenced by the coordinated pattern between the Town's internal processes and the Law Firm Defendant's external communications, all of which adhere to the same anonymity-enforcing, obstruction-enhancing structure despite obvious opportunities to implement basic attribution and reasonable fee practices.

385. As a direct and proximate result of this conspiracy, Plaintiff has been deprived of constitutional rights, including but not limited to his rights to procedural due process, petition, access to courts, and equal protection, and has sustained the injuries described throughout this Complaint.

386. Plaintiff seeks declaratory and injunctive relief against all conspirator-Defendants, including orders prohibiting further anonymous and unattributed legal determinations, requiring disclosure of responsible attorneys and officials, and mandating reforms sufficient to dismantle the conspiracy's practical effect and restore constitutional governance.

**COUNT XI**

DECLARATORY JUDGMENT – FIRST AMENDMENT RIGHT TO RECEIVE INFORMATION AND ENGAGE IN INFORMED POLITICAL SPEECH
(42 U.S.C. § 1983; U.S. CONST. AMEND. I)

387. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

388. In addition to the Petition Clause, the First Amendment protects the right of citizens to receive information and ideas and to engage in informed political speech and public debate concerning governmental affairs.

389. Plaintiff's APRA requests and related oversight efforts are not merely private information-gathering; they are essential components of his ability to educate himself, scrutinize local government, and speak publicly on matters of public concern.

390.   The Town's and its counsel's practice of issuing anonymous, conclusory,
and unsupported determinations, and of conflating questions with records to
evade disclosure, constitutes a structural burden on Plaintiff's ability to obtain
the information necessary to engage in informed political speech.

391.   While the First Amendment does not generally guarantee a right to obtain
all government information, it does prohibit government actors from
structuring their information-handling practices in a manner that
unnecessarily and arbitrarily burdens citizens' ability to gather information for
expressive and petitioning purposes.

392.   Here, Defendants' anonymity practices do not merely embody a neutral
procedural choice; they directly and foreseeably undermine Plaintiff's capacity
to:

(a) challenge denials;

(b) seek reconsideration from an identified official;

(c) test the factual basis for "undue burden" assertions in letters
such as Exhibits A, B, and D; and

(d) expose and criticize the particular actors and rationales
involved.

393.   This, in turn, suppresses or distorts Plaintiff's ability to speak publicly and
accurately about how his government operates, who is responsible for
specific decisions, and whether those actors are complying with the law.

394.   By deliberately or recklessly divorcing legal determinations from named
decisionmakers, Defendants limit the range and effectiveness of Plaintiff's
political speech, opinion formation, and public advocacy regarding those
determinations.

395.    Plaintiff therefore seeks a declaration that Defendants' systematic use of anonymous and unattributed legal determinations, as described herein and exemplified in Exhibits A–D, imposes an unconstitutional burden on his First Amendment right to receive information and to engage in informed political speech about government operations.

396.    Plaintiff further seeks injunctive relief requiring Defendants to cease such practices and to implement minimally burdensome attribution procedures that respect and facilitate citizens' First Amendment interests in governmental transparency, information-gathering, and political expression.

## VIII. RESERVATION OF RIGHTS OF A PRO SE LITIGANT AND REQUEST FOR LIBERAL CONSTRUCTION

397.    Plaintiff appears pro se in this action pursuant to *28 U.S.C. § 1654*, which guarantees that "in all courts of the United States the parties may plead and conduct their own cases personally or by counsel." Plaintiff respectfully invokes all protections and principles applicable to self-represented litigants in federal court.

398.    Construction of Pro Se Pleadings. It is well established that pleadings submitted by self-represented litigants are to be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. The Court is therefore respectfully requested to examine the substance of the allegations rather than their technical form, to draw all reasonable inferences in favor of adjudication on the merits, and to administer substantial justice consistent with the Federal Rules of Civil Procedure. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (citation omitted); *Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Ahmed v. Rosenblatt,*

*118 F.3d 886, 890 (1st Cir. 1997); Instituto de Educación Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000); Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).*

399.   Liberal Construction and Rule 8. Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In applying Rule 8 to pro se litigants, federal courts have consistently emphasized substance over form and have declined to demand technical precision or formalistic drafting. Plaintiff respectfully requests that this Court construe this Complaint, and all subsequent filings, in a manner that effectuates Rule 8's liberal pleading standard, and that any lack of stylistic or technical refinement not be treated as a basis for dismissal where the substantive allegations plausibly state a claim.

400.   Rule 12 and Construction of Factual Allegations. At the pleading stage, factual allegations must be taken as true, and all reasonable inferences must be drawn in favor of the non-moving party. *See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Rodi, 389 F.3d at 13.* Plaintiff respectfully requests that, in evaluating any motion to dismiss or other Rule 12 motion, the Court construe all well-pleaded factual allegations in the light most favorable to Plaintiff, with particular sensitivity to the principle that pro se pleadings are entitled to liberal construction and should not be dismissed based on technicalities rather than merits.

401.   Rule 15 and Liberal Amendment. Reservation of Right to Amend. To the extent the Court determines that any allegation, claim for relief, jurisdictional statement, identification of parties, or requested remedy has been imperfectly pleaded, Plaintiff respectfully requests leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." This liberal amendment standard is especially applicable where the litigant proceeds pro se and any deficiency may be cured without unfair prejudice to any opposing party. *See*

*Foman v. Davis, 371 U.S. 178, 182 (1962).* Plaintiff expressly reserves the right to supplement, amend, clarify, particularize, or otherwise refine the pleadings as discovery and additional evidence become available.

402.   Reservation of Pro Se Procedural Rights. Plaintiff expressly invokes and reserves all procedural protections traditionally afforded to litigants proceeding without counsel in the federal courts, including, but not limited to: (a) liberal construction of all pleadings, motions, memoranda, exhibits, declarations, and other submissions; (b) construction of the pleadings according to their substantive allegations rather than technical defects in form; © preference for decisions on the merits rather than dismissals based on inadvertent procedural missteps; and (d) application of all reasonable inferences in favor of permitting adjudication on the merits where justice so requires.

403.   Preference for Decisions on the Merits. Federal courts, including courts within the First Circuit, have repeatedly emphasized a strong preference for resolving disputes on their merits rather than on technical or procedural defaults, particularly where a pro se litigant is involved and no substantial prejudice to the opposing party would result from reaching the merits. Plaintiff respectfully requests that this general policy guide the Court's consideration of any alleged pleading or procedural deficiencies.

404.   Exhibits and Substantive Allegations. To the extent that exhibits attached to this Complaint (or later submissions) inform or clarify the factual narrative, Plaintiff respectfully requests that the Court read the Complaint and exhibits together, construing them liberally and harmoniously rather than seizing upon perceived inconsistencies to defeat otherwise plausible claims. Attached exhibits, including Exhibits A, B, C, and D, should be treated as part of the pleading for all purposes under Rule 10(c), and any apparent tension between exhibits and allegations should be resolved, where reasonably possible, in favor of preserving meritorious claims for adjudication on the merits.

405.  No Duty to Act as Counsel, but No Dismissal for Technical Defects. Plaintiff respectfully submits that federal courts have long recognized that the judicial obligation in reviewing pro se pleadings is not to act as counsel for the litigant, but neither is it to dismiss potentially meritorious claims because they lack the technical precision expected of attorney-drafted pleadings. *See Erickson, 551 U.S. at 94; Haines, 404 U.S. at 520–21.* Accordingly, all allegations contained herein should be construed so as to do substantial justice, *Fed. R. Civ. P. 8(e),* with reasonable inferences drawn in favor of permitting the controversy to be resolved upon its merits whenever consistent with applicable law.

406.  Preservation of Appellate Issues and Substantial Justice. Plaintiff further requests that, consistent with the liberal construction afforded to pro se litigants, any ambiguities in the framing of claims or legal theories be resolved, where reasonably possible, in a manner that preserves potentially meritorious constitutional and statutory issues for full consideration, rather than foreclosing them through rigid application of technical pleading doctrines. Plaintiff does not seek special treatment, only that the Court apply the settled rule that pro se pleadings are to be liberally construed and adjudicated with a view toward substantial justice.

407.  General Reservation. Plaintiff expressly reserves all constitutional, statutory, procedural, equitable, and common-law rights, remedies, privileges, immunities, objections, and arguments available under the Constitution of the United States, Acts of Congress, the Federal Rules of Civil Procedure, the Local Rules of this Court, and the inherent equitable authority of the Court. Nothing contained herein shall be construed as a knowing or intentional waiver of any claim, defense, procedural protection, jurisdictional objection, evidentiary objection, or appellate issue not expressly waived in writing.

## PRAYER FOR RELIEF

408.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, and grant the following relief:

409.   Assume jurisdiction over this action and retain continuing jurisdiction to enforce any declaratory and injunctive orders entered herein.

410.   With respect to COUNT I (Procedural Due Process – U.S. CONST. amend. XIV):

a. Declare that governmental authority affecting statutory rights may not constitutionally be exercised through anonymous or unattributed governmental determinations that conceal the identity of the responsible governmental actor.

b. Declare that constitutionally adequate procedural due process requires, at a minimum, identification of the governmental actor, official, or records custodian exercising authority and making determinations affecting Plaintiff's state-created APRA entitlements and related rights.

c. Declare that Defendants' practices described in this Complaint, including the issuance of unsigned, unattributed determinations denying or limiting access to records and rights under APRA, violate Plaintiff's rights to procedural due process under the Fourteenth Amendment.

411.   With respect to COUNT II (First Amendment Right to Petition Government):

a. Declare that the First Amendment right to petition government for redress of grievances includes the right to direct petitions, objections, appeals, and requests for reconsideration to identifiable officials and decisionmakers.

b. Declare that Defendants' systematic concealment of the identity of decisionmakers in legally operative determinations materially burdens Plaintiff's Petition Clause rights and is unconstitutional.

c. Declare that Defendants may not constitutionally structure their responses to APRA requests and related governmental determinations in a manner that

intentionally or foreseeably prevents citizens from identifying the officials responsible for actions being petitioned or challenged.

412. With respect to COUNT III (Monell – Municipal Liability Under 42 U.S.C. § 1983):

a. Declare that the Town of South Kingstown's repeated use of unsigned, unattributed governmental determinations, as alleged herein and exemplified in Exhibits A–D, constitutes a municipal custom, policy, practice, usage, ratification, supervisory failure, or manifestation of deliberate indifference within the meaning of *Monell v. Department of Social Services, 436 U.S. 658 (1978)*.

b. Declare that the Town is liable under 42 U.S.C. § 1983 for the constitutional violations resulting from such municipal customs, policies, practices, usages, ratifications, and failures of supervision.

c. Declare that the Town's maintenance of the challenged practices poses an ongoing and substantial risk of continued constitutional injury to Plaintiff and to similarly situated members of the public.

413. With respect to COUNT IV (Declaratory Relief Regarding Identifiable Governmental Authority):

a. Declare that when governmental authority is exercised in a manner that materially affects statutory or constitutional rights, citizens possess a constitutional right to know the identity of the governmental actor exercising that authority.

b. Declare that governmental entities may not exercise legal authority affecting statutory rights through anonymous or unattributed determinations that prevent citizens from knowing who made the decision, who can reconsider it, and who may be held accountable.

c. Declare that meaningful due process, transparency, accountability, and review require identifiable and accountable governmental decisionmakers in the context of APRA determinations and similar governmental actions affecting legal rights.

414. With respect to COUNT V (Declaratory Relief and Request for Referral for Attorney Discipline):

a. Declare that, if the facts are proven as alleged, the conduct of the attorney Defendants and any other attorney participants—including the drafting, approval, and issuance of anonymous and unattributed governmental legal determinations affecting statutory and constitutional rights—violated, or appears to have violated, the Rhode Island Rules of Professional Conduct, including but not limited to Rules 1.13, 2.1, 4.1, 5.1, 8.4(a), 8.4[c], and 8.4(d).

b. Declare that such conduct, if proven, is inconsistent with the obligations of attorneys admitted to practice before the United States District Court for the District of Rhode Island and with the ethical responsibilities of public lawyers.

c. Refer the conduct of any attorney Defendant or attorney participant who is licensed in Rhode Island to the Rhode Island Supreme Court's appropriate disciplinary authority (including the Office of Disciplinary Counsel or its functional equivalent) for whatever investigation and proceedings that Court deems appropriate.

d. Refer the conduct of any attorney Defendant or attorney participant who is admitted to practice before this Court to this Court's designated disciplinary authorities, committee, panel, or judge for consideration of appropriate disciplinary action consistent with the Local Rules and this Court's inherent authority.

e. Direct the Clerk of Court to transmit certified copies of this Court's findings, orders, and any relevant portions of the record to the Rhode Island Supreme Court's disciplinary authorities and to the appropriate official or committee responsible for attorney discipline in this Court.

415. With respect to COUNT VI (First Amendment – Retaliation and Chilling of Protected Activity):

a. Declare that Defendants' use and maintenance of anonymous, unattributed, and structurally evasive decision-making practices in response to Plaintiff's APRA requests and complaints constitute unlawful retaliation for, and chilling of, Plaintiff's protected First Amendment activity.

b. Enjoin Defendants from employing anonymous or unattributed determinations, or any other structural obstacle or adverse measure, as a means of punishing, deterring, or chilling Plaintiff or any other person for exercising the right to seek public records, criticize governmental practices, and petition for redress of grievances.

416.   With respect to COUNT VII (First and Fourteenth Amendments – Denial of Access to Courts and Effective Judicial Review):

a. Declare that Defendants' practice of issuing legally operative, unsigned, and unattributed determinations that deny or condition statutory entitlements to records, without identifying responsible officials, violates Plaintiff's constitutional right of access to the courts and to meaningful judicial review.

b. Enjoin Defendants from continuing any practice or policy that structurally impedes Plaintiff's ability to identify proper parties, witnesses, custodians, or decisionmakers for purposes of administrative or judicial challenges to governmental determinations.

c. Require Defendants, in future legally operative determinations affecting APRA rights, to identify at least one responsible official or custodian whose name and position appear on the determination, so that judicial review can be meaningfully invoked and directed.

417.   With respect to COUNT VIII (Equal Protection – Class-of-One):

a. Declare that, to the extent Defendants have selectively or disproportionately employed anonymous, unsigned determinations against Plaintiff as compared to other similarly situated APRA requesters, such class-of-one disparate treatment

violates the Equal Protection Clause of the Fourteenth Amendment.

b. Enjoin Defendants from treating Plaintiff differently than similarly situated requesters with respect to attribution, transparency, and accountability of governmental determinations, absent a legitimate and rational basis for any difference in treatment.

c. Require Defendants to ensure that any procedural framework applied to Plaintiff's APRA requests and related determinations is at least as transparent, attributable, and accountable as the framework applied to other similarly situated members of the public.

418.    With respect to COUNT IX (Substantive Due Process – Arbitrary and Conscience-Shocking Structure of Governmental Decision-Making):

a. Declare that Defendants' deliberate or recklessly indifferent design, adoption, and maintenance of an anonymous, unattributed decision-making regime for legally operative governmental determinations affecting statutory and constitutional rights is arbitrary in the constitutional sense and violates substantive due process under the Fourteenth Amendment.

b. Declare that divorcing the exercise of governmental power from any identifiable decisionmaker, as alleged herein, offends fundamental principles of ordered liberty and accountable governance and, in the aggregate, shocks the conscience.

c. Enjoin Defendants from maintaining or implementing any decision-making system in which officials may exercise authority affecting legal rights while remaining unidentified and unaccountable to the public and the courts.

419.    With respect to COUNT X (§ 1983 Conspiracy to Deprive Federal Rights):

a. Declare that the Town, its officials and employees, and the Law Firm Defendant and its attorneys, acting jointly and under color of state law, conspired to deprive Plaintiff of rights secured by the First and Fourteenth Amendments, as alleged in this Complaint.

b. Declare that the coordinated pattern of anonymous, unattributed determinations, refusal to correct known defects, and joint participation of municipal and private actors constitutes an unlawful conspiracy under 42 U.S.C. § 1983.

c. Enjoin all conspirator-Defendants from continuing any concerted practice or policy of issuing anonymous and unattributed legal determinations that deprive Plaintiff or similarly situated citizens of constitutional rights, and require the implementation of structural reforms sufficient to dismantle the conspiratorial scheme and restore constitutional governance.

420. With respect to COUNT XI (Declaratory Judgment – First Amendment Right to Receive Information and Engage in Informed Political Speech):

a. Declare that Defendants' practices, including anonymous, conclusory, and unsupported determinations, and the conflation of questions with records in order to evade disclosure, impose an unconstitutional burden on Plaintiff's First Amendment right to receive information and to engage in informed political speech and public debate on governmental affairs.

b. Declare that the First Amendment forbids government actors from structuring their information-handling practices in a manner that unnecessarily and arbitrarily burdens citizens' ability to gather information needed for political expression and oversight.

c. Enjoin Defendants from using anonymous and unattributed practices in a manner that suppresses, distorts, or materially burdens Plaintiff's ability to gather information necessary for informed criticism and advocacy regarding local government.

421. With respect to all Counts (I through XI), and to the extent necessary to effectuate the foregoing declarations:

a. Permanently enjoin Defendants from issuing legally operative governmental determinations affecting statutory and/or constitutional rights—including but not

limited to APRA determinations—without identifying at least one responsible governmental actor, records custodian, or official, and, where applicable, any attorney whose legal determination is being communicated.

b. Require Defendants to adopt, implement, and maintain written policies and procedures that ensure future governmental determinations affecting statutory rights are attributable to identifiable officials or custodians and are documented in a manner that facilitates accountability, review, and judicial scrutiny.

c. Require training of appropriate municipal officials, staff, and attorneys regarding constitutional requirements of due process, petition rights, access to courts, equal protection, and ethical obligations related to transparency and attribution in governmental decision-making.

d. Order such auditing, monitoring, or reporting mechanisms as the Court deems necessary to ensure continuing compliance with the Court's orders and to protect Plaintiff's and the public's statutory and constitutional rights going forward.

422. Award Plaintiff his costs of suit and other allowable expenses pursuant to 42 U.S.C. § 1988 and any other applicable law, to the extent available, and such other and further equitable relief as the Court deems just and proper under the circumstances.

423. Grant such additional declaratory, injunctive, equitable, or ancillary relief as may be necessary or appropriate to fully remedy the constitutional violations, enforce the constitutional principles articulated herein, protect the integrity of the judicial process, and prevent the recurrence of the unlawful, unethical and immoral practices challenged in this action.

Respectfully submitted,

MICHAEL E. NELSON
33 Hartford Avenue
South Kingstown, Rhode Island 02879
Plaintiff, Pro Se
Tel: 702.932.3434