# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF RHODE ISLAND

MICHAEL ERIC NELSON,
 Plaintiff,

v. C.A. No. 1:26-cv-00352-MRD-AEM

URSILLO, TEITZ & RITCH, LTD.;
 MICHAEL A. URSILLO;
 ANDREW M. TEITZ;
 SCOTT A. RITCH;
 ADAM JACOB SHOLES;
 TOWN OF SOUTH KINGSTOWN; and
 JANE/JOHN DOES 1–27,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT PURSUANT TO FED. R. CIV. P. 15(d), FED. R. CIV. P. 1, AND DRI LR Cv 15**

## I. INTRODUCTION

Plaintiff Michael Eric Nelson, appearing pro se, respectfully submits this Memorandum of Law in support of his Motion for Leave to file the accompanying Supplemental Complaint pursuant to Federal Rule of Civil Procedure 15(d).

The proposed Supplemental Complaint concerns transactions, occurrences, and events arising after June 29, 2026, when Plaintiff filed the operative First Amended Complaint.

Those subsequent events are not a new or collateral controversy. They allegedly constitute a continuation, escalation, and further manifestation of the same course of governmental conduct already placed before this Court: Plaintiff's exercise of First Amendment speech and petition rights; his repeated efforts to obtain governmental information pursuant to Rhode Island's Access to Public Records Act ("APRA"); his criticism of anonymous and unattributed governmental legal determinations; alleged retaliatory treatment arising from those activities; municipal policy, custom, practice, ratification, and deliberate indifference; and the continuing need for prospective relief.

The Supplemental Complaint adds two principal categories of later-occurring facts.

First, after the operative pleading was filed, the Town allegedly continued repeatedly identifying Plaintiff as "Ms. Nelson" in official APRA correspondence notwithstanding that Plaintiff is male, was born male, identifies as male, has never used the honorific "Ms.," and never supplied or authorized that designation. The proposed pleading alleges a pattern extending across numerous APRA matters and at least nineteen indisputably post-filing governmental communications between July 7 and July 23, 2026, including nine communications on July 17 alone. See Proposed Supplemental Complaint ("PSC") ¶¶ 89–142.

Plaintiff does not contend that an isolated erroneous honorific, standing alone, necessarily creates an independent federal constitutional cause of action. Rather, he alleges that the frequency, persistence, governmental context, continuation after notice, and association with his protected petitioning activity constitute additional circumstantial evidence relevant to retaliatory motive, discriminatory hostility, selective treatment, municipal knowledge, common administrative mechanisms, ratification, deliberate indifference, and the need for prospective relief.

Second, the proposed pleading alleges a significant post-filing occurrence concerning APRA-1280 and Defendant Adam Jacob Sholes. APRA-1280 had allegedly been closed on April 6, 2026. The original denial associated with that request—already placed in controversy in the First Amended Complaint—allegedly bore both Town of South Kingstown and South Kingstown Municipal Court letterhead, contained substantive legal

determinations and citations, yet was unsigned and failed to identify the natural person responsible for exercising governmental legal authority.

On July 21, 2026, Defendant Sholes was personally served at approximately 9:54 a.m. with process in this federal action, including a pleading specifically placing APRA-1280, the April 6 denial, and the Municipal Court letterhead in controversy. Approximately four and one-half hours later, a new PDF instance concerning APRA-1280 was allegedly generated or exported at approximately 2:24 p.m. Although digitally generated on July 21, the document facially bears the date April 6, 2026—106 days earlier—and allegedly appeared in or became associated with the previously closed APRA matter. PSC ¶¶ 37–59.

The proposed Supplemental Complaint further alleges that this later-generated version appears to omit the South Kingstown Municipal Court designation appearing on the original record—the very governmental attribution relevant to Plaintiff's preexisting allegations concerning Sholes. PSC ¶¶ 60–66.

Based upon that sequence, Plaintiff alleges upon information and belief that Sholes directed, caused, requested, authorized, participated in, encouraged, procured, approved, or subsequently ratified the later document activity. PSC ¶¶ 67–81, 151–159. Plaintiff does not contend that PDF metadata itself identifies Sholes as the person responsible. Rather, the allegation arises from the documented temporal sequence, subject-matter identity, apparent alteration of a feature material to the pending litigation, and facts whose remaining proof lies largely within Defendants' communications, source files, audit logs, devices, accounts, and records systems.

Rule 15(d) exists to permit precisely this type of later-occurring development to be incorporated into an existing controversy without requiring a second lawsuit. The First Circuit has instructed that Rule 15(d) serves the Rules' objective of achieving an orderly and fair administration of justice and promotes as complete an adjudication of the parties' dispute as possible. *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4–7 (1st Cir. 2015).

Permitting supplementation here will allow one Court, through one discovery process and one evidentiary record, to determine the entire continuing controversy. It will avoid duplicative litigation, inconsistent adjudications, unnecessary expense, and needless procedural formality and therefore advances both Rule 15(d) and Rule 1.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Operative Pleading Already Places the Underlying Course of Conduct Before the Court

Plaintiff filed the First Amended Complaint on June 29, 2026.

The operative pleading challenges, among other things, alleged First Amendment retaliation and chilling arising from Plaintiff's persistent requests for governmental information and criticism of municipal practices; repeated issuance of unsigned or unattributed governmental legal determinations; concealment of responsible governmental decisionmakers; alleged obstacles to meaningful administrative and judicial review; municipal policy, custom, practice, ratification, and deliberate indifference; and the necessity of prospective declaratory and injunctive relief.

The proposed Supplemental Complaint does not alter the essential nature of that controversy. Instead, it alleges that after Plaintiff placed those practices before this Court, substantially related conduct continued and, in certain respects, intensified.

### B. Plaintiff Continued Engaging in Protected Petitioning and Speech

After June 29, Plaintiff continued seeking governmental records, criticizing governmental practices, petitioning governmental officials, pursuing administrative remedies, advocating concerning matters of public concern, and prosecuting this federal action. PSC ¶¶ 10–20.

Those activities concerned governmental transparency and accountability, identification of decisionmakers, municipal expenditures and operations, traffic safety, proposed

speed-limit changes, public infrastructure, employment information, and preparation for administrative, legislative, and judicial petitions.

The First Amendment protects resort to the courts as an exercise of the Petition Clause. The First Circuit has expressly recognized that governmental retaliation because a person filed and pursued litigation may support liability under § 1983. *Powell v. Alexander*, 391 F.3d 1, 16–18 (1st Cir. 2004).

Plaintiff does not depend upon an asserted freestanding First Amendment entitlement to every record requested under APRA. APRA supplies the state-law records-access mechanism. The constitutional allegations concern alleged retaliation against Plaintiff for his speech, criticism, petitioning, litigation, and related governmental-accountability activities.

## C. The Town Allegedly Continued Repeated Gender Misidentification After Filing

The Supplemental Complaint alleges that the Town repeatedly issued official correspondence addressing Plaintiff as "Ms. Nelson," notwithstanding information establishing that the designation was inaccurate.

The allegations identify antecedent pre-filing communications to establish chronology and context and numerous later communications occurring after June 29. The post-filing sequence allegedly continued through July 23 and involved APRA Nos. 1435, 1445, 1448, 1415, 1439, 1440, 1455, 1457, 1458, 1459, 1461, 1462, 1468, 1469, 1473, and 1474. PSC ¶¶ 99–125.

Plaintiff alleges that this recurrence across separate matters warrants discovery concerning whether the designation originated from a shared requester profile, correspondence template, automated workflow, manual entries, an administrative directive, a knowingly uncorrected system field, or some other centralized or recurring municipal practice. PSC ¶¶ 126–132.

The underlying OpenGov data, templates, profiles, audit trails, user information, correspondence histories, and internal communications are principally within Defendants' custody or control.

**D. The July 21 APRA-1280 Event Occurred After Defendant Sholes Was Served**

The proposed pleading separately alleges that APRA-1280 was closed on April 6, 2026 and that its original denial bore both Town and Municipal Court identification. PSC ¶¶ 21–41.

Defendant Sholes was personally served on July 21 at approximately 9:54 a.m. PSC ¶¶ 42–47.

Approximately four and one-half hours thereafter, a new PDF instance concerning that same APRA matter was allegedly generated or exported, with metadata reflecting a creation and modification time of approximately 2:24 p.m. on July 21. PSC ¶¶ 48–59.

The PDF nevertheless facially represents the date April 6, 2026.

The proposed pleading also alleges that the later version differs in a matter directly relevant to the pending action: the apparent absence of the Municipal Court designation appearing upon the original record. PSC ¶¶ 60–66.

Plaintiff therefore alleges upon information and belief that Sholes participated in, directed, caused, authorized, or ratified the post-service activity and seeks discovery concerning the responsible actors and communications. PSC ¶¶ 67–81.

**III. GOVERNING LEGAL STANDARD**

A. Rule 15(d) Expressly Authorizes Supplementation for Post-Pleading Events

Federal Rule of Civil Procedure 15(d) provides:

> *"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction,*

> *occurrence, or event that happened after the date of the pleading to be supplemented."*

Fed. R. Civ. P. 15(d).

The current Federal Rules continue to direct that they be administered to secure the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.   In *Gadbois*, the First Circuit explained that Rule 15(d) provides a pathway for pleading events occurring after the pleading to be supplemented and advances the central objective of the Civil Rules by promoting as complete an adjudication of the dispute as possible. 809 F.3d at 4–5. The Court specifically observed that forcing a plaintiff to commence a second lawsuit can amount to a "pointless formality" where supplementation can efficiently encompass the later events.

The First Circuit further held that Rule 15(d) is discretionary but flexible. Courts "customarily have treated requests to supplement under Rule 15(d) liberally," and the district court considers the totality of the circumstances, including futility, prejudice, unreasonable delay, and the relationship between the existing and proposed allegations. *Id.* at 7.

A recent District of Rhode Island decision likewise recognized that Rule 15(d) governs allegations concerning events occurring after the amended complaint and accepted such allegations as supplementation of the operative pleading.

## B. The Futility Inquiry Does Not Require Plaintiff to Prove the Supplemental Allegations Before Discovery

Where leave is sought before discovery is complete and before summary judgment, the First Circuit evaluates futility under the Rule 12(b)(6) standard.

In *Hatch v. Department for Children, Youth & Their Families*, the Court explained that in this procedural posture an amendment is not futile so long as the proposed pleading sets forth a general factual scenario which, if proven, would entitle the plaintiff to relief on a cognizable theory. 274 F.3d 12, 19 (1st Cir. 2001).

Similarly, *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996), defines futility as failure of the proposed pleading to state a claim under the same legal-sufficiency standard applicable under Rule 12(b)(6).

Thus, the Court need not presently determine who created the July 21 document, why the gender designation was repeatedly used, or whether every factual inference ultimately will be established. Those are merits and discovery questions.

## C. DRI LR Cv 15 Favors Prompt Presentation of the Complete Proposed Pleading

District of Rhode Island Local Rule Cv 15 requires a party seeking amendment to proceed by motion, explain how the proposed pleading differs from the operative pleading and why the change is necessary, and provide a complete and signed proposed pleading.

The District has recently emphasized that a litigant may not simply file another complaint and declare it operative; compliance with Rule 15 and DRI LR Cv 15 is required.

Plaintiff follows that procedure here. He seeks advance leave, identifies the post-filing transactions being added, explains their relationship to the existing claims, and submits a complete proposed Supplemental Complaint.

## IV. ARGUMENT

## A. The Proposed Supplemental Complaint Satisfies the Express Temporal Requirement of Rule 15(d)

Rule 15(d)'s threshold temporal requirement is straightforward: the supplemental transaction, occurrence, or event must have happened after the pleading to be supplemented.

That requirement is satisfied.

The operative First Amended Complaint was filed June 29, 2026.

The principal gender-misidentification events alleged as supplemental conduct occurred between July 7 and July 23.   The APRA-1280 event involving service upon Sholes and subsequent document generation occurred July 21, 2026.

None of those events could have been pleaded as accomplished facts on June 29, 2026 because none had yet occurred.

The Supplemental Complaint carefully separates antecedent evidence from supplemental transactions. Communications preceding June 29 are included only as context demonstrating the alleged origin and continuity of the course of conduct. They are not presented as post-filing events within Rule 15(d).

That temporal discipline weighs strongly in favor of permitting supplementation.

**B. The Supplemental Allegations Are Part of the Same Continuing Controversy**

The relationship between the operative pleading and proposed supplement could scarcely be closer.

**<u>Both concern:</u>**

the same Plaintiff;

the same Town Defendant;

the same individual Defendants or their alleged participants;

the same APRA system;

the same OpenGov governmental platform;

the same governmental records processes;

the same alleged anonymous or unattributed determinations;

the same protected criticism and petitioning;

the same allegations of retaliation;

the same questions of municipal policy, custom, training, supervision, knowledge, and ratification;

and substantially the same prospective relief.

The July 21 allegation is particularly intertwined because it concerns APRA-1280 itself, not merely a later unrelated request.  The April 6 APRA-1280 record is already an evidentiary component of the existing action. The proposed supplement alleges post-filing activity affecting the apparent provenance and form of that very record.

There is therefore no meaningful basis for requiring Plaintiff to initiate a separate action simply because the later conduct occurred after June 29.  That is the procedural fragmentation *Gadbois* counsels against. Rule 15(d) exists to allow later events to be brought within the existing controversy where doing so permits complete and efficient adjudication. 809 F.3d at 4–7.


## C. The July 21 Allegations Concerning Sholes Are Properly Included in a Supplemental Pleading

1. The Alleged Conduct Occurred After Actual Notice of the Federal Action

The proposed pleading alleges that Sholes was personally served at approximately 9:54 a.m. on July 21.

Service provided formal notice of the action and of allegations concerning APRA-1280, the April 6 denial, and the use of Municipal Court letterhead. Approximately four and one-half hours thereafter, the later APRA-1280 PDF was allegedly generated or exported.  That sequence is a quintessential post-pleading occurrence.

Moreover, filing and pursuing litigation against governmental actors is protected petitioning activity. *Powell*, 391 F.3d at 16–18.

Accordingly, later governmental conduct allegedly undertaken because of Plaintiff's prosecution of this action is directly germane to his preexisting retaliation theory.

**2. The Allegation Against Sholes Is Not Based Upon Temporal Proximity Alone**

The proposed pleading does not allege merely:

> ***Sholes was served, and something happened four hours later.***

It alleges a considerably more specific sequence:

APRA-1280 was already closed;

the original document was already evidence in this action;

the original allegedly bore Municipal Court identification;

Sholes was associated with that court;

the federal pleading placed that feature directly in controversy;

Sholes received formal service;

hours later a new PDF concerning the same closed request was generated;

the new PDF bore an April 6 facial date despite its July 21 creation or export; and

the later version allegedly omitted the Municipal Court identification appearing upon the original.

Those facts provide the predicate for the information-and-belief allegation concerning Sholes.

Plaintiff does not represent that the inference has already been proven. He seeks discovery directed at the records capable of proving or disproving it.

**3. Rule 11 Expressly Contemplates Factual Contentions Whose Evidentiary Support Will Be Developed Through Discovery**

Federal Rule of Civil Procedure 11(b)(3) recognizes that factual contentions may be presented when they presently possess evidentiary support or, when specifically

identified, are likely to have evidentiary support after reasonable investigation or discovery.

The Rule is designed to accommodate circumstances in which a litigant possesses a reasonable factual basis but information necessary to conclusively establish the allegation resides with the opposing party.

The Supplemental Complaint identifies the Sholes allegations as made upon information and belief and specifies their evidentiary foundation.

It likewise identifies the discovery required to test them: source documents, revision histories, OpenGov audit logs, user activity, communications, access records, and related ESI.

That is materially different from making an unsupported accusation.

**4. Judicial Immunity Does Not Render the Proposed Allegations Facially Futile**

To the extent Sholes may assert judicial immunity based upon his municipal judicial position, that defense does not make supplementation futile on the face of the proposed pleading.

Judicial immunity turns upon the function performed, not merely the defendant's title.

The Supreme Court has made clear that absolute judicial immunity does not extend to nonjudicial actions—actions not taken in a judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Forrester v. White*, 484 U.S. 219, 227–29 (1988).

The supplemental allegations do not arise from Sholes presiding over a municipal-court case, ruling upon evidence, issuing a judgment, or performing another traditional adjudicative function.

They concern alleged communications, direction, creation or revision of governmental records, APRA administration, litigation-related conduct, and document provenance.

Whether the evidence ultimately establishes Sholes's participation and what immunity, if any, applies to a particular proven act are merits questions. His judicial title alone does not establish futility of allegations expressly directed toward alleged nonjudicial activity.

## D. The Supplemental Facts Are Material to the Existing First Amendment Retaliation Claim

The First Circuit recognizes claims under § 1983 for retaliation arising from protected First Amendment activity.

*Powell* explains that a plaintiff must establish protected conduct and that the protected conduct was a substantial or motivating factor in the retaliatory action, subject to the defendant's opportunity to establish that the same action would have occurred regardless of the protected conduct. 391 F.3d at 17.

The supplemental allegations bear directly upon those elements.

Plaintiff alleges ongoing protected speech, petitioning, criticism, and litigation.

He alleges subsequent adverse governmental treatment.

He alleges temporal proximity.

He alleges repetition.

He alleges knowledge of his activity.

He alleges continuity between the governmental system challenged in the original pleading and the later conduct.

And, concerning APRA-1280, he alleges post-service activity affecting the precise governmental record already implicated by the pending litigation.

The supplemental events therefore are not evidentiary clutter. They are directly relevant to motive, chronology, knowledge, causation, and the alleged continuing character of the retaliation.

**E. The Repeated "Ms. Nelson" Designation Is Properly Pleaded as Part of the Aggregate Retaliatory Course of Conduct**

The Town may contend that use of "Ms." is too trivial to possess constitutional significance.

That argument prematurely isolates each communication from the alleged course of conduct.

Plaintiff does not allege that one accidental salutation establishes a constitutional violation. He alleges numerous governmental records repeating the same inaccurate designation across separate APRA matters, after and during persistent protected petitioning and federal litigation.

The alleged pattern is relevant for at least four independent purposes.

First, it bears upon motive and hostility.

Second, its repetition may reveal a common municipal source or mechanism.

Third, continuation after actual notice may bear upon knowledge, deliberate indifference, or ratification.

Fourth, because the records remain within governmental systems and may continue to be reproduced, the allegations bear upon prospective relief.

The proper inquiry at the Rule 15(d) stage is not whether Plaintiff has already proven purposeful discrimination. It is whether the factual allegations are sufficiently connected to the existing controversy and sufficiently plausible to warrant incorporation into the action.

They are.

**F. The Supplemental Allegations Materially Bear Upon Monell Liability**

Plaintiff recognizes that municipal liability under § 1983 cannot rest upon respondeat superior.  The Supplemental Complaint instead alleges facts potentially relevant to municipal policy, custom, practice, ratification, failure to supervise, failure to train, and deliberate indifference.

The repeated issuance of substantially similar official correspondence across numerous APRA matters may bear upon whether the conduct is attributable to an administrative system rather than a singular employee.

**The relevant evidence includes:**

OpenGov requester profiles;

shared correspondence templates;

document-generation systems;

user-account histories;

approval procedures;

legal-review procedures;

staff training;

supervisory notice;

complaints concerning the practice;

and decisions not to correct it.

The APRA-1280 occurrence separately implicates records-management procedures, OpenGov administration, audit trails, document versioning, and the identity and authority of persons able to create or add documents to closed governmental matters.

Those are precisely the kinds of facts that may distinguish an isolated employee mistake from an institutional practice.

Whether Plaintiff can ultimately satisfy *Monell* must be determined upon the evidence. The proposed supplement provides additional factual allegations directly relevant to that inquiry and therefore is not futile.

**G. The July 21 Occurrence Bears Directly Upon the Existing Allegations Concerning Effective Judicial Review**

The existing action challenges, among other matters, Defendants' alleged failure to identify governmental decisionmakers and the resulting impairment of meaningful review.

The July 21 allegations extend that controversy from identifying who made a governmental determination to determining what governmental record existed when.

If the original April 6 record differs materially from a PDF generated on July 21, and both facially appear to represent the same April 6 governmental action, the distinction is directly material to historical accuracy, evidentiary provenance, attribution, and judicial review.

The allegation does not require the Court presently to find that anyone unlawfully altered evidence.

The Supplemental Complaint expressly leaves open factual explanations that discovery may reveal.

**But determining:**

which versions existed;

when each was created;

what source files produced them;

who caused later generation;

why the Municipal Court designation differs;

and how the later version became associated with the closed request

is plainly related to the litigation already before the Court.

Rule 15(d) permits those later facts to be pleaded now rather than artificially segregated into a second action.

**H. The Requested Prospective Relief Confirms That the Later Events Belong in This Action**

The Supplemental Complaint alleges continuing governmental interaction between Plaintiff and the Town and a recurring course of correspondence through at least July 23. Plaintiff therefore seeks prospective relief directed toward two continuing conditions.

**First,** Plaintiff seeks to prevent knowing future governmental identification of him as female or as "Ms. Nelson," while permitting the Town simply to use his name without an honorific.  **Second,** he seeks non-destructive correction or annotation of inaccurate operational records while preserving historical originals, metadata, and audit trails.

The requested relief concerning APRA-1280 likewise seeks preservation and transparency, not destruction or rewriting of historical evidence. Those remedies are directed toward an alleged continuing controversy. The post-filing conduct therefore bears directly upon whether prospective relief remains necessary and whether purely retrospective remedies would be adequate.

Whether Plaintiff ultimately satisfies every requirement for permanent injunctive relief is a matter for adjudication on the merits. Rule 15(d) does not require Plaintiff to prove entitlement to a final injunction as a condition of pleading the events demonstrating the alleged continuing risk.

**I. The Proposed Supplement Is Not Futile**

A futility objection cannot be converted into a summary trial of disputed facts.

Under *Hatch*, where amendment or supplementation is sought at the pleading stage before completion of discovery and summary judgment, the relevant inquiry is whether the factual scenario, if proven, would permit relief upon a cognizable theory. 274 F.3d at 19.  The proposed Supplemental Complaint alleges concrete factual circumstances relevant to existing constitutional claims:

specific APRA numbers;

specific dates;

a repeated governmental designation;

the date the underlying pleading was filed;

the date and time Sholes was served;

the date and time a later PDF was generated;

the 106-day disparity between facial date and digital generation;

the previous closure of APRA-1280;

the apparent difference in institutional letterhead;

and the governmental systems and actors through which the events occurred.

Plaintiff does not ask the Court to infer liability merely because these events occurred.

He seeks leave to plead them and develop the relevant evidence through discovery.

That is sufficient to defeat a futility objection at this procedural stage.

## J. There Is No Undue Delay

Timing overwhelmingly favors supplementation.

The supplemental conduct occurred principally during July 2026.

Some allegations concern events occurring as late as July 23.

Plaintiff moved promptly to bring those developments before the Court.

There is no stale claim, strategic delay, late-stage reconstruction of the case, or effort to inject new events after the close of discovery.

Indeed, the events could not have been pleaded earlier because they had not yet occurred.

That is the paradigm contemplated by Rule 15(d).

## K. Defendants Will Suffer No Unfair Prejudice

The supplementation does not require Defendants to investigate an unrelated controversy involving different persons, different institutions, a remote time period, or a different legal regime.

The evidence substantially overlaps with evidence already relevant to the First Amended Complaint.

It includes:   Town APRA records;  OpenGov data;  governmental correspondence; requester profiles; Town templates; responsible custodians and officials; communications with counsel; records-retention procedures; document metadata; municipal policies; and the chronology of Plaintiff's protected activity.

Moreover, much of the supplemental evidence was created by or remains in the custody or control of the Defendants themselves.

Discovery concerning those subjects can occur within the same discovery plan already necessary to litigate the operative claims.

Requiring Defendants to respond to recent allegations concerning their own official processes is not the kind of unfair prejudice that warrants denying supplementation.

## L. Rule 1 and Judicial Economy Strongly Favor a Single Action

The judicial-economy considerations are compelling.

Without supplementation, adjudication of the July events through a separate action would require another complaint involving substantially the same parties and legal theories.

There would be duplicate document discovery.

Duplicate depositions.

Duplicate Rule 30(b)(6) topics.

Duplicate ESI inquiries.

Duplicate testimony concerning APRA and OpenGov procedures.

Duplicate inquiries into retaliation and motive.

Duplicate proceedings concerning Town policy and final policymaker knowledge.

And potentially separate judicial determinations concerning whether pre- and post-June 29 events constitute one continuing governmental practice.

Rule 1 directs that the Federal Rules be employed to secure just, speedy, and inexpensive resolution. Rule 15(d) operationalizes that objective for later-occurring events.

The sensible result is one action concerning one continuing controversy.

**M. Good Cause Exists Under Rule 16(b)(4), To the Extent Rule 16 Applies**

Should the Court determine that an existing scheduling order independently requires good cause under Rule 16(b)(4), that standard is also satisfied.

Plaintiff could not have pleaded on June 29:

communications that had not yet been issued;

the July 21 service upon Sholes;

a PDF that had not yet been generated;

or events occurring July 22 and 23.

No greater diligence could have caused future events to exist sooner.

Plaintiff acted after learning of the newly occurring facts and seeks to incorporate them promptly.

The proposed supplementation also will reduce rather than increase procedural inefficiency.

Accordingly, to the extent Rule 16(b)(4) applies, good cause exists.

**N. Plaintiff Has Complied With the Proper Procedural Mechanism Rather Than Unilaterally Attempting to Alter the Operative Pleading**

The distinction is important.

Plaintiff does not contend that filing the proposed Supplemental Complaint automatically makes it operative.

Rule 15(d) vests the Court with discretion to permit supplementation "on just terms." *Gadbois*, 809 F.3d at 7.

Plaintiff therefore proceeds through a motion for leave, accompanied by the complete proposed Supplemental Complaint and this memorandum explaining the necessity and relationship of the new allegations.

That procedure comports with DRI LR Cv 15 and avoids the defect the District of Rhode Island has identified where a litigant attempts simply to file another pleading without first securing leave.

The Court can therefore evaluate precisely what Plaintiff proposes to add before permitting the filing.

**V. CONCLUSION**

The proposed Supplemental Complaint presents precisely the circumstance for which Rule 15(d) exists.

After Plaintiff filed the operative First Amended Complaint on June 29, the controversy did not remain static.

The Town allegedly continued issuing unsigned or unattributed governmental communications.

The alleged inaccurate designation of Plaintiff as "Ms. Nelson" continued repeatedly across numerous official governmental records through at least July 23.

Plaintiff continued exercising his speech, petitioning, governmental-accountability, and litigation rights.

And on July 21, approximately four and one-half hours after Defendant Sholes was personally served with a federal pleading placing APRA-1280 and the Municipal Court letterhead directly in controversy, a new PDF instance concerning that already closed request was allegedly generated or exported while bearing the April 6 facial date and apparently omitting the Municipal Court attribution appearing upon the original record.

Whether those circumstances ultimately establish retaliation, intentional document alteration, discriminatory treatment, municipal ratification, or liability by any particular Defendant remains to be proven.

Plaintiff does not seek an adjudication of those ultimate factual questions through this Motion.

He seeks permission to place the later-occurring transactions before the Court so that the claims may be adjudicated upon a complete evidentiary record.

The allegations are temporally proper under Rule 15(d).

They are directly related to the operative controversy.

They were raised promptly.

They do not unfairly prejudice Defendants.

They overlap substantially with existing discovery.

They plausibly bear upon existing constitutional and municipal-liability theories.

And adjudicating them within this action will avoid redundant litigation, unnecessary expense, inconsistent determinations, and precisely the "pointless formality" Rule 15(d) is intended to prevent.

For those reasons, Plaintiff respectfully requests that the Court:

A. GRANT Plaintiff's Motion for Leave to File the Supplemental Complaint pursuant to Fed. R. Civ. P. 15(d);

B. DIRECT the Clerk to docket the Proposed Supplemental Complaint submitted with the Motion;

C. ORDER that the Supplemental Complaint be read together with the operative First Amended Complaint;

D. PERMIT the supplemental allegations and claims to proceed through discovery and adjudication together with the operative claims;

E. REQUIRE Defendants to respond to the Supplemental Complaint within the period prescribed by the Federal Rules or such time as the Court directs; and

F. GRANT such further relief as the Court determines just and appropriate.

Respectfully submitted,

/s/

Michael E. Nelson
 Plaintiff, Pro Se
33 Hartford Ave South kingstown RI 02879

Dated: July 31, 2026

# CERTIFICATE OF SERVICE

I hereby certify that on 31 July, 2026, I served a true and correct copy of the foregoing upon all counsel of record by the method required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and/or the Court's electronic filing procedures, as applicable.

/s/

Michael E. Nelson
 Plaintiff, Pro Se
33 Hartford Ave South kingstown RI 02879

Dated: July 31, 2026

**[PROPOSED] ORDER**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

MICHAEL ERIC NELSON,

 Plaintiff,

v. C.A. No. 1:26-cv-00352-MRD-AEM

URSILLO, TEITZ & RITCH, LTD., et al.,

 Defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT

Upon consideration of Plaintiff's Motion for Leave to File Supplemental Complaint pursuant to Federal Rules of Civil Procedure 15(d) and 1 and DRI LR Cv 15, together with any opposition and the entire record, it is hereby:

ORDERED:

1.  Plaintiff's Motion is GRANTED;
2.  The Clerk shall docket the Proposed Supplemental Complaint attached to Plaintiff's Motion as Exhibit A;
3.  The Supplemental Complaint shall be read together with the operative First Amended Complaint;
4.  Defendants shall answer or otherwise respond to the Supplemental Complaint within the time prescribed by the Federal Rules of Civil Procedure or such other period as the Court may direct; and

5.  Nothing in this Order determines the ultimate merits of any allegation, claim, defense, or request for relief.

SO ORDERED.

_____

United States District Judge

Dated: _____