<u>**EXHIBIT A**</u>

**PROPOSED SUPPLEMENTAL COMPLAINT TO THE FIRST AMENDED COMPLAINT**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

**MICHAEL E. NELSON,**
 Plaintiff,

v.
 C.A. No. **1:26-cv-00352-MRD-AEM**

**URSILLO, TEITZ & RITCH, LTD.;
 MICHAEL A. URSILLO;
 ANDREW M. TEITZ;
 SCOTT A. RITCH;
 ADAM J. SHOLES;
 TOWN OF SOUTH KINGSTOWN; and
 JANE AND JOHN DOES 1–27,**

Defendants.

**SUPPLEMENTAL COMPLAINT PURSUANT TO FED. R. CIV. P. 15(d)**

Plaintiff Michael Eric Nelson ("Plaintiff"), proceeding pro se, by leave of Court supplements the First Amended Complaint filed June 29, 2026, and alleges as follows:

**I. NATURE AND PURPOSE OF SUPPLEMENTATION**

**1.** This Supplemental Complaint concerns transactions, occurrences, governmental acts, communications, document-generation events, and alleged retaliatory conduct occurring after the filing of Plaintiff's operative First Amended Complaint on June 29, 2026.

**2.** This Supplemental Complaint is intended to supplement, rather than supersede, the operative First Amended Complaint except to whatever extent the Court directs otherwise.

**3.** Plaintiff incorporates the allegations, jurisdictional averments, constitutional claims, municipal-liability theories, requests for declaratory relief, and requests for prospective equitable and injunctive relief contained in the First Amended Complaint as though fully set forth herein, except where expressly supplemented or clarified.

**4.** The parties remain unchanged.

**5.** The Court possesses jurisdiction over the supplemental allegations pursuant to the same bases alleged in the operative First Amended Complaint, including 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1983, and the Court's supplemental and equitable jurisdiction.

**6.** The supplemental events arise from the same nucleus of operative facts already before the Court: Plaintiff's exercise of statutory and constitutional rights to petition government, seek governmental information, criticize governmental conduct, obtain public records, identify governmental decisionmakers, and seek administrative and judicial redress.

**7.** The supplemental events involve the same Town APRA apparatus, the same governmental correspondence systems, the same alleged use of unsigned and unattributed legal determinations, the same municipal officials and agents, and the same alleged effort to burden or deter Plaintiff's protected governmental-transparency petitioning activity.

**8.** Particularly significant is conduct occurring on July 21, 2026, after personal service of process upon Defendant Adam J. Sholes ("Sholes"), in which a newly generated PDF concerning APRA-1280 was created and thereafter appeared within an APRA matter that had been administratively closed approximately 106 days earlier.

**9.** The post-filing conduct materially strengthens Plaintiff's allegations that the challenged practices are not isolated historical irregularities but form a continuing governmental course of conduct capable of repetition and requiring prospective judicial relief.

## II. CONTINUING PROTECTED SPEECH, PETITIONING, AND PUBLIC-INTEREST ACTIVITY

**10.** Before and after June 29, 2026, Plaintiff repeatedly exercised rights protected by the First Amendment, including speech, criticism of public officials and governmental

practices, petitioning for redress, requests for public information, administrative complaints, and resort to the federal courts.

**11.** Plaintiff submitted numerous requests pursuant to the Rhode Island Access to Public Records Act ("APRA") seeking information concerning governmental operations, decision-making, expenditure of public resources, law enforcement, municipal infrastructure, traffic safety, hiring, employment, demographic reporting, and related subjects of public concern.

**12.** Plaintiff's requests were undertaken for purposes extending beyond private curiosity and included preparation for public advocacy, administrative petitions, municipal-policy proposals, and judicial proceedings.

**13.** Among those activities, Plaintiff sought governmental records relating to efforts to establish a consistent twenty-five-mile-per-hour speed limit along Succotash Road.

**14.** Plaintiff undertook that advocacy for the purpose of reducing dangerous speeding and protecting pedestrians, residents, elderly citizens, motorists, visitors, and other persons using the roadway.

**15.** Plaintiff also pursued records concerning the condition, maintenance, beautification, repair, and improvement of municipal infrastructure.

**16.** Plaintiff further sought governmental employment and workforce information to understand municipal hiring and demographic practices.

**17.** APRA-1280 concerned aggregated workforce, hiring, applicant, employment-status, and demographic information.

**18.** Plaintiff maintains that at least portions of the requested workforce information concerned existing governmental records and information of the type maintained or reported by covered state and local governmental employers pursuant to federal employment-reporting requirements.

**19.** At the relevant time, the Equal Employment Opportunity Commission characterized EEO-4 reporting by covered state and local governments as mandatory and required covered governmental entities with 100 or more employees to report workforce demographic information by race or ethnicity, sex, job category, and salary band.

**20.** Plaintiff alleges that his requests therefore concerned governmental information of legitimate public importance and were part of protected efforts to investigate, understand, criticize, and petition government.

### III. APRA-1280, THE APRIL 6 MUNICIPAL-COURT LETTER, AND DEFENDANT SHOLES

**21.** APRA Request No. 1280 was submitted through the Town of South Kingstown's governmental records portal on or about April 3, 2026.

**22.** On April 6, 2026, a denial letter concerning APRA-1280 was issued and associated with that request.

**23.** The original April 6 denial attached as Exhibit B to the First Amended Complaint bore both **Town of South Kingstown** and **South Kingstown Municipal Court** letterhead.

**24.** The April 6 communication was unsigned.

**25.** It did not identify by name the governmental official, attorney, judge, custodian, or other individual who authored or adopted its legal conclusions.

**26.** It cited legal authority and made substantive determinations concerning Plaintiff's rights under APRA.

**27.** The communication therefore purported to exercise governmental legal authority while concealing the identity of the natural person actually exercising that authority.

**28.** Plaintiff alleges that APRA-1280 was an administrative public-records request directed through the Town's governmental records process and was not an adjudicative case pending before the South Kingstown Municipal Court.

**29.** Plaintiff alleges that the presence of Municipal Court letterhead served no legitimate adjudicative purpose in responding to the records request.

**30.** Plaintiff further alleges that the placement of judicial or quasi-judicial Municipal Court insignia upon an unsigned governmental denial reasonably conveyed an enhanced aura of judicial authority to a citizen attempting to obtain public records.

**31.** Plaintiff alleges that this deployment of Municipal Court authority constituted, in context, an intimidation and deterrence mechanism calculated or foreseeably likely to make Plaintiff believe that continued challenges to the Town's records practices were opposed not merely by an administrative custodian but by judicial authority.

**32.** Defendant Sholes was, at the relevant times alleged in the First Amended Complaint, associated with and exercised supervisory authority concerning the South Kingstown Municipal Court and its official letterhead.

33. Plaintiff's allegations against Sholes concerning APRA-1280 involve administrative, supervisory, communicative, and records-related conduct, not the adjudication of any municipal-court case.

34. Plaintiff had challenged the use of the Municipal Court letterhead, the anonymity of the April 6 determination, and the identity of the individual responsible for the governmental legal conclusions before instituting and during this litigation.

35. The use of Municipal Court letterhead upon the original APRA-1280 denial was one of the specific factual circumstances supporting the claims against Sholes contained in the First Amended Complaint.

36. Accordingly, the historical form, provenance, metadata, authorship, creation history, and contents of the original APRA-1280 denial became materially relevant evidence in this federal civil-rights action.

---

### IV. APRA-1280 WAS CLOSED ON APRIL 6, 2026

37. Contemporaneous OpenGov records reflect that the APRA Clerk review concerning APRA-1280 was completed on April 6, 2026 at approximately 8:52 a.m.

38. The governmental portal advised Plaintiff that no responsive records could be provided and directed him to the uploaded denial letter.

39. The portal expressly stated: **"APRA-1280 has been closed."**

40. Thus, absent subsequent administrative intervention, APRA-1280 was not an active pending APRA matter on July 21, 2026.

41. By July 21, 2026, APRA-1280 had remained closed for approximately 106 days.

### V. PERSONAL SERVICE UPON DEFENDANT SHOLES ON JULY 21, 2026

42. On July 21, 2026 **at approximately 9:54 a.m., process server Gary Tantimonaco personally served Defendant Adam Jacob Sholes.**

43. Service occurred at 311A Danielson Pike, North Scituate, Rhode Island, at Sholes's workplace at Rhode Island State Police Headquarters.

**44.** Sholes was personally handed the summons, Plaintiff's First Amended Complaint, and accompanying exhibit or exhibits.

**45.** Sholes thereby received formal notice that he was a named Defendant in this federal action.

**46.** The First Amended Complaint specifically concerned APRA-1280, the April 6, 2026 denial, its anonymous legal conclusions, and the use of South Kingstown Municipal Court letterhead.

**47.** Sholes therefore received notice not merely of generic litigation but of litigation in which the provenance and governmental authority associated with the APRA-1280 denial were directly placed in controversy.

---

## VI. GENERATION OF A NEW APRA-1280 PDF APPROXIMATELY FOUR AND ONE-HALF HOURS AFTER SERVICE TO DEFENDANT ADAM J. SHOLES

**48.** Approximately four and one-half hours after personal service upon Sholes, a new PDF instance concerning APRA-1280 was generated.

**49.** The internal PDF metadata identifies its creation time as **July 21, 2026 at 2:24:29 p.m. Eastern Daylight Time**.

**50.** The PDF's internal modification time is likewise **July 21, 2026 at 2:24:29 p.m. Eastern Daylight Time**.

**51.** XMP metadata independently reflects the same July 21, 2026 creation and modification chronology.

**52.** The filename associated with at least one downloaded instance contains the notation **"Updated_Tue_Jul_21_2026_14-25-08."**

**53.** Notwithstanding the July 21 digital creation or export chronology, the document prominently and facially bears the date **"April 6, 2026."**

**54.** The July 21 PDF was therefore generated or exported **106 calendar days after the date represented upon its face**.

**55.** The metadata identifies Microsoft Word for Microsoft 365 as the creator and producer of the PDF.

**56.** The metadata contains the personal-name field **"John."**

**57.** That metadata entry is not a digital signature and does not, standing alone, establish which individual drafted, approved, authorized, transmitted, or uploaded the document.

**58.** Plaintiff therefore does not allege that the PDF metadata alone establishes the identity of its author.

**59.** The presently available forensic evidence establishes the July 21 creation or export of this particular PDF instance; further discovery is necessary to establish the underlying source document, drafting chronology, authorization, communications, portal activity, and identity of the person or persons responsible.

---

## VII. MATERIAL DIFFERENCE BETWEEN THE ORIGINAL APRIL 6 RECORD AND THE JULY 21 VERSION

**60.** The original April 6 APRA-1280 denial placed in issue in the First Amended Complaint bore the combined letterhead of the Town and the South Kingstown Municipal Court.

**61.** The newly generated July 21 PDF facially begins with Town of South Kingstown letterhead.

**62.** The later-generated PDF appears to omit the South Kingstown Municipal Court identification appearing upon the original version relied upon in the First Amended Complaint.

**63.** The significance of that difference is substantial because the use of Municipal Court letterhead is itself one of the factual bases for naming Sholes and challenging the use of judicial authority in connection with a nonjudicial public-records determination.

**64.** Thus, a later-generated version which retains the historical date of April 6, 2026 while omitting the Municipal Court component has the capacity to create a materially misleading impression concerning what governmental record actually existed and was issued on April 6, 2026.

**65.** Plaintiff alleges that the later-created version, if viewed without access to the original, could falsely suggest that the April 6 denial had always existed solely upon ordinary Town letterhead.

**66.** The creation and placement of such a version after litigation commenced therefore **bears directly upon the integrity of the evidentiary record in this action.**

---

### VIII. ALLEGATIONS AGAINST DEFENDANT ADAM J. SHOLES CONCERNING THE JULY 21 EVENT

**67.** The chronological sequence described above is exceptionally close: Sholes was served at approximately 9:54 a.m.; the later PDF was created or exported at approximately 2:24 p.m.; and the underlying APRA proceeding had been closed since April 6, 2026; the newly generated document on 21 July 2026 is 106 days after closure.

**68.** The later-generated document concerned the precise APRA matter and precise April 6 denial implicated by Plaintiff's claims against Sholes.

**69.** The later version also appears to eliminate the Municipal Court designation that gave rise to Plaintiff's allegations concerning the use of Sholes's court and its institutional authority.

**70.** Upon information and belief, and based upon this temporal and subject-matter proximity, Plaintiff alleges that Sholes **directed, requested, caused, authorized, participated in, encouraged, or procured** the creation, re-creation, export, revision, transmission, or upload of the July 21 APRA-1280 PDF after receiving service of process.

**71.** Plaintiff further alleges, upon information and belief, that Sholes communicated with one or more Town employees, Municipal Court personnel, attorneys, agents, or other persons concerning APRA-1280 after service.

**72.** Plaintiff alleges that one purpose or foreseeable effect of the post-service activity was to alter, sanitize, supplement, reconstruct, or otherwise change the documentary record concerning APRA-1280 after Sholes had notice that the April 6 record and Municipal Court letterhead were evidence in pending federal litigation.

**73.** Plaintiff characterizes the maintenance of an April 6, 2026 facial date upon a PDF first generated or exported on July 21, 2026, when placed into the closed APRA matter without transparent notation of its later creation date, as **apparent backdating or retroactive generation of an official governmental record**.

**74.** Plaintiff does not allege merely that an old document happened to be downloaded on July 21.

**75.** The internal metadata instead reflects that the particular PDF itself was generated or exported on July 21.

**76.** Whether the July 21 PDF was generated from an earlier source document, from a newly revised Word document, from a template, or through another mechanism is information presently within Defendants' possession or control.

**77.** The source DOCX, revision history, Microsoft account information, Word document properties, OpenGov administrative audit logs, upload history, IP logs, email records, network records, messages, attorney communications, and device activity are therefore material evidence.

**78.** In the alternative, should discovery establish that Sholes did not personally issue the direction, Plaintiff alleges that one or more Town employees, Municipal Court personnel, attorneys, agents, or Doe Defendants undertook the conduct after Sholes had been served and for the purpose of protecting, assisting, benefiting, or altering the litigation position of one or more Defendants.

**79.** Plaintiff further alleges in the alternative that Sholes subsequently knew of, approved, adopted, acquiesced in, or ratified the later-created record and failed to direct restoration or transparent identification of its July 21 provenance.

**80.** These allegations are pleaded upon information and belief because the communications necessary to identify the person giving and receiving any such instructions are principally or exclusively within Defendants' custody and control.

**81.** Plaintiff reserves the right to identify additional Doe Defendants and to refine the allegations concerning the respective roles of Sholes and other participants through discovery.

## IX. JULY 21 CONDUCT AS EVIDENCE OF RETALIATION AND INTERFERENCE WITH JUDICIAL REVIEW

**82.** Service of federal process is itself a constitutionally protected resort to the courts and gave Sholes actual notice of Plaintiff's claims.

**83.** Plaintiff alleges that governmental alteration, reconstruction, supplementation, sanitization, or apparent backdating of a record central to pending constitutional litigation, if undertaken because a Defendant had been served, constitutes materially adverse retaliatory conduct.

84. Such conduct would foreseeably burden a person of ordinary firmness in continuing to petition the government, pursue litigation, seek governmental records, and challenge governmental officials.

85. The First Circuit evaluates retaliatory adversity according to whether the governmental response would chill a reasonably hardy person from exercising constitutional rights.

86. The alleged July 21 conduct additionally interferes with Plaintiff's ability to determine what version of an official governmental record existed at a particular point in time and who was responsible for it.

87. Alteration of the apparent documentary history of a challenged governmental act after litigation has commenced creates additional litigation costs and requires forensic examination, preservation efforts, discovery, and judicial intervention that would not otherwise have been necessary.

88. The alleged conduct therefore compounds the access-to-courts, effective-review, retaliation, and governmental-accountability injuries pleaded in the First Amended Complaint.

## X. CONTINUING PATTERN OF INTENTIONAL OR RECKLESS GENDER MISIDENTIFICATION AS DISCRIMATORY HARASSMENT IN RETALIATION FOR PROTECTED FIRST AMENDMENT PETITIONING

89. Separate and apart from the APRA-1280 event, the Town has repeatedly issued official governmental correspondence identifying Plaintiff with the female honorific **"Ms."**

90. Plaintiff is male.

91. Plaintiff was born male.

92. Plaintiff identifies as male.

93. Plaintiff has never represented to the Town that his gender is female.

94. Plaintiff has never requested use of the honorific "Ms."

95. Plaintiff did not create an APRA profile identifying himself as "Ms. Nelson."

**96.** Plaintiff did not authorize the Town, its employees, attorneys, contractors, or agents to identify him as female.

**97.** Earlier correspondence from the Town and its attorneys correctly identified Plaintiff as **"Mr. Nelson"** or otherwise used his male identity, demonstrating that Defendants possessed information from which Plaintiff's gender and customary honorific were readily ascertainable.

**98.** The later repetitive use of "Ms. Nelson" therefore cannot reasonably be evaluated in isolation as a single typographical error.

---

## XI. CHRONOLOGY OF GOVERNMENTAL MISIDENTIFICATION

**99.** Plaintiff presently identifies at least **twenty-three separate governmental communications concerning seventeen APRA matters** in which the Town used "Ms. Nelson," including antecedent communications predating the First Amended Complaint and nineteen indisputably post-filing communications.

**100.** On **June 25, 2026**, the Town addressed Plaintiff as "Ms. Nelson" in correspondence concerning **APRA-1393**.

**101.** On **June 25, 2026**, the Town did so in correspondence concerning **APRA-1439**.

**102.** On **June 25, 2026**, the Town did so in correspondence concerning **APRA-1440**.

**103.** On **June 29, 2026**, the Town issued additional correspondence concerning **APRA-1415** using the same inaccurate female designation.

**104.** Because the First Amended Complaint was filed on June 29, the June 25 communications and, unless its transmission time postdates the filing, the June 29 communication are pleaded as antecedent evidence of the continuing pattern rather than independent post-pleading occurrences under Rule 15(d).

**105.** On **July 7, 2026**, correspondence concerning **APRA-1435** again designated Plaintiff "Ms. Nelson."

**106.** On **July 13, 2026**, correspondence concerning **APRA-1445** again designated Plaintiff "Ms. Nelson."

**107.** On **July 14, 2026**, correspondence concerning **APRA-1448** again designated Plaintiff "Ms. Nelson."

**108.** On **July 17, 2026**, correspondence concerning **APRA-1415** again designated Plaintiff "Ms. Nelson."

**109.** On **July 17, 2026**, correspondence concerning **APRA-1435** again designated Plaintiff "Ms. Nelson."

**110.** On **July 17, 2026**, correspondence concerning **APRA-1439** again designated Plaintiff "Ms. Nelson."

**111.** On **July 17, 2026**, correspondence concerning **APRA-1440** again designated Plaintiff "Ms. Nelson."

**112.** On **July 17, 2026**, correspondence concerning **APRA-1445** again designated Plaintiff "Ms. Nelson."

**113.** On **July 17, 2026**, correspondence concerning **APRA-1448** again designated Plaintiff "Ms. Nelson."

**114.** On **July 17, 2026**, correspondence concerning **APRA-1455** designated Plaintiff "Ms. Nelson."

**115.** On **July 17, 2026**, correspondence concerning **APRA-1457** designated Plaintiff "Ms. Nelson."

**116.** On **July 17, 2026**, correspondence concerning **APRA-1458** designated Plaintiff "Ms. Nelson."

**117.** Thus, at least **nine separate communications on July 17 alone** employed the inaccurate female honorific.

**118.** On **July 18, 2026**, correspondence concerning **APRA-1459** designated Plaintiff "Ms. Nelson."

**119.** On **July 18, 2026**, correspondence concerning **APRA-1461** designated Plaintiff "Ms. Nelson."

**120.** On **July 18, 2026**, correspondence concerning **APRA-1462** designated Plaintiff "Ms. Nelson."

**121.** On **July 21, 2026**, correspondence concerning **APRA-1468** designated Plaintiff "Ms. Nelson."

**122.** On **July 22, 2026**, correspondence concerning **APRA-1469** designated Plaintiff "Ms. Nelson."

**123.** On **July 23, 2026**, correspondence concerning **APRA-1473** designated Plaintiff "Ms. Nelson."

**124.** On **July 23, 2026**, correspondence concerning **APRA-1474** designated Plaintiff "Ms. Nelson."

**125.** Accordingly, the pattern continued across multiple weeks, multiple APRA matters, and repeated official governmental communications after commencement of this federal litigation.

---

## XII. THE MISIDENTIFICATION IS SYSTEMIC OR INTENTIONAL RATHER THAN AN ISOLATED TYPOGRAPHICAL ERROR

**126.** The volume, repetition, consistency, and persistence of the same inaccurate gender designation support a reasonable inference that the conduct is not attributable to a singular typographical mistake.

**127.** Upon information and belief, the repeated misidentification results from one or more of the following: a deliberately altered requester profile; an intentionally selected template; repeated manual selection of a female honorific; an instruction concerning how Plaintiff should be addressed; a shared administrative workflow; knowing refusal to correct an identified error; deliberate indifference to accuracy; retaliatory hostility; or some combination thereof.

**128.** If a central requester profile supplied the honorific, the repeated use across numerous requests supports the inference that one or more Town personnel created, altered, maintained, reviewed, or knowingly failed to correct that profile.

**129.** If the honorific was inserted separately into individual documents, the repeated manual use across at least twenty-three communications presents an even stronger inference of knowing or purposeful conduct.

**130.** Either explanation warrants discovery concerning OpenGov account settings, requester-profile fields, template histories, audit logs, user accounts, document-generation systems, communications, training, policies, and supervisory review.

**131.** Plaintiff has objected to and placed the Town on notice of the inaccurate designation.

**132.** Continued use after notice materially strengthens the inference of knowledge, deliberate indifference, hostility, or purpose.

---

## XIII. OFFICIAL GOVERNMENTAL RECORDS AND CONTINUING INJURY

**133.** The inaccurate designation does not exist merely in transient verbal communications.

**134.** It appears in written governmental records generated through an official municipal records process.

**135.** Such documents may remain within OpenGov, Town servers, correspondence systems, archives, litigation files, APRA files, backups, public-facing portals, and other governmental repositories.

**136.** They are capable of being downloaded, reproduced, transmitted, indexed, searched, disclosed, or republished.

**137.** Consequently, the inaccurate governmental representation concerning Plaintiff's gender is capable of continuing dissemination even after the initial communication.

**138.** Plaintiff alleges that the repeated governmental misidentification has subjected him to humiliation, indignity, administrative confusion, reputational concern, litigation expense, and additional burdens in attempting to have governmental records accurately identify him.

**139.** Plaintiff alleges that knowingly placing inaccurate gender information in permanent governmental records after notice is materially different from a single inadvertent salutation.

**140.** In the context of Plaintiff's ongoing conflict with the Town over governmental transparency, the repeated conduct constitutes relevant evidence of retaliatory animus, hostility, discriminatory motive, deliberate indifference, and purposeful disparate treatment.

**141.** Plaintiff does not rely upon the proposition that a single incorrect honorific, standing alone, necessarily establishes a federal constitutional violation.

**142.** Plaintiff instead challenges the cumulative pattern, the frequency of repetition, the persistence after notice, its connection with Plaintiff's protected activity, its appearance

in permanent governmental records, and its occurrence contemporaneously with other allegedly retaliatory municipal practices.

## XIV. SUPPLEMENTAL ALLEGATIONS SUPPORTING COUNT VI — FIRST AMENDMENT RETALIATION AND CHILLING

143. Plaintiff incorporates paragraphs 1 through 142 together with Count VI of the First Amended Complaint.

144. Plaintiff engaged in protected First Amendment activity by seeking public records, criticizing governmental practices, demanding governmental accountability, petitioning officials, seeking judicial review, filing this federal action, and causing process to be served upon Defendants.

145. Defendants knew or became aware of Plaintiff's protected activities.

146. The repeated post-filing misidentification, continuation of anonymous governmental determinations, and July 21 APRA-1280 incident constitute additional materially adverse conduct when considered cumulatively.

147. The extraordinarily close temporal relationship between personal service upon Sholes and generation of the July 21 APRA-1280 PDF supports a plausible inference of causation at the pleading stage.

148. The continuation of the "Ms. Nelson" designation through July 23 similarly occurred while Plaintiff actively pursued public records, criticized the Town, and prosecuted this federal civil-rights litigation.

149. A governmental campaign involving repeated denigrating or inaccurate official treatment, burdensome records practices, anonymous legal determinations, and alteration of the apparent historical provenance of a document central to pending litigation would deter a reasonably hardy person from continuing protected activity.

150. Plaintiff's refusal to abandon his protected activity does not negate the objectively retaliatory or chilling character of conduct otherwise sufficient to deter a person of ordinary firmness.

## XV. SUPPLEMENTAL ALLEGATIONS AGAINST SHOLES — INDIVIDUAL PARTICIPATION

**151.** Plaintiff incorporates paragraphs 1 through 150.

**152.** Plaintiff alleges that the July 21 conduct concerning APRA-1280 was nonjudicial conduct concerning governmental administration, records, communications, litigation, and document provenance.

**153.** Upon information and belief, Sholes personally participated in the post-service conduct by directing, causing, requesting, authorizing, encouraging, approving, or ratifying the later generation or placement of the APRA-1280 document.

**154.** Sholes's alleged conduct occurred after he was placed on actual notice of the federal action and of Plaintiff's allegations concerning the original APRA-1280 letter.

**155.** The subject matter of the newly generated record was not coincidental or unrelated; it was the exact APRA matter in which use of Municipal Court letterhead formed a basis for Plaintiff's allegations concerning Sholes.

**156.** The later-generated version appears to remove the very Municipal Court designation challenged in the First Amended Complaint.

**157.** Plaintiff therefore alleges a plausible retaliatory motive and an intent, purpose, or foreseeable effect of altering the documentary presentation of facts material to pending litigation.

**158.** Discovery is necessary to determine whether Sholes communicated with Town employees, counsel, Municipal Court personnel, records custodians, information-technology personnel, or other individuals between service at approximately 9:54 a.m. and generation of the PDF at approximately 2:24 p.m.

**159.** Plaintiff seeks discovery identifying every communication, device, user account, document-access event, email, telephone call, message, instruction, portal action, draft, and metadata event concerning APRA-1280 during that period and thereafter.

## XVI. SUPPLEMENTAL ALLEGATIONS SUPPORTING COUNT VII — ACCESS TO COURTS AND EFFECTIVE JUDICIAL REVIEW

**160.** Plaintiff incorporates paragraphs 1 through 159 together with Count VII of the First Amended Complaint.

**161.** Meaningful judicial review depends upon the integrity and ascertainable provenance of governmental records placed in controversy.

**162.** A plaintiff cannot reliably litigate a governmental decision if Defendants may subsequently generate a materially different version of the challenged record, preserve the earlier facial date, and place the later version into the administrative file without clearly identifying its later provenance.

**163.** Such conduct obscures which document existed at the relevant time, who created it, what institutional authority it displayed, and whether the record relied upon in litigation is historically authentic.

**164.** The July 21 event therefore supplements Plaintiff's allegation that Defendants' practices obstruct meaningful access to judicial review by concealing responsible governmental actors and impairing the integrity of the documentary record.

---

## XVII. SUPPLEMENTAL ALLEGATIONS SUPPORTING COUNT VIII — EQUAL PROTECTION AND SELECTIVE TREATMENT

**165.** Plaintiff incorporates paragraphs 1 through 164 together with Count VIII of the First Amended Complaint.

**166.** Plaintiff alleges that the Town's repeated and knowing designation of him as female constitutes additional disparate treatment imposed upon him in connection with his persistent APRA activity and criticism of municipal government.

**167.** Plaintiff alleges upon information and belief that ordinary APRA requesters who have not engaged in comparable criticism, litigation, or persistent governmental oversight are not systematically subjected to deliberately inaccurate gender designations in Town correspondence.

**168.** Discovery concerning correspondence issued to similarly situated requesters will permit Plaintiff to establish whether the practice was uniquely or disproportionately applied to him.

**169.** No legitimate governmental purpose is served by knowingly and repeatedly identifying a male citizen as female after actual notice that the designation is inaccurate.

**170.** To the extent the treatment was deliberately directed at Plaintiff because of hostility arising from his protected activity, it constitutes further evidence supporting his existing equal-protection and retaliation theories.

---

## XVIII. SUPPLEMENTAL ALLEGATIONS SUPPORTING MUNICIPAL LIABILITY

**171.** Plaintiff incorporates paragraphs 1 through 170 and the municipal-liability allegations of the First Amended Complaint.

**172.** The post-filing communications were issued through official Town governmental systems and processes.

**173.** At least nineteen post-filing communications between July 7 and July 23 allegedly repeated the same inaccurate gender designation.

**174.** Nine were issued on July 17 alone.

**175.** The consistency and frequency of the practice plausibly support the existence of a common template, requester profile, system configuration, directive, administrative custom, workflow, or supervisory failure.

**176.** The continuation of the conduct after Plaintiff objected supports an inference of actual or constructive notice.

**177.** Municipal supervisory personnel had repeated opportunities to correct the practice.

**178.** Failure to do so permits a reasonable inference, subject to discovery, of acquiescence, ratification, deliberate indifference, failure to train, failure to supervise, or municipal custom.

**179.** The July 21 generation and placement of a newly created APRA-1280 PDF into a matter closed since April further implicates Town document-management, records-governance, OpenGov administration, supervision, litigation-hold procedures, and policymaker oversight.

**180.** Plaintiff therefore alleges that the supplemental conduct is attributable to the Town under one or more theories already asserted in the First Amended Complaint and to be developed through discovery.

## XIX. SUPPLEMENTAL ALLEGATIONS SUPPORTING COUNT X — JOINT ACTION AND CONSPIRACY

**181.** Plaintiff incorporates paragraphs 1 through 180 together with Count X of the First Amended Complaint.

**182.** Upon information and belief, the July 21 APRA-1280 event could not have occurred without action by one or more persons possessing access to the source document, Town systems, governmental records, OpenGov administrative functions, or the ability to cause another person with such access to act.

**183.** If Sholes directed the generation or replacement and Town personnel implemented that direction, those acts constitute circumstantial evidence of joint action in furtherance of the alleged deprivation of Plaintiff's constitutional rights.

**184.** If Town counsel participated in directing, reviewing, approving, or facilitating the later-created document, those acts similarly constitute relevant evidence concerning the existing allegations of coordinated conduct.

**185.** Plaintiff presently lacks access to the communications and system records necessary to identify every participant.

**186.** Plaintiff therefore pleads the existence and respective roles of additional participants upon information and belief and seeks discovery to establish the identities, agreement, communications, overt acts, and purposes of those persons.

---

## XX. NEED FOR PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF

**187.** The supplemental conduct demonstrates that the controversy remains active and ongoing.

**188.** Plaintiff continues to interact with the Town and continues to exercise statutory and constitutional rights to seek public information and petition government.

**189.** The challenged gender misidentification continued repeatedly through at least July 23, 2026.

**190.** The existing inaccurate records remain capable of future governmental use and republication.

191. Plaintiff therefore faces an objectively real risk that further Town communications will continue to designate him inaccurately as female.

192. Plaintiff also faces a continuing risk that governmental determinations affecting his APRA rights will be issued without attribution to an identifiable decisionmaker.

193. Plaintiff further alleges a continuing need to protect the integrity, provenance, metadata, and revision histories of governmental records implicated in this litigation.

194. Retrospective monetary relief alone cannot prevent continuing misidentification, continuing anonymous governmental determinations, or future alteration of the apparent provenance of relevant records.

## XXI. SPECIFIC INJUNCTIVE RELIEF CONCERNING GENDER MISIDENTIFICATION

195. Plaintiff seeks narrowly tailored prospective relief prohibiting knowing or intentional governmental misidentification of his gender.

196. Specifically, Plaintiff seeks an injunction prohibiting the Town of South Kingstown, its officers, employees, agents, attorneys, contractors, and persons acting in active concert or participation with them who receive actual notice of the injunction from knowingly or intentionally referring to Plaintiff as **"Ms. Nelson,"** representing Plaintiff as female, or otherwise applying a female gender designation to Plaintiff in newly created governmental communications or records.

197. The injunction would not prohibit preservation of historical records as they originally existed.

198. Plaintiff instead seeks correction or non-destructive annotation of public-facing and operational copies sufficient to prevent future governmental reliance upon a knowingly inaccurate gender designation while preserving the original document, metadata, revision history, and audit trail for evidentiary purposes.

199. Where an honorific is unnecessary, the Town may avoid gendered honorifics entirely and address Plaintiff as **Michael E. Nelson** or **Michael Nelson**.

200. Where the Town elects to use a gendered honorific for Plaintiff, Plaintiff seeks an order requiring use of **"Mr."** rather than "Ms."

201. Such relief is narrowly directed toward stopping the alleged continuing misconduct without requiring destruction, concealment, or alteration of historical evidence.

## XXII. SPECIFIC EQUITABLE RELIEF CONCERNING APRA-1280 AND DOCUMENT PROVENANCE

**202.** Plaintiff seeks preservation of every version of the APRA-1280 denial and its source files.

**203.** Plaintiff seeks preservation of the April 6 original, the July 21 later-generated PDF, every intervening draft, source DOCX, attachment, portal copy, temporary file, backup, and revision.

**204.** Plaintiff seeks preservation of OpenGov audit logs showing creation, deletion, replacement, upload, download, access, closure, reopening, administrative modification, and user activity concerning APRA-1280.

**205.** Plaintiff seeks preservation of communications concerning APRA-1280 occurring after service upon Sholes on July 21.

**206.** Plaintiff further seeks prospective relief prohibiting Defendants from materially altering the apparent date, authorship, provenance, letterhead, content, or history of governmental records relating to Plaintiff without preserving the original and clearly identifying any later-created version as a subsequent revision or replacement.

## XXIII. SUPPLEMENTAL INJURY AND DAMAGES

**207.** As a direct and proximate result of the supplemental conduct, Plaintiff alleges additional constitutional, dignitary, reputational, administrative, and litigation injuries.

**208.** Plaintiff has expended additional time, resources, effort, and litigation expense investigating the post-filing events.

**209.** Plaintiff has been required to conduct forensic review of governmental PDFs and seek preservation of evidence that should have remained ascertainable from the ordinary governmental record.

**210.** Plaintiff alleges humiliation and indignity resulting from the repeated knowing or reckless misidentification of his gender in official governmental correspondence.

**211.** Plaintiff alleges continuing concern that inaccurate governmental records identifying him as female will be reproduced, disclosed, relied upon, or republished.

**212.** Plaintiff alleges that the conduct has increased the burden of exercising his constitutional right to petition the government and pursue judicial review.

**213.** Plaintiff therefore seeks compensatory damages for post-filing injuries to the extent legally recoverable.

**214.** Plaintiff seeks punitive damages against any individual Defendant whose conduct is ultimately proven to satisfy the governing legal standard for punitive damages under § 1983.

**215.** Plaintiff does not seek punitive damages against the Town where such damages are prohibited by law.


## XXIV. SUPPLEMENTAL PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

**A.** Permit this Supplemental Complaint to be adjudicated together with the operative First Amended Complaint;

**B.** Declare that Defendants may not retaliate against Plaintiff for requesting public records, criticizing governmental conduct, petitioning government, commencing federal litigation, or serving process upon governmental Defendants;

**C.** Declare that the post-filing conduct proven at trial constitutes additional evidence of the continuing retaliation, governmental opacity, municipal custom, and constitutional injury alleged in the First Amended Complaint;

**D.** Enjoin the Town and responsible officials from knowingly or intentionally identifying Plaintiff as "Ms. Nelson," female, or by any other inaccurate female designation in newly generated official governmental communications and records;

**E.** Require the Town, when an honorific is used, to identify Plaintiff as **"Mr. Nelson,"** or alternatively to employ no gendered honorific;

**F.** Require reasonable correction or non-destructive annotation of inaccurate public-facing or operational governmental records concerning Plaintiff's gender, while preserving original documents, metadata, audit trails, and revision histories intact;

**G.** Enjoin Defendants from materially altering or replacing governmental records relevant to this litigation in a manner that obscures the date of later creation, authorship, provenance, or revision history;

**H.** Require preservation of all originals, versions, source files, drafts, metadata, communications, portal audit logs, access records, user-account activity, and device records relating to APRA-1280 and the July 21, 2026 event;

**I.** Require transparent identification of the responsible governmental official or custodian in legally operative APRA determinations to the extent required by the Constitution and applicable law;

**J.** Award Plaintiff compensatory damages for post-filing injuries proven to have been proximately caused by Defendants' actionable conduct;

**K.** Award punitive damages against individual Defendants to the extent authorized by law and supported by the evidence;

**L.** Award costs, fees, and litigation expenses to the extent authorized by law;

**M.** Preserve all declaratory, equitable, and injunctive relief sought in the First Amended Complaint;

**N.** Retain jurisdiction to enforce any declaratory or injunctive relief entered by the Court; and

**O.** Grant such further legal and equitable relief as the Court determines to be just and proper.


**JURY PRESERVATION**  Plaintiff does not presently seek Trial by Jury on the First Amended Complaint.  Plaintiff reserves the right to trial by jury upon all newly pleaded issues for which a jury trial is available as of right, to the extent permitted by Federal Rule of Civil Procedure 38 and applicable law.

Respectfully submitted,

/s/

**MICHAEL ERIC NELSON**
 Plaintiff, Pro Se
33 Hartford Ave South kingstown RI 02879

Dated: July 31, 2026