**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| MICHAEL E. NELSON,<br><br>      Plaintiff,<br><br>v.<br><br>URSILLO, TEITZ & RITCH, LTD.;<br>MICHAEL A. URSILLO; ANDREW M.<br>TEITZ; SCOTT A. RITCH; ADAM J.<br>SHOLES; TOWN OF SOUTH KINGSTOWN;<br>and JANE AND JOHN DOES 1-27,<br><br>      Defendants. | C.A. No.<br>1:26-cv-00352-MRD-AEM |

**PLAINTIFF'S RESPONSE IN OPPOSITION; OBJECTION AND INCORPORATED MEMORANDUM OF LAW <u>IN OPPOSITION</u> TO DEFENDANTS' MOTION TO DISMISS IN LIEU OF ANSWER (ECF NO. 20)**

Plaintiff Michael E. Nelson, proceeding pro se, respectfully opposes Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). REQUEST FOR ORAL ARGUMENT Pursuant to DRI LR Cv 7(c), Plaintiff requests oral argument and estimates that thirty minutes will be required. No evidentiary hearing is requested.

**I. INTRODUCTION**

Defendants' seven-page memorandum attempts to dispose of eleven counts through two propositions: (1) there is no generalized federal constitutional right to obtain government information; and (2) R.I. Gen. Laws § 38-2-7 does not expressly require an APRA denial to identify or bear the signature of its author. Neither proposition resolves the constitutional claims actually pleaded.

Plaintiff does not allege that the Constitution independently compels disclosure of every government record or that § 38-2-7, standing alone, mandates a handwritten signature. The First Amended Complaint ("FAC") instead alleges that Defendants retaliated against and selectively burdened Plaintiff because he repeatedly sought public records, criticized the Town's practices, demanded accountability, objected to anonymous governmental determinations, and petitioned for redress. FAC ¶¶ 327-39. It further alleges a recurring municipal practice, joint action with private counsel, disparate treatment, interference with review, and continuing prospective injury. Those theories turn on retaliation, motive, differential treatment, state action, municipal policy, and procedural structure-not on a freestanding constitutional entitlement to every requested record.

Defendants' statutory argument is also materially incomplete. Rhode Island law distinguishes persons who possess authority to grant or deny APRA requests from persons who do not. Section 38-2-3.16 requires the chief administrator annually to certify that every officer and employee possessing grant-or-deny authority received APRA orientation and training. The Attorney General's implementing regulation separately governs persons who acquire such authority during the year and requires individualized training and certification. 110-RICR-60-00-2.1(A)-(B), (D), 2.2. APRA also requires a designated public-records officer or unit, R.I. Gen. Laws § 38-2-3(d), prohibits withholding based on the purpose for which records are sought, id. § 38-2-3(j), and provides for review by the chief administrative officer of determinations made by a subordinate, id. § 38-2-8(a).

These provisions do not automatically require a printed name on every response. They do, however, refute Defendants' categorical assertion that the identity, authority, training, institutional status, and decisional level of the person exercising APRA authority are legally immaterial. At minimum, they make those matters proper subjects for factual development rather than grounds for dismissal.

**The Motion should be denied.** At the least, the Court should preserve the plausibly pleaded First Amendment retaliation claim and its derivative Monell and joint-action theories, address any distinct deficiency count by count, and allow a Local Rule 15-compliant amendment before dismissing any curable claim with prejudice.

## II. GOVERNING STANDARD

A Rule 12(b)(6) motion tests plausibility, not proof. The Court must accept well-pleaded facts as true, draw all reasonable inferences for Plaintiff, and determine whether the allegations permit a reasonable inference of liability. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7, 12-13 (1st Cir. 2011).* A complaint need not identify the perfect legal label where its facts give fair notice of a viable claim. *Johnson v. City of Shelby, 574 U.S. 10, 11-12 (2014) (per curiam).*

Plaintiff's pro se allegations must be liberally construed and held to a less stringent standard than attorney-drafted pleadings. *Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).* Liberal construction does not excuse substantive requirements, but it requires

the Court to evaluate the substance of the pleaded facts rather than extinguish potentially viable claims because of imperfect nomenclature.

**III. DEFENDANTS CONFUSE THE ABSENCE OF A GENERAL RIGHT TO GOVERNMENT INFORMATION WITH THE DISTINCT RIGHT TO BE FREE FROM RETALIATION**

Defendants rely on Houchins v. KQED, Inc., 438 U.S. 1 (1978), and In re Boston Herald, Inc., 321 F.3d 174 (1st Cir. 2003), for the narrow proposition that the First Amendment does not create a generalized right of access to all information controlled by government. The plaintiff does not dispute that narrow proposition. But it does not answer whether the government may burden a state-created records process because a citizen engaged in protected speech and petitioning.

**The unconstitutional-conditions rule supplies the distinction.** Even when a person has no independent entitlement to a governmental benefit, the government may not deny or burden that benefit for a reason that infringes First Amendment freedoms. *Perry v. Sindermann, 408 U.S. 593, 597 (1972).* Thus, the absence of a freestanding constitutional entitlement to APRA records does not authorize Defendants to administer APRA discriminatorily or retaliatorily because of Plaintiff's requests, criticism, objections, and petitions.

First Circuit law recognizes a *§ 1983* retaliation claim where a plaintiff plausibly alleges protected conduct, adverse governmental action sufficient to deter a person of ordinary firmness, and a causal connection. *Falmouth Sch. Dep't v. Doe, 44 F.4th 23, 47 (1st Cir. 2022); D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012); Powell v. Alexander, 391 F.3d 1, 16-17 (1st Cir. 2004).* The right to petition the

government regarding public concerns without retaliation is likewise protected. *Boyle v. Burke, 925 F.2d 497, 505-06 (1st Cir. 1991).*

*DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1289-90 (11th Cir. 2019),* is directly instructive: public-records requests and related litigation directed to the government can constitute protected First Amendment activity. Although DeMartini resolved causation against the plaintiff after factual development, it rejects Defendants' categorical premise that public-records activity cannot be constitutionally protected.

Defendants' Rhode Island cases do not alter the analysis. *Direct Action for Rights & Equality v. Gannon, 819 A.2d 651, 659 (R.I. 2003)*, recognizes APRA's substantive statutory right of access. *Robinson v. Malinoff, 770 A.2d 873, 876 (R.I. 2001)*, addresses the statutory APRA cause of action against the public body that is custodian. Neither case decides whether the government may retaliate for protected requests and criticism, whether private counsel may jointly participate in state action under § 1983, or whether a municipality may selectively administer its records process for a constitutionally forbidden reason.

But the distinction between **entitlement** and **retaliation** is constitutionally dispositive.

In *Perry v. Sindermann*, the Supreme Court held that the absence of an independent entitlement to a governmental benefit does not permit government to deny that benefit for a reason infringing First Amendment freedoms. 408 U.S. at 597. Thus, the fact that the First Amendment does not itself create Rhode Island's statutory right to inspect records does not authorize Defendants to administer that statutory mechanism discriminatorily or retaliatorily because of Plaintiff's speech or petitioning.

Likewise, in *Powell*, the First Circuit held that retaliation against exercise of First Amendment rights is cognizable under § 1983 because governmental retaliation may deter or chill constitutional activity. 391 F.3d at 16–17.

The distinction is straightforward:

**The Plaintiff need not possess a freestanding constitutional entitlement to the requested governmental benefit in order to possess a constitutional right not to be punished, discriminated against, intimidated, or retaliated against for engaging in protected speech and petitioning activity relating to that benefit.**

Accordingly, *Houchins* and *Boston Herald* cannot sustain dismissal of the First Amendment retaliation claims.

## IV. COUNT VI PLAUSIBLY ALLEGES FIRST AMENDMENT RETALIATION, AND COUNT II MUST BE READ CONSISTENTLY WITH THAT CLAIM

The FAC alleges each retaliation element. Plaintiff repeatedly submitted APRA requests on matters of public concern, criticized the Town's opacity and legal positions, objected to anonymous determinations, demanded identification and accountability, and petitioned municipal actors and counsel. FAC ¶¶ 327-29. Defendants allegedly knew of that activity. Id. ¶ 329.

The FAC then alleges that after Plaintiff became a persistent and vocal requester and critic, Defendants adopted, maintained, or intensified adverse measures, including aggregation of distinct requests, substantial and allegedly unsupported prepayment demands, indefinite tolling, conclusory "undue burden" assertions, structurally anonymous determinations, refusal to identify responsible actors, use of municipal and

judicial letterhead, and refusal to correct the practice after notice. Id. ¶¶ 209-21, 222-32, 330-36. The FAC alleges those measures would deter a person of ordinary firmness and were intended, at least in part, to discourage further requests, criticism, and petitioning. Id. ¶¶ 333-39.

Knowledge, sequence, escalation after protected activity, continuation after repeated objections, and allegedly differential burdens support a plausible inference of retaliatory motive at the pleading stage. Defendants may later offer neutral explanations, but Rule 12(b)(6) does not permit the Court to resolve disputed motive or but-for causation in their favor. *See Gattineri v. Town of Lynnfield, 58 F.4th 512, 514-15 (1st Cir. 2023)* (stating retaliation requirements); *Rivera-Corraliza v. Puig-Morales, 794 F.3d 208, 226 (1st Cir. 2015)* (circumstantial evidence may support retaliatory inference).

Count II should be read together with Count VI. The Petition Clause does not require the government to grant a petition or provide a favorable response. *Smith v. Ark. State Highway Emps., Local 1315, 441 U.S. 463, 465 (1979)*. It does protect petitioning activity from retaliation. *California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972); Boyle, 925 F.2d at 505-06*. Read as a whole and liberally construed, Count II challenges burdens and retaliation directed at Plaintiff's petitioning, not a constitutional entitlement to have every APRA request granted or personally signed.

**V. APRA'S INTEGRATED STATUTORY AND REGULATORY STRUCTURE DEFEATS DEFENDANTS' CLAIM THAT THE DECISIONMAKER IS IMMATERIAL**

Defendants argue that § 38-2-7 lists four requirements for a written denial and does not expressly require the author's name or signature. That does not establish that

an APRA determination may be exercised by an unascertainable actor of unknown authority without any legally relevant consequence.

**A. Authorized decisionmakers are a defined and regulated statutory class.**

Section 38-2-3.16 <u>requires each chief administrator annually</u> to state in writing to the Attorney General that all officers and employees "who have the authority to grant or deny" APRA access have received orientation and training. The statute therefore differentiates authorized decisionmakers from personnel who do not possess that authority.

The Attorney General's active regulation implements that distinction. The chief administrative officer must annually certify the training of persons possessing grant-or-deny authority; persons newly acquiring authority during the year must receive training and later certification; trained personnel must certify completion; and the prescribed certification identifies the certified person, entity, training date, chief administrator, and signatures. *110-RICR-60-00-2.1(A)-(B), (D), 2.2.*

The certification obligation necessarily presupposes that the public body can identify who possesses grant-or-deny authority. Whether the actual actor possessed delegated authority, received required training, and fell within the annual certification obligation cannot be evaluated without an ascertainable decisionmaker.

**B. APRA requires an identifiable institutional structure and decisional hierarchy.**

Section 38-2-3(d) requires written procedures identifying a designated public-records officer or unit. Section 38-2-8(a) authorizes the chief administrative officer to review "determinations made by his or her subordinate" and then issue a final

determination. These provisions distinguish the designated records structure, subordinate determinations, and final administrative review.

An unsigned response may still comply with § 38-2-7 in some circumstances. But Defendants improperly convert the absence of an express signature command into the much broader assertion that it makes no legal difference whether the determination was made by a trained records officer, another municipal employee, the chief administrator, outside counsel, municipal-court personnel, or an actor lacking grant-or-deny authority. APRA's structure refutes that assertion.

The Attorney General has likewise treated grant-or-deny authority as material. *See Riggs v. Coastal Resources Management Council, PR 17-43 (R.I. Att'y Gen. 2017)* (distinguishing outside counsel because counsel did not possess authority to grant or deny access), citing *Farinelli v. City of Pawtucket, PR 17-19 (R.I. Att'y Gen. 2017)*.

**C. APRA expressly rejects purpose-based withholding.**

Section 38-2-3(j) provides that records shall not be withheld based on the purpose for which they are sought and prohibits requiring a requester to provide a reason. That provision does not itself establish a federal retaliation claim, but it reinforces that the statutory process is not supposed to turn on governmental hostility toward the requester's purpose, criticism, or oversight activity. Plaintiff's allegation is not merely that a name was omitted; it is that Defendants selectively used opacity, fees, aggregation, and delay to burden protected conduct.

**D. The training provisions reinforce the pleaded constitutional theories without creating an automatic constitutional violation.**

Plaintiff does not argue that every violation of *§ 38-2-3.16* is itself a Fourteenth Amendment violation or that the statute expressly requires a name on every denial. Rather, the provisions demonstrate that authority, training, delegation, and decisional level are legally meaningful. They support factual development concerning whether the challenged determinations were issued by authorized and trained actors, whether outside counsel advised or actually exercised governmental authority, whether the practice was institutional, and whether Plaintiff received the same procedures as similarly situated requesters.  Those are factual matters. They cannot be resolved against Plaintiff by reading *§ 38-2-7* in isolation.

## VI. FACIAL APRA COMPLIANCE AND STATE REMEDIES DO NOT DEFEAT THE FEDERAL CLAIMS

The four letters attached to the FAC may be considered under Rule 10(c), but they establish only what the documents say. Even assuming they facially satisfy § 38-2-7, that does not establish as a matter of law who made the determinations, whether the actor possessed grant-or-deny authority, whether the actor was trained and certified, whether outside counsel exercised governmental power, whether Plaintiff was treated differently, whether the repeated practice was municipal policy, or why Defendants selected the challenged measures.

Nor must Plaintiff exhaust APRA's administrative or state-court remedies before pursuing independent § 1983 claims. *Patsy v. Board of Regents, 457 U.S. 496, 516 (1982). Sections 38-2-8 and 38-2-9* may govern a statutory action seeking records; they do not displace federal jurisdiction over retaliation, equal protection, due process, state action, or municipal liability.

**VII. THE DERIVATIVE AND DISTINCT COUNTS CANNOT BE DISMISSED EN MASSE UNDER HOUCHINS**

**A. Count III-Monell municipal liability.**

The FAC does not rely on *respondeat superior.* It alleges repeated conduct across multiple requests, dates, governmental channels, and letterheads; continuation after notice; supervisory knowledge; and institutional acceptance or ratification. *FAC ¶¶ 154-77, 233-58.* A municipality may be liable where an underlying constitutional deprivation is caused by policy, custom, persistent practice, or a decision attributable to a final policymaker. *Monell v. Department of Social Services, 436 U.S. 658, 690-94 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-84 (1986).*

Because Count VI plausibly alleges an underlying First Amendment violation, Count III cannot be dismissed merely by invoking Houchins. The Town's APRA policies, delegations, annual *§ 38-2-3.16* certifications, training records, and approval hierarchy bear directly on whether the practice was institutional or accidental.

**B. Count X-joint action and conspiracy.**

Private attorneys are not state actors solely because they represent a municipality. They may, however, act under color of state law when they are willful participants in joint action with governmental actors. *Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Lugar v. Edmondson Oil Co., 457 U.S. 922, 937-42 (1982); Estades-Negroni v. CPC Hospital San Juan Capestrano, 412 F.3d 1, 4-5 (1st Cir. 2005).*

To state a § 1983 conspiracy claim, a plaintiff must plausibly allege (1) an agreement between two or more persons — including an agreement between a private party and a state actor — to deprive the plaintiff of a federal right, and (2) an overt act in

furtherance of that agreement causing an actual deprivation. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988). The agreement need not be express; it may be inferred from circumstantial evidence and the parties' concerted conduct. *Earle*, 850 F.2d at 844.

Private attorneys are not state actors merely because they represent a municipality. But they act under color of law when they are "willful participants in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937–41 (1982) (state action where the private party "has acted together with or has obtained significant aid from state officials"); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4–5 (1st Cir. 2005) (private party "jointly engaged" with state actors acts under color); *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980) (private attorneys subject to § 1983 where they conspire with state officials).

Count X alleges an agreement or coordinated understanding to draft, approve, issue, and maintain anonymous governmental determinations; identifies overt acts, including the Town, municipal-court, and law-firm letters and prepayment demands; and alleges continuation after Plaintiff demanded attribution. FAC ¶¶ 376-86. The distinction between counsel advising an authorized municipal actor and counsel personally exercising grant-or-deny authority is factual and material under § 38-2-3.16. With a plausible underlying retaliation claim, Count X is not defeated by Defendants' generalized right-to-information argument. *See Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980).*

Count X alleges a coordinated understanding among the Town, the municipal court, and the Firm to draft, approve, issue, and maintain anonymous governmental determinations, and it pleads overt acts in furtherance: the Town letters, the municipal-court letters, the Firm's letters, and the prepayment demands. FAC ¶¶ 376–86. The FAC further alleges the practice *continued after Plaintiff demanded attribution* — conduct inconsistent with inadvertence and probative of the willful, shared design *Dennis* requires. 449 U.S. at 27–28. At the pleading stage, agreement may rest on plausible inference from coordinated conduct; Plaintiff need not allege the conspirators' private communications before discovery. Plaintiff's demand for attribution was protected petitioning activity; the alleged continuation and escalation thereafter is the retaliation, not a freestanding informational injury.

Whether the Firm merely advised authorized municipal actors or itself exercised the grant-or-deny authority committed to the municipality under § 38-2-3.16 is a factual question that cannot be resolved on the pleadings. The state-action inquiry is "necessarily fact-bound": "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961). State action turns on the function performed, not the actor's title or contract status. *West v. Atkins*, 487 U.S. 42, 54–56 (1988). An attorney who personally issues, approves, or maintains a governmental determination — rather than counseling the official who does — crosses from adviser to joint participant. Where that line falls here requires a developed record.

A § 1983 conspiracy claim requires an underlying constitutional deprivation. *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980). Because the FAC

plausibly alleges First Amendment retaliation, that predicate is satisfied and Count X survives with it. Defendants' generalized right-to-information argument misses the point: Count X does not assert a freestanding right to attribution. It redresses concerted retaliation carried out *through* anonymous determinations — conduct no defendant was entitled to undertake, jointly or alone. Plaintiff's demand for attribution was itself protected petitioning activity, and the alleged continuation of the practice thereafter is evidence of the retaliatory agreement, not a mere informational dispute.

**C. Count VIII-equal protection.**

A class-of-one claim requires intentional treatment different from similarly situated persons without rational basis. *Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)*. Count VIII alleges that the Town did not uniformly use anonymous and structurally opaque determinations against all APRA requesters and instead particularly employed them against Plaintiff or requesters perceived as persistent, critical, or adversarial. FAC ¶¶ 354-62.

This claim concerns differential administration, not a generalized constitutional right to records. Plaintiff acknowledges that First Circuit law requires sufficiently particular comparators. *Back Beach Neighbors Committee v. Town of Rockport, 63 F.4th 126, 129-33 (1st Cir. 2023)*. Whether comparator detail is adequate should be decided count specifically; any curable deficiency does not justify dismissal of the entire action.

D. Counts I and IV-procedural due process and declaratory relief concerning identifiable authority.

Procedural due process requires a protected interest and constitutionally sufficient process. *Board of Regents v. Roth, 408 U.S. 564, 569-77 (1972); Mathews v.*

*Eldridge, 424 U.S. 319, 332-35 (1976)*. Plaintiff does not contend that every APRA irregularity automatically becomes a constitutional violation. But Defendants do not analyze the pleaded process under *Roth and Mathews;* they merely invoke the absence of a generalized information right.

The integrated APRA framework is relevant to the process: it creates authorized and trained grant-or-deny personnel, a designated records structure, and review of subordinate determinations. An unidentified determination may obscure whether it came from a subordinate, the chief administrator, an authorized custodian, private counsel, or another actor, and thereby complicate review and accountability.

Count IV should not be treated as an independent cause of action under the Declaratory Judgment Act. It seeks a declaration tethered to the underlying constitutional claims. *See 28 U.S.C. §§ 2201-02*. If the Court ultimately concludes that the requested declaration is broader than the surviving constitutional right, the remedy may be narrowed without dismissing the underlying claims.

**E. Count VII-access to courts.**

An access-to-courts claim requires a nonfrivolous underlying claim and actual or prospective impairment. *Christopher v. Harbury, 536 U.S. 403, 413-18 (2002).* The FAC alleges that anonymous determinations impaired Plaintiff's ability to identify proper defendants and witnesses, determine who exercised authority, obtain testimony concerning search efforts and legal reasoning, and frame meaningful administrative and judicial challenges. FAC ¶¶ 340-53.

**Defendants do not apply Harbury.** Their Houchins argument therefore does not resolve Count VII. If the Court requires greater specificity concerning the predicate claim or actual injury, that is a curable, count-specific issue.

## F. Count IX-substantive due process.

Substantive due process imposes a demanding conscience-shocking standard. *County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998); Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006)*. Defendants do not apply that standard to the alleged recurring and deliberate structure. Whether Count IX ultimately satisfies it is analytically separate from the survival of Counts II, III, VI, VIII, and X and cannot support complete dismissal.

### A. The standard is demanding but not insurmountable at the pleading stage

Substantive due process protects against executive action that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006). But *Lewis* itself instructs that "there is no calibrated yard stick" — conscience-shocking conduct is measured against "traditional executive behavior and contemporary practices," and deliberate indifference suffices where officials had "actual deliberation" and time for "unhurried judgments." 523 U.S. at 847–49, 851–53. The First Circuit has applied that deliberate-indifference formulation to egregious non-emergency misconduct. *Pagán*, 448 F.3d at 32; *see Hasenfus v. LaJeunesse*, 175 F.3d 68, 72–73 (1st Cir. 1999) (standard varies with context; deliberate indifference may shock the conscience outside split-second settings).

**B. The alleged structure — not any single act — is what shocks the conscience**

Defendants attack Count IX by isolating individual letters and demands and measuring each against the conscience-shocking standard. That framing ignores the gravamen of the FAC: a *recurring, deliberate, and maintained* structure of anonymous governmental determinations, continued after Plaintiff demanded attribution. FAC ¶¶ 376–86. This was not a hurried judgment or a one-off error. It was, as alleged, a considered institutional practice — precisely the setting where *Lewis*'s deliberate-indifference standard applies, 523 U.S. at 851–53, and where the First Circuit has found the conscience-shocking threshold satisfiable. *Pagán*, 448 F.3d at 32. Conduct undertaken with full opportunity for reflection, persisted in after its unlawfulness was flagged, and designed to insulate decision-makers from accountability presents a materially different question than the emergency scenarios Defendants' authorities address. Whether the totality of that structure shocks the conscience is a fact-intensive inquiry ill-suited to resolution on the pleadings. *See Lewis*, 523 U.S. at 850 ("rules of due process are not . . . subject to mechanical application").

**C. Count IX is analytically independent and cannot support complete dismissal**

Even if Count IX were ultimately to fail, its sufficiency is analytically separate from Counts II, III, VI, VIII, and X. Substantive due process is a residual protection: it applies only where no more specific constitutional guarantee governs the conduct. *Lewis*, 523 U.S. at 843; *Albright v. Oliver*, 510 U.S. 266,

273 (1994). The inverse is equally true — the viability of the specific-guarantee counts does not depend on Count IX, and Count IX's dismissal would not touch them. Defendants' motion therefore cannot yield complete dismissal on this basis; at most it addresses one count among several, each resting on distinct elements and distinct factual predicates.

## G. Count XI-information gathering and political expression.

Read as a whole, Count XI does not demand an unlimited affirmative constitutional right to every government record. It alleges that Defendants used information-handling practices to suppress or distort Plaintiff's ability to identify responsible officials, investigate governmental conduct, formulate informed criticism, and engage in political advocacy. FAC ¶¶ 387-96. To the extent the requested declaration is broader than controlling law, it may be narrowed or clarified without extinguishing the independently pleaded retaliation and petition claims.

### H. Count V-professional-conduct allegations.

Defendants reason that because APRA does not require a signature, counsel's conduct necessarily complied with the Rules of Professional Conduct. The conclusion does not follow: compliance with one statutory subsection does not categorically resolve truthfulness, supervision, joint action, or misuse of governmental authority.

Plaintiff does not seek a private damages action created solely by the professional-conduct rules. *See R.I. Sup. Ct. Rules, Art. V, Scope ¶ 20.* Count V should be construed as requesting ancillary recognition or referral, or as allegations relevant to counsel's role in the pleaded § 1983 joint action. If it should not be denominated as an

independent count, it may be treated as requested relief or dismissed without prejudice without affecting the constitutional claims.

**The determination must be traceable to the officer legally vested with authority.**

"The one who decides must hear." *Morgan v. United States*, 298 U.S. 468, 481 (1936). Where a statute vests discretion in a named official, an anonymous determination makes it impossible to verify the duty was exercised by that official or a valid delegate — the act is unreviewable for unlawful delegation and potentially *ultra vires*. The Appointments Clause cases reinforce the point: significant governmental authority may be exercised only by properly appointed officers, *Buckley v. Valeo*, 424 U.S. 1, 126 (1976); *Lucia v. SEC*, 138 S. Ct. 2044 (2018), and the Clause exists precisely "to preserve political accountability relative to important Government assignments." *Edmond v. United States*, 520 U.S. 651, 663 (1997); *accord United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021). Anonymity severs that chain of accountability by design.

**Unattributed determinations on government letterhead violate the duty of truthfulness.**

A determination on governmental letterhead carries an implied representation: that it is issued from the agency's authorized, identifiable officers. If it was in fact made by unnamed persons or concealed outside contractors, the letterhead is a material misrepresentation by omission. Model Rule 4.1 prohibits false statements of material fact, and Comment [2] confirms misrepresentation "can occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements." Rule 8.4(c) prohibits "conduct involving dishonesty, fraud, deceit or

misrepresentation"; Rule 8.4(d) prohibits conduct prejudicial to the administration of justice; Rule 1.2(d) bars assisting a client in conduct the lawyer knows is fraudulent. Government lawyers — and private lawyers wielding governmental power — bear a *heightened* duty: the government lawyer represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935); *cf. Brady v. Maryland*, 373 U.S. 83 (1963). A firm that lends its license to anonymous exercises of coercive power — concealing who decided and thereby foreclosing bias, delegation, and Appointments Clause challenges — engages in deceit under Rule 8.4(c).

**A law firm exercising governmental power acts under color of law.**

A private firm that issues governmental determinations performs a function delegated by the State and acts under color of law. *West v. Atkins*, 487 U.S. 42, 54–56 (1988) (private contractor vested with a core state function is a state actor); *Brentwood Acad. v. TSSAA*, 531 U.S. 288 (2001) (entwinement). It therefore assumes the constitutional obligations above — it cannot do anonymously what the agency itself could not.

**Due process requires an identifiable decision-maker.**

The Due Process Clause guarantees not merely a decision, but a decision by a fair tribunal — and fairness cannot be tested against an anonymous one. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927) (any procedure creating "a possible temptation" for the judge not to "hold the balance nice, clear and true" denies due process); *In re Murchison*, 349 U.S. 133, 136 (1955) ("justice must satisfy the appearance of justice"); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *Williams v. Pennsylvania*, 579

U.S. 1 (2016). Every recusal and bias right presupposes that a party can *identify* the decision-maker to investigate and challenge partiality. An unattributed determination renders *Caperton* and *Williams* a nullity — a party cannot move to recuse a ghost. Where the government adjudicates individual rights, *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970), guarantees an impartial decision-maker; that guarantee is unenforceable, and therefore illusory, if the decision-maker is unnamed.

## VIII. DEFENDANTS' BARE RESERVATION DOES NOT PRESENT A RULE 12(b)(2), (4), OR (5) MOTION

Defendants purport to reserve personal-jurisdiction and "insufficient service of process" defenses under Rules 12(b)(2) and 12(b)(4). Rule 12(b)(4) concerns insufficient process; Rule 12(b)(5) concerns insufficient service. The Motion provides no factual or legal development for those defenses. The Court therefore should not adjudicate them now, and a bare reservation cannot enlarge the consolidation and waiver rules in Rules 12(g)(2) and 12(h)(1).

## IX. ALTERNATIVELY, ANY CURABLE DEFICIENCY SHOULD BE ADDRESSED BY AMENDMENT, NOT DISMISSAL WITH PREJUDICE

Rule 15(a)(2) directs that leave be freely given when justice requires. F*oman v. Davis, 371 U.S. 178, 182 (1962)*. Civil-rights claims should not be extinguished because a pro se pleading imperfectly characterizes a legal theory when the facts may support relief. *Johnson, 574 U.S. at 11-12; Rodi, 389 F.3d at 20.*

If the Court finds additional facts necessary concerning comparators, authority and training, municipal delegation, private counsel's role, the Count VII predicate claim, the Count I protected interest, or the scope of requested declaratory relief, Plaintiff

requests that dismissal be without prejudice and that he be allowed a reasonable period to file a motion complying with DRI LR Cv 15, accompanied by a complete proposed amended pleading.

Plaintiff does not request an evidentiary hearing on this Rule 12(b)(6) motion. Plaintiff requests oral argument if the Court warrants, because the Motion seeks dismissal of eleven constitutional counts based principally upon a generalized-right-of-access theory that does not address the distinct retaliation, equal-protection, municipal-liability, and joint-action claims. Plaintiff estimates that 2 hours would be sufficient for oral argument.

**X. CONCLUSION:**

Defendants' central syllogism is incorrect. The absence of a generalized constitutional right to all government information does not create immunity for retaliation against citizens who request records, criticize officials, or petition for redress. Nor does the absence of an express signature mandate in § 38-2-7 make the identity and authority of the person exercising APRA decisional power irrelevant where Rhode Island law regulates authorized grant-or-deny personnel, requires their training and annual certification, establishes a designated records structure and review hierarchy, and prohibits purpose-based withholding.

**Plaintiff therefore requests that the Court:**

(1) DENY Defendants' Motion to Dismiss;

(2) specifically deny dismissal of Counts II, III, VI, VIII, and X;

(3) construe Counts IV, V, and XI consistently with the underlying constitutional claims and requested relief;

(4) address any perceived deficiency in Counts I, VII, or IX separately rather than dismissing the entire action under Houchins;

(5) decline to adjudicate undeveloped Rule 12(b)(2), (4), or (5) defenses; and

(6) alternatively, dismiss no potentially curable claim with prejudice without allowing Plaintiff to seek amendment in compliance with DRI LR Cv 15.

Respectfully submitted,

/s/

MICHAEL ERIC NELSON, Plaintiff, Pro Se       5 August, 2026

33 Hartford Avenue

South Kingstown, Rhode Island 02879

Tel.: 702-932-3434

**CERTIFICATE OF SERVICE**

I certify that on 5 August, 2026, I served a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendants' Motion to Dismiss upon all counsel of record by method required by the Federal Rules of Civil Procedure and the Local Rules of this Court, via presentment to the Clerk of the Court for docketing and electronic service of the same.

/s/ Michael Eric Nelson