**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

**MICHAEL ERIC NELSON,**
Plaintiff,

v. No. **1:26-cv-00352-MRD-AEM**

**URSILLO, TEITZ & RITCH, LTD.;**
**MICHAEL A. URSILLO;**
**ANDREW M. TEITZ;**
**SCOTT A. RITCH;**
**ADAM J. SHOLES;**
**TOWN OF SOUTH KINGSTOWN; and**
**JANE AND JOHN DOES 1–27,**

Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT AND REQUEST THAT DEFENDANTS' UNTIMELY OBJECTION [docket # 35] BE DISREGARDED PER THE RULES OF PROCEDURE**

Plaintiff Michael Eric Nelson, appearing pro se, respectfully submits this Reply in further support of his Motion for Leave to File Supplemental Complaint pursuant to Fed. R. Civ. P. 15(d), and in response to Defendants' untimely Objection filed August 17, 2026.

## I. THRESHOLD PROCEDURAL OBJECTION: DEFENDANTS' RESPONSE WAS DUE AUGUST 14, 2026, BUT WAS NOT FILED UNTIL AUGUST 17, 2026

Before reaching the substantive deficiencies in Defendants' Opposition, the Court should first address a dispositive procedural defect: **Defendants did not timely oppose Plaintiff's Motion.**

The Court's CM/ECF docket expressly reflected that Defendants' response to Plaintiff's Motion for Leave to File Supplemental Complaint was due **August 14, 2026**.

Defendants did not file their Objection and supporting Memorandum until **August 17, 2026—three days after the response deadline had expired.**

Defendants' own filing confirms the August 17, 2026 filing date.

District of Rhode Island Local Rule Cv 7(a)(3) provides:

> *"The response must be filed within 14 days after service of the motion unless the Court shortens or extends the time."*

DRI LR Cv 7(a)(3) (emphasis added).

The Rule does not provide that a responding party may simply disregard the established deadline and file whenever convenient. If a response is to be filed, the Local Rule expressly requires that it **"must"** be filed within the prescribed period unless the Court has shortened or extended that time.

Likewise, Federal Rule of Civil Procedure 6(b)(1) establishes the mechanism for obtaining additional time. Before expiration of a deadline, the Court may extend time for good cause under Rule 6(b)(1)(A). After expiration, however, Rule 6(b)(1)(B) provides that the Court may extend the time only:

> "on motion made after the time has expired if the party failed to act because of excusable neglect."

Fed. R. Civ. P. 6(b)(1)(B).

Defendants' August 17 filing does not identify any Court order extending the August 14 deadline. Their Objection does not request enlargement of the expired deadline under Rule 6(b)(1)(B), does not acknowledge its untimeliness, and does not attempt to establish excusable neglect.

The issue is especially consequential here because Defendants devote part of their Opposition to criticizing Plaintiff for allegedly burdening the Court through motion practice and invoke principles of orderly litigation administration. Defendants should not simultaneously ask the Court to impose exacting procedural discipline upon a pro se Plaintiff while disregarding a specific filing deadline applicable to their own Opposition.

Plaintiff does not contend that the three-day delay divests this Court of jurisdiction or otherwise circumscribes the Court's inherent and considerable discretion in administering its docket. Rather, Plaintiff respectfully submits that the Local Rules should be applied consistently, impartially, and evenhandedly to all litigants, and that a represented party should not receive the substantive or procedural benefit of an untimely opposition absent either a timely request for an extension or a particularized showing of the "excusable neglect" expressly contemplated by Federal Rule of Civil Procedure 6(b)(1)(B). That consideration is especially compelling here, where Defendants are collectively represented by three licensed attorneys on behalf of a municipality, four individual Defendants who are themselves experienced attorneys, and a law firm that affirmatively holds itself out as possessing specialized expertise in the representation of governmental entities, while Plaintiff proceeds alone, pro se, without formal legal education or professional legal training. Under these markedly asymmetric circumstances, faithful and evenhanded enforcement of applicable filing deadlines is not

merely technical; it is essential to the orderly, equitable, and procedurally fair administration of this litigation.

Accordingly, Plaintiff respectfully requests that the Court **decline to consider and disregard Defendants' August 17, 2026 Objection as untimely**.

If the Court nevertheless elects, in its discretion, to consider the late-filed Opposition, Plaintiff respectfully requests that the Court do so without treating Defendants' untimeliness as excused and reject the Opposition on the merits for the independent reasons set forth below.

<u>Thus, the Court may resolve the present matter on either of two independent grounds:</u>

1. **Procedurally:** Defendants failed to file their Opposition by the August 14, 2026 deadline and have identified no extension or showing of excusable neglect; or
2. **Substantively:** Even if considered notwithstanding its untimeliness, Defendants' Opposition misconstrues Rule 15(d), mischaracterizes Plaintiff's proposed supplementation, improperly isolates related events from their pleaded context, and fails to demonstrate futility, undue prejudice, or any other sufficient reason to deny supplementation.

## II. EVEN IF THE COURT CONSIDERS THE UNTIMELY OBJECTION, IT SHOULD BE OVERRULED

<u>Defendants' substantive Opposition rests principally upon four propositions:</u>

1. that Rule 15(d) cannot encompass Plaintiff's proposed allegations;

2. that the Supplemental Complaint is excessively detailed under Rule 8;
3. that supplementation would be futile because APRA itself does not create the federal constitutional rights Defendants attribute to Plaintiff's theory; and
4. that the alleged post-filing conduct is *de minimis* and therefore incapable of supporting a First Amendment retaliation claim.

**Each contention materially misconstrues the proposed Supplemental Complaint.**

Defendants repeatedly reduce the supplementation to an allegation that Plaintiff was called "Ms." and that the Town changed "letterhead" on a closed APRA response file.

That characterization improperly removes the alleged events from their chronology and litigation context.

Plaintiff does not contend that an isolated typographical mistake, standing alone and divorced from context, necessarily creates federal liability.

Plaintiff instead alleges post-filing events arising from the **same ongoing controversy**, involving the same parties, the same governmental APRA process, the same OpenGov and correspondence systems, the same questions concerning anonymous or unattributed governmental decision-making, the same protected petitioning and criticism of governmental practices, and the same alleged retaliatory course of conduct already before this Court.

The supplemental allegations also concern the creation, modification, provenance, and post-filing governmental use of an APRA-1280 document already materially implicated in this litigation.

Rule 15(d) exists precisely so that federal litigation need not remain artificially frozen as of the date of the operative complaint when materially related events thereafter occur.

## III. THE CONTROLLING FIRST CIRCUIT STANDARD UNDER *GADBOIS* STRONGLY FAVORS CONSIDERATION OF RELATED POST-FILING EVENTS

The controlling First Circuit authority is *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015).

Rule 15(d) authorizes supplementation concerning:

> "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Fed. R. Civ. P. 15(d).

In *Gadbois*, the First Circuit explained that Rule 15(d) advances the central objective of the Federal Rules by permitting pleadings to facilitate the orderly and fair administration of justice and by promoting as complete an adjudication of the parties' dispute as possible. 809 F.3d at 4–7.

The First Circuit specifically recognized that, although later-accruing matters sometimes could be brought through a separate action, supplementation frequently provides a **more efficient mechanism** for litigating them. Id. at 4–5.

The Court further emphasized that supplementation should ordinarily be approached liberally; that the trial court considers the totality of the circumstances; and that the analysis is necessarily contextual. Id. at 6–7.

Thus, *Gadbois* does not adopt Defendants' rigid conception that the existence of substantial post-filing factual allegations somehow transforms the case into a prohibited "moving target."

The relevant questions include whether the later events are related to the pending controversy, whether supplementation promotes judicial economy, whether there has been unreasonable delay, whether supplementation causes unfair prejudice, and whether the allegations are futile.

**Here, each consideration supports supplementation.**

The post-filing events:

- involve the same Plaintiff;
- involve the same Town Defendant and existing individual Defendants;
- involve the same governmental records process;
- involve the same OpenGov system and related records;
- involve the same challenged governmental correspondence practices;
- involve the same questions of authorship, attribution, approval, and governmental responsibility;
- arise during the same ongoing controversy;
- allegedly occurred while Plaintiff continued protected speech and petitioning;
- implicate overlapping discovery, witnesses, metadata, electronic records, municipal policies, and governmental actors; and
- bear directly upon Plaintiff's allegations of continuing retaliation, municipal practice, governmental knowledge, ratification, and prospective relief.

Requiring Plaintiff to commence another federal action concerning these same events would multiply pleadings, filing fees, discovery, motion practice, judicial labor, and the **risk of inconsistent rulings.**

That is the very inefficiency Rule 15(d) is designed to avoid.

## IV. *VIDOT* PROVIDES PARTICULARLY PERSUASIVE DISTRICT OF RHODE ISLAND AUTHORITY AND DIRECTLY DISTINGUISHES DEFENDANTS' RELIANCE ON *LETOURNEAU*

Defendants rely upon *Letourneau v. Rhode Island Department of Corrections*, No. 22-285-JJM, 2024 WL 4002814 (D.R.I. Aug. 30, 2024), adopted, 2024 WL 4279336 (D.R.I. Sept. 24, 2024).

That authority does not establish the categorical rule Defendants suggest.

In *Vidot v. Rhode Island Department of Corrections*, C.A. No. 22-305-JJM-PAS, ECF No. 47 (D.R.I. Sept. 23, 2024), the District of Rhode Island considered a Rule 15(d) request under essentially the same authorities Defendants invoke here, including *Gadbois*, *Negron*, *Lath*, and *Letourneau*.

The Court recommended permitting supplementation because the later-occurring incident was sufficiently related to the issues already in suit and supplementation was directed against **already-joined defendants**.

The Court expressly distinguished *Letourneau*. The critical distinction was that the proposed pleading in *Vidot* remained focused upon the same issues already in litigation

and did not seek to introduce mostly new defendants and materially different disciplinary claims.

**That distinction substantially favors Plaintiff here.**

Plaintiff does not seek to append a geographically remote occurrence, an unrelated governmental agency, an unrelated series of actors, or a new controversy having nothing to do with the operative pleading.

The supplementation concerns the **same Plaintiff, same Defendants, same municipal processes, same documents and systems, and same allegedly continuing constitutional controversy**.

Indeed, the reasoning of *Vidot* is especially instructive because the Court evaluated the supplemental event **together with the existing pleading rather than artificially isolating it**.

That is precisely what Defendants ask this Court not to do here.

Defendants isolate each post-filing occurrence, label each one insignificant standing alone, and then argue that the aggregate course of conduct cannot be considered.

Rule 15(d), *Gadbois*, and *Vidot* **support the opposite approach.**

## V. DEFENDANTS' RELIANCE UPON *NEGRON* AND *LATH* DOES NOT DEFEAT SUPPLEMENTATION

Plaintiff does not dispute that Rule 15(d) is not an unlimited license to continuously append unrelated controversies to an existing case.

*Negron v. Turco*, 253 F. Supp. 3d 361 (D. Mass. 2017), cautions against converting litigation into an indefinite “moving target.”

*Lath v. Oak Brook Condominium Owners’ Association*, No. 16-cv-463-LM, 2017 WL 2986334 (D.N.H. July 13, 2017), likewise addresses attempts to add separate and distinct matters.

But those principles do not control where later-occurring events are materially connected to the existing dispute.

The proposed supplementation here does not present unrelated parties and unrelated claims. It alleges that the very governmental practices and controversies already challenged in the operative pleading **continued and developed after the pleading was filed**.

Nor does the existence of Plaintiff’s other motions establish abusive supplementation.

Defendants’ footnote points to motions concerning summonses, service, discovery, and other procedural matters. Those filings arose from the procedural administration of this same case. Their existence says nothing about whether the later-occurring factual events alleged in the proposed Supplemental Complaint satisfy Rule 15(d).

Ironically, Defendants rely upon docket-management concerns while their own present Opposition was filed after the Court’s August 14, 2026 deadline, violating the rules.

The appropriate Rule 15(d) inquiry remains whether this particular supplementation promotes fair, economical, and **complete adjudication of a related controversy.**

**It does.**

## VI. THE EXISTENCE OF SIMILAR PRE-FILING CONDUCT DOES NOT REMOVE DISTINCT POST-FILING EVENTS FROM RULE 15(d)

Defendants argue that because some allegedly inaccurate references to Plaintiff as "Ms. Nelson" occurred before the operative pleading, later occurrences somehow cease to qualify under Rule 15(d).

That argument conflates **historical context** with the **date of the supplemental event**.

Plaintiff does not ask the Court to transform a pre-June 29 event into a post-June 29 event.

Plaintiff alleges distinct governmental responses to specific APRA file numbers, issued **after** the operative pleading.

Rule 15(d) is temporal. A communication issued after the pleading does not cease being a post-pleading event merely because similar conduct occurred before the pleading.

Earlier events may provide relevant context concerning:

- notice;
- knowledge;
- continuity;

- origin;
- intent;
- motive;
- municipal practice;
- deliberate indifference;
- ratification; and
- whether later conduct **was isolated or recurring.**

But <u>the earlier event does not erase the later event.</u>

Indeed, where a plaintiff alleges a continuing course of conduct, the existence of similar pre-filing and post-filing events may make supplementation **more**, not less, useful in determining whether the complained-of conduct was truly isolated.

The same principle applies with even greater force to APRA-1280. Defendants acknowledge that Plaintiff challenges a later version of an APRA response that was uploaded after the commencement and service of this litigation, & uploaded with a facial date over a 100 days in the arrears (backdating), all done into a **closed APRA file**.

Whatever Defendants ultimately contend was the explanation for that occurrence, the alleged later modification and upload <u>constitute distinct post-filing factual events.</u>

## VII. DEFENDANTS' RULE 8 ARGUMENT DOES NOT JUSTIFY EXCLUDING MATERIAL POST-FILING FACTS

Defendants emphasize the number of pages and paragraphs contained in Plaintiff's First Amended Complaint and proposed Supplemental Complaint.

Plaintiff recognizes the Court’s legitimate interest in concise pleadings and orderly case management, even as a non legally educated layman.

But Rule 8 is fundamentally concerned with notice.

Defendants’ own detailed Opposition demonstrates that they understand what Plaintiff alleges.

They identify:

- the post-filing governmental correspondence;
- the repeated “Ms.” designation (misgendering *R.I. Gen. Laws § 11-24-2*);
- the APRA-1280 document;
- the **alteration in governmental letterhead**;
- the later OpenGov upload;
- the **retaliation** theory;
- the **equal-protection** theory;
- the **access-to-courts** theory; and
- Plaintiff’s contention that the post-filing events constitute **part of an ongoing governmental course of conduct.**

Defendants therefore cannot plausibly contend that they lack notice of the factual basis of the proposed supplementation.

Moreover, this litigation involves matters for which factual detail has particular importance, including:

- unidentified governmental decisionmakers;
- document provenance;
- electronic metadata;
- municipal correspondence systems;
- governmental approval and review;
- municipal policy and custom;
- retaliatory motive;
- causation;
- chronology; and
- Doe Defendants whose identities may depend upon discovery, especially given the purposeful refusal to attribute or sign any official correspondence, instead issuing governmental decisions anonymously, **to prevent judicial review.**

Detailed pleading is not automatically defective merely because Defendants would prefer fewer allegations.

Nevertheless, Plaintiff offers a straightforward alternative that eliminates any genuine Rule 8 concern.

If this Court determines that the proposed Supplemental Complaint contains unnecessary detail, Plaintiff respectfully requests that the Court identify such and **grant leave to supplement but direct Plaintiff to file a shortened Supplemental Complaint limited to material post-June 29, 2026 facts**.

That would address any concern regarding length without imposing the disproportionate remedy of excluding materially related post-filing events altogether, mandating separate instant Federal litigation, clearly not in conformity with FRCP Rule 1.

Rule 15(d) expressly permits supplementation “on just terms.” A narrowing directive is therefore far more consistent with the Rule than wholesale denial.

## VIII. DEFENDANTS’ FUTILITY ARGUMENT ATTACKS A CONSTITUTIONAL THEORY PLAINTIFF DOES NOT ADVANCE

Defendants repeatedly argue that there is no freestanding federal constitutional right to receive records under Rhode Island APRA and no federal constitutional entitlement to have every APRA official governmental determination identify its individual author.

That argument does not dispose of **Plaintiff’s retaliation theory**.

Plaintiff does not contend that APRA itself transforms every disagreement over a public-record request into a federal constitutional violation.

Plaintiff’s protected activity is broader and constitutionally independent.

<u>Among other things, Plaintiff alleges that he:</u>

- criticized municipal practices;
- sought governmental transparency and accountability;
- petitioned governmental officials;
- pursued administrative remedies;
- advocated regarding public-safety matters;

- sought records relating to matters of public concern;
- challenged governmental practices through lawful channels; and
- commenced and prosecuted this federal civil-rights action.

The First Amendment protects speech and petitioning directed toward governmental conduct.

The constitutional question in retaliation litigation is therefore not whether APRA itself creates the underlying federal right Defendants identify.

The proper inquiry is whether Plaintiff engaged in constitutionally protected activity and thereafter suffered governmental action sufficiently adverse to deter a reasonably hardy person, with the protected conduct serving as a substantial or motivating factor in that treatment.

<u>Defendants' own authority recognizes those elements.</u>

Thus, Defendants attack a **strawman.**

Defendants' resort to a rudimentary **strawman argument** is particularly conspicuous in this posture. Rather than confront the proposition Plaintiff actually advances, Defendants manufacture an exaggerated, materially altered version of that proposition and then <u>proceed to dismantle their own invention</u>. Such advocacy is not sophisticated rebuttal; it is elementary misdirection. Indeed, the tactic is so doctrinally basic that its deployment by a multitude of seasoned counsel invites the inference that counsel is **feigning analytical simplicity** in the hope that a legally undereducated *pro se* litigant will either fail to recognize the distortion or lack the technical vocabulary necessary to

expose it. Plaintiff respectfully submits that experienced attorneys should not obtain an advocacy advantage by reducing the dispute to a caricature of a self-represented party's argument and then triumphantly **answering a contention that was never made**. The Court should therefore evaluate Plaintiff's actual position, not the convenient surrogate Defendants have constructed and accord no persuasive weight to an argument whose force depends upon first mischaracterizing the adversary's premise. The adversarial process is designed to test competing legal propositions on their merits; it should not reward a multitude of attorneys from multiple firms acting as sophisticated counsel for deploying a freshman-level logical fallacy against a litigant whose lack of formal legal education makes precision in identifying such rhetorical sleight of hand more difficult, but does not make the underlying distortion any less apparent.

Plaintiff's federal retaliation theory is NOT:

"APRA gives Plaintiff a federal constitutional right to a particular record."

**It is:**

**"Government actors may not retaliate against Plaintiff because he exercises independently protected First Amendment rights, including speech, criticism, petitioning, public advocacy, administrative challenge, and resort to the courts."**

Those are materially different propositions.

## IX. AN ALLEGED RETALIATORY ACT NEED NOT ITSELF BE AN INDEPENDENT CONSTITUTIONAL VIOLATION

Defendants’ futility argument also improperly assumes that each alleged adverse act must independently violate the Constitution.

**That is NOT the nature of First Amendment retaliation.**

The Constitution prohibits government officials from imposing materially adverse treatment because a person engaged in protected First Amendment activity.

The adverse action is evaluated for its deterrent or chilling character and its causal connection to protected activity.

Thus, the proper inquiry is not:

Was the word “Ms.” standing alone independently unconstitutional?

Nor is it:

Would changing a document heading, for a wholly innocent reason and outside any retaliatory context, itself violate the Constitution?

Instead, the question is whether the alleged conduct, viewed objectively and in the factual context pleaded, forms part of governmental treatment that would deter a person of ordinary firmness from continuing to exercise protected rights.

Defendants attempt to answer a retaliation claim by proving that the component act might be lawful when performed for an innocent reason.

That misses the constitutional issue.

**Motive, context, timing, cumulative effect, and causation matter.**

## X. DEFENDANTS' "DE MINIMIS" ARGUMENT IMPROPERLY DISASSEMBLES THE ALLEGED COURSE OF CONDUCT INTO ISOLATED PARTS

Defendants argue that an erroneous salutation and a change to governmental letterhead are too trivial to constitute adverse action.

Again, that argument depends upon stripping the allegations of their context.

The First Circuit has specifically recognized that a campaign of informal harassment may support a First Amendment retaliation claim and that even relatively minor events can become actionable where their cumulative effect would deter a reasonably hardy person from exercising First Amendment rights. See *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011); *Salmon v. Lang*, No. 21-1104 (1st Cir. Dec. 16, 2022).

Plaintiff therefore does not ask the Court to determine whether **one isolated erroneous salutation** establishes § 1983 liability.

The allegations concern the aggregate context, including:

- repeated use of the same inaccurate gendered designation;
- numerous governmental communications;
- repetition across separate (multiple) APRA matters;
- the timing of the conduct;
- continuing controversy between Plaintiff and the Town;
- alleged governmental knowledge of Plaintiff's protected activity;
- continuing anonymous or unattributed official governmental determinations;
- alleged burdens associated with Plaintiff's public-record and petitioning activities;

- **litigation already pending between the parties**;
- the APRA-1280 document and subsequent OpenGov events; and
- continued conduct after Plaintiff invoked formal judicial remedies.

The allegation is not that a typographical error equals a constitutional tort.

The allegation is that repeated governmental conduct must be assessed **cumulatively and contextually** in determining retaliatory motive, causation, adverse treatment, municipal knowledge, and the existence of a continuing controversy.

Whether the inaccurate designation resulted from:

- an accidental requester-profile entry;
- an automated template;
- negligence;
- repeated manual entry;
- deliberate indifference;
- a shared administrative workflow;
- a knowingly retained inaccurate record;
- purposeful humiliation; or
- retaliatory intent

**presents a factual question.**

<u>The same is true of the APRA-1280 document.</u>

At the pleading stage, Defendants cannot resolve disputed questions of authorship, motive, document provenance, metadata, system configuration, knowledge, and causation simply by labeling the resulting conduct “de minimis.”

## XI. THE APRA-1280 ISSUE IS NOT MERELY A DISPUTE ABOUT WHETHER THE WORDS OF THE DENIAL CHANGED

Defendants argue that the later APRA-1280 document did not materially change the substantive wording of the Town’s APRA denial and merely omitted Municipal Court letterhead.

<u>That argument materially understates the allegation.</u>

The issue is not confined to whether the substantive paragraphs denying the request changed.

Plaintiff alleges that a governmental document already materially implicated in this federal litigation existed in one form in a <u>CLOSED</u> APRA File and that another version was subsequently placed into the Town’s OpenGov system AFTERlitigation commenced and AFTER service upon a Defendant associated with the Municipal Court.

The relevant factual questions therefore include:

- when the later PDF was created;
- when it was modified;
- what software created or exported it;
- who created it;
- who modified it;

- whether it was derived from the earlier version;
- why Municipal Court identification was removed;
- why a closed governmental file was manipulated after commencement of federal litigation;
- when it was transmitted;
- when it was uploaded;
- who authorized the upload;
- who accessed the underlying files;
- whether any metadata was altered or lost;
- whether litigation or service was known to the persons involved;
- whether communications preceded or followed the modification;
- whether the earlier and later documents were retained; and
- whether the change bears upon authorship, attribution, governmental participation, apparent authority, or the underlying allegations.

Those are not questions resolved by Defendants' assertion that the substantive APRA language remained the same.

A document's heading, origin, governmental identity, provenance, revision history, and metadata may have evidentiary significance even if its body text remains substantially unchanged.

That is especially true where the earlier document's association with Municipal Court authority is already relevant to the pending controversy.

Plaintiff does not ask the Court, at the Rule 15(d) stage, to determine that the modification was improper, or illegal, or a custom or practice of the municipality altering closed governmental files after commencement of federal litigation concerning the very file that was manipulated (facially backdated).

Plaintiff asks the Court to permit supplementation so the materially related post-filing occurrence can be adjudicated on an evidentiary record rather than excluded before discovery, causing separate instant Federal action.

**XII. THE SUPPLEMENTAL EVENTS ARE RELEVANT TO MUNICIPAL LIABILITY, KNOWLEDGE, RATIFICATION, AND PROSPECTIVE RELIEF**

The post-filing events have significance beyond whether any single communication independently satisfies every element of a federal cause of action.

Plaintiff alleges municipal liability.

A recurring course of substantially similar governmental correspondence may bear upon whether the conduct resulted from:

- a shared municipal template;
- an OpenGov requester profile;
- an electronic workflow;
- a common approval process;
- municipal policy or custom;
- inadequate training or supervision;
- deliberate indifference;
- policymaker knowledge; or
- ratification.

The continuation of allegedly challenged practices after litigation commenced may also bear upon notice and whether the conduct was genuinely isolated.

Likewise, post-filing occurrences are directly relevant to Plaintiff's request for prospective relief.

If allegedly challenged governmental practices continued after the action commenced, that circumstance may bear upon whether there remains a live controversy and whether prospective declaratory or injunctive relief is appropriate.

Rule 15(d) allows the Court to adjudicate the controversy based upon current facts rather than artificially limiting the record to the state of affairs existing on the day the First Amended Complaint was filed.

**XIII. DEFENDANTS HAVE NOT SHOWN UNDUE PREJUDICE**

Defendants identify no cognizable prejudice sufficient to justify denial under Rule 15(d).

The proposed supplementation does not require Defendants to investigate an unrelated accident, retain experts in an unrelated discipline, defend conduct occurring in another jurisdiction, or locate previously unknown parties to an entirely separate controversy.

The relevant evidence principally consists of governmental materials and information already within or accessible to Defendants, including:

- Town correspondence;
- OpenGov records;
- governmental emails;
- requester-profile information;
- PDF files;
- metadata;
- document histories;

- templates;
- review and approval records;
- litigation communications;
- records-retention information; and
- testimony from governmental employees, attorneys, agents, contractors, or officials associated with those processes.

Much of this discovery substantially overlaps with discovery already relevant to Plaintiff's existing allegations.

The case remains in its early stages.

There has been no trial.

There has been no completed discovery process that supplementation would require reopening.

There is no imminent trial date that supplementation would disrupt.

The post-filing facts necessarily could not have been included in the operative pleading before they occurred.

Plaintiff thereafter sought supplementation.

The inconvenience of having to respond to related allegations is not the unfair prejudice contemplated by Rule 15.

**XIV. JUDICIAL ECONOMY STRONGLY FAVORS ONE ACTION RATHER THAN TWO PARALLEL FEDERAL CASES**

If supplementation is denied solely because the relevant events occurred after June 29, Plaintiff would face the anomalous possibility of litigating materially overlapping controversies through separate federal lawsuits.

<u>Two cases could then require discovery concerning:</u>

- the same Town;
- the same attorneys and officials;
- the same OpenGov platform;
- the same APRA practices;
- the same governmental records;
- the same electronic metadata;
- the same authorship questions;
- the same correspondence templates;
- the same chronology of protected conduct;
- the same retaliation allegations;
- the same municipal policies;
- and overlapping requests for declaratory or prospective relief.

That would impose substantially greater burdens upon both the parties **and the Judiciary.**

It could also produce inconsistent determinations regarding the same course of governmental conduct.

*Gadbois* specifically recognizes Rule 15(d) as a mechanism for avoiding that pointless procedural fragmentation.

**This case presents precisely that circumstance.**

## XV. IF THE COURT FINDS ANY PARTICULAR PORTION DEFICIENT, THE PROPER REMEDY IS NARROWING—not WHOLESALE DENIAL

Even assuming; arguendo that the Court agrees with Defendants that some particular paragraph, constitutional theory, requested remedy, or historical allegation should be narrowed, that does not establish that the entire Supplemental Complaint is futile.

Rule 15(d) authorizes supplementation **"on just terms."**

The Court therefore possesses ample authority to permit Plaintiff to file a revised or streamlined supplement confined to:

1. material events occurring after June 29, 2026;
2. the continuing governmental correspondence practices;
3. materially related post-filing retaliatory allegations;
4. the APRA-1280 modification, provenance, and OpenGov-upload allegations;
5. facts relevant to municipal policy, custom, knowledge, and ratification;
6. facts relevant to ongoing or prospective relief; and
7. allegations supporting claims already asserted in the operative pleading.

That alternative would fully address any legitimate Rule 8 concern while preserving the substantial judicial-economy interests underlying Rule 15(d).

Wholesale denial would be unnecessarily severe where a more narrowly tailored remedy is readily available.

## XVI. DEFENDANTS' UNTIMELY FILING FURTHER UNDERCUTS THEIR CASE-MANAGEMENT ARGUMENT

Defendants repeatedly characterize Plaintiff's litigation activity as burdensome and invoke principles of orderly case administration.

**But orderly administration is a reciprocal obligation.**

Plaintiff's motion was subject to an established response deadline.

The docket reflected **August 14, 2026**.

Defendants (four attorneys and a municipal law firm) are represented by numerous experienced counsel from multiple firms and three experienced attorneys have made an appearance of one nature or another.

Yet this skilled legal assembly did not file until **August 17, 2026**.

The well-resourced and highly experienced collection of legally educated licensed attorneys as adversarial opposition identifies no pre-deadline request for additional time, no order extending the deadline, and no post-deadline motion establishing excusable neglect.

The Court therefore should be cautious about accepting Defendants' invocation of procedural efficiency as a basis for denying Plaintiff substantive access to Rule 15(d) while excusing their own failure to comply with the procedural timetable governing the very objection before the Court.

Plaintiff does not raise this discrepancy merely rhetorically.

Uniform application of filing deadlines is integral to orderly case management and particularly important where one party is pro se and the opposing parties are represented by multiple attorneys.

The Local Rules should operate evenhandedly.

**XVII. CONCLUSION**

Defendants' Objection should not prevent supplementation for **two independent and independently sufficient reasons**.

**First,** the <u>Objection was untimely.</u>

The Court's docket established **August 14, 2026** as the response deadline. Defendants did not file until **August 17, 2026**. DRI LR Cv 7(a)(3) provides that a response **must** be filed within fourteen days unless the Court shortens or extends the deadline. Defendants identify no order extending their deadline, and their Opposition contains neither a motion under Fed. R. Civ. P. 6(b)(1)(B) nor a showing that their failure to act resulted from excusable neglect.

The Court therefore has ample procedural basis to decline to consider the late-filed Opposition.

**Second,** even if the Court elects to reach the merits, Defendants have not established a proper basis for denying supplementation.

Their Opposition repeatedly reduces a pleaded continuing course of governmental conduct to isolated fragments, characterizes those fragments in the light most favorable

to Defendants, and then argues that the fragments individually lack constitutional significance.

**That is not the Rule 15(d) inquiry.**

The First Circuit in *Gadbois* directs a contextual examination of the totality of circumstances and recognizes supplementation as an important mechanism for complete, economical adjudication of later-occurring events.

The District of Rhode Island’s reasoning in *Vidot* is particularly persuasive. Supplementation is materially appropriate where later events concern the same issues already in litigation and the same already-joined defendants, while *Letourneau* involved materially different circumstances centered upon different conduct and mostly new defendants.

This case falls on the *Vidot* side of that distinction.

Plaintiff’s proposed supplementation concerns the same Plaintiff, same Defendants, same municipality, same APRA process, same OpenGov environment, same governmental correspondence practices, same underlying records, same disputed governmental actors, same course of protected speech and petitioning, and substantially overlapping constitutional and municipal-liability questions.

The proposed supplementation also contains post-filing allegations concerning APRA-1280 that cannot properly be reduced to the proposition that “the substantive denial did not change.” The timing, provenance, creation, modification, export, governmental identity, upload, access history, and metadata of a document already

implicated in this litigation present factual and evidentiary questions that should not be resolved through Defendants' characterization of the evidence before discovery occurs.

Likewise, Defendants' *de minimis* argument improperly isolates each alleged incident. *Barton* and *Salmon* recognize that a series or campaign of relatively minor retaliatory acts may be evaluated collectively where the overall conduct would deter a reasonably hardy person from exercising First Amendment rights.

Plaintiff does not ask this Court to declare that every inaccurate salutation is a constitutional tort, despite Rhode Island law protecting gender identity.

Plaintiff asks the Court to permit materially related post-filing events to be considered **in context**, together with the continuing controversy to which they allegedly belong.

Finally, Defendants have demonstrated no unfair prejudice. The relevant evidence substantially overlaps with evidence already implicated in this litigation and principally concerns governmental records, systems, communications, metadata, employees, attorneys, and officials already within the orbit of this case.

Requiring a second lawsuit concerning these same events would increase rather than reduce burdens upon the parties and the Court.

<u>**WHEREFORE, Plaintiff respectfully requests that this Court:**</u>

**A. DECLINE TO CONSIDER and DISREGARD Defendants' Objection and supporting Memorandum filed August 17, 2026 as untimely, because the response deadline reflected on the Court's docket expired August 14, 2026, and Defendants identify no extension of that deadline or showing of excusable neglect under Fed. R. Civ. P. 6(b)(1)(B);**

**B. DETERMINE that Defendants' failure to timely respond does not provide a substantive basis for withholding relief requested in Plaintiff's timely Motion for Leave to File Supplemental Complaint;**

**C. ALTERNATIVELY, if the Court elects to consider Defendants' untimely Objection in the exercise of its discretion, OVERRULE and DENY the Objection on its merits;**

**D. GRANT Plaintiff's Motion for Leave to File Supplemental Complaint pursuant to Fed. R. Civ. P. 15(d);**

**E. DIRECT the Clerk to docket Plaintiff's proposed Supplemental Complaint and permit it to be adjudicated together with the operative First Amended Complaint;**

**F. FIND that the materially related events occurring after June 29, 2026 are properly susceptible to supplementation because they involve the same continuing controversy, substantially overlapping parties, evidence, governmental processes, municipal-liability issues, and constitutional theories already before the Court;**

**G. REJECT Defendants' contention that the existence of factually related pre-filing conduct prevents distinct post-filing occurrences from being pleaded pursuant to Rule 15(d);**

**H. REJECT Defendants' attempt to determine futility by treating Plaintiff's claims as though they depend upon a freestanding federal constitutional entitlement to APRA records, rather than upon alleged retaliation for independently protected First Amendment speech, petitioning, criticism, advocacy, and resort to judicial process;**

**I. REJECT Defendants' attempt to isolate each alleged post-filing occurrence from the alleged cumulative course of conduct when evaluating material adversity, retaliatory motive, municipal knowledge, causation, and the continued need for prospective relief;**

**J. PERMIT the parties to develop through ordinary discovery the material facts concerning the creation, modification, export, provenance, transmission, access, preservation, and OpenGov upload history of the APRA-1280 document and related governmental records, subject to the Federal Rules and any discovery orders of this Court;**

**K. ALTERNATIVELY, if the Court determines that the proposed Supplemental Complaint contains unnecessary detail or that any discrete theory or requested**

**remedy requires narrowing, GRANT Plaintiff leave to file a streamlined Supplemental Complaint limited to materially related post-June 29, 2026 events rather than deny supplementation in its entirety;**

**L. CONSTRUE Plaintiff's pro se submissions liberally while applying the Federal Rules and Local Rules evenhandedly to all parties; and**

**M. GRANT such further relief as the Court deems just, equitable, and necessary for the orderly and complete adjudication of this controversy.**

For these reasons, Defendants' untimely Objection should be **disregarded procedurally or, alternatively, overruled substantively**, and Plaintiff's Motion for Leave to File Supplemental Complaint should be **GRANTED**.

Respectfully submitted,

/s/

**MICHAEL ERIC NELSON**
Plaintiff, Pro Se

33 Hartford Avenue
South Kingstown, Rhode Island 02879
Tel.: 702-932-3434
nelsontelco@gmail.com

Dated: August 19, 2026

---

**CERTIFICATE OF SERVICE**

I certify that on **19 August 2026**, I served a true and correct copy of the foregoing **Plaintiff's Reply in Support of Motion for Leave to File Limited Surreply and Response to Defendants' August 17, 2026 Objection** upon all counsel of record by the method required by the Federal Rules of Civil Procedure and the Local Rules of this Court by service to the Clerks and entry of the filing to the ECF system and docket.

/s/ Michael Eric Nelson

33 Hartford Avenue
South Kingstown, Rhode Island 02879
Tel.: 702-932-3434
nelsontelco@gmail.com

Dated: August 19, 2026